**SHOOP A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq., SBN 220576
Thomas S. Alch, Esq., SBN 136860
350 S. Beverly Drive
Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700

*Attorneys for Plaintiffs*
*and the class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

———————————————————————— x

Nicky Rivera, Balmore Prudencio, and Michelle :   
Quintero, individually on behalf of themselves and all :   
others similarly situated, and John Does (1-100) on :    Case No.
behalf of themselves and all others similarly situated, :   
                                   :

             Plaintiffs, :   

       -against- :    **CLASS ACTION**
                                   :    **COMPLAINT**
                                   :
                                   :    <u>**JURY TRIAL DEMANDED**</u>
Midway Importing, Inc., :   
                                   :

             Defendant. :   

———————————————————————— x

         Plaintiffs Nicky Rivera, Balmore Prudencio, and Michelle Quintero

(hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by

their attorneys, allege the following upon information and belief, except for those

allegations pertaining to Plaintiffs, which are based on personal knowledge:

## <u>NATURE OF THE ACTION</u>

       1.      This action seeks to remedy the deceptive and misleading business practices

of Midway Importing, Inc. (hereinafter "Defendant") with respect to the marketing and

sales of the following Grisi product line (hereinafter the "Products") throughout the States of New York and California, and throughout the country:

- Grisi Regenerative Aloe Vera Natural Soap
- Grisi Balance Oat Natural Soap
- Grisi Lightening Mother of Peal Natural Soap
- Grisi Moisturizer Donkey's Milk Natural Soap

2.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are "Natural".  However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

3.     Plaintiffs and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Natural" when purchasing the Products.  Plaintiffs and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural".  Given that Plaintiffs and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Natural", Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

4.     Defendant's conduct violated and continues to violate, *inter alia*, California Business Codes §§ 17200 and 1750, New York General Business Law §§ 349 and 350, and the consumer protection statutes of the other 48 states.  Defendant breached and continues to breach its express and implied warranties regarding the Products.  Defendant

has been and continues to be unjustly enriched.  Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).    Plaintiffs Balmore Prudencio and Michelle Quintero are citizens of the State of California.  Plaintiff Nicky Rivera is a resident of the State of New York.  Defendant is a corporation with its principal place of business in Houston, Texas, and is organized and exists under the laws of the State of Texas.  Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

6.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California.  Some of the transactions giving rise to this case occurred in California.

7.      Venue is proper because Balmore Prudencio, Michelle Quintero, and many Class Members reside in the Central District of California, and throughout the State of California, and Defendant maintains offices in Santa Fe Springs, California.

## PARTIES

**Plaintiffs**

8.      **Plaintiff Balmore Prudencio** is an individual consumer, who, at all times material hereto, was a resident of Orange County, California.  During the class period, he purchased the Products in California.

9.      Mr. Prudencio purchased the Products because he read the packaging, which represented that the Products are "Natural".  Mr. Prudencio relied on the Defendant's false, misleading, and deceptive representations that the Products are "Natural".  Had he known the truth – that the representations he relied upon in making his purchase were false, misleading, and deceptive – he would not have purchased the Products at a premium price.

10.      **Plaintiff Michelle Quintero** is an individual consumer, who, at all times material hereto, was a resident of Los Angeles County, California.  During the class period, she purchased the Products in California.

11.      Ms. Quintero purchased the Products because she read the packaging, which represented that the Products are "Natural".  Ms. Quintero relied on the Defendant's false, misleading, and deceptive representations that the Products are "Natural".  Had she known the truth – that the representations she relied upon in making her purchase were false, misleading, and deceptive – she would not have purchased the Products at a premium price.

12.      **Plaintiff Nicky Rivera** is an individual consumer, who, at all times material hereto, was a resident of New York.  During the class period, he purchased the Products at a Stop & Shop in Duchess County, New York.

13.      Mr. Rivera purchased the Products because he read the packaging, which represented that the Products are "Natural".  Mr. Rivera relied on the Defendant's false, misleading, and deceptive representations that the Products are "Natural".  Had he known the truth – that the representations he relied upon in making his purchase were false, misleading, and deceptive – he would not have purchased the Products at a premium price.

**Defendant**

14.     Defendant is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.  Defendant manufactures, markets, advertises, and distributes products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

15.     Defendant's target consumers are largely Hispanic.  Defendant's website boasts: "Our mission here at Midway is to improve the lives of the United States Hispanic consumer by providing the finest quality Hispanic Health & Beauty Care products on the market."

16.     Midway describes its sales strategy in the following manner: "Midway provides its suppliers and merchandisers with a comprehensive Hispanic HBC distribution support strategy that includes marketing & promotions, direct sales merchandising, distribution & logistics, and a full suite of leading Hispanic Health & Beauty Care products."

## FACTUAL BACKGROUND

17.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as the Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain

synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]

Reasonable consumers, including Plaintiffs and Class Members, value natural products for

important reasons, including the belief that they are safer and healthier than alternative

products that are not represented as natural.

18.     Despite the Products containing a number of synthetic ingredients,

Defendant markets the Products as being "Natural".  The Products' labeling is depicted

below:

**Grisi Regenerative Aloe Vera Natural Soap**

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18

**Synthetic Ingredients:**

Sodium Lauryl Sulfate
Citric Acid
Titanium Dioxide

19
20
21
22
23
24
25
26
27

**Grisi Balance Oat Natural Soap**

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Synthetic Ingredients:**

Sodium Lauryl Sulfate

**Grisi Lightening Mother of Pearl Natural Soap**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Synthetic Ingredients:**

Sodium Lauryl Sulfate
Calcium Carbonate

**Grisi Moisturizer Donkey's Milk Natural Soap**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Synthetic Ingredients:**

Sodium Lauryl Sulfate

19.     Defendant's representations that the Products are "Natural" is false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

a.  **Sodium Lauryl Sulfate** is a synthetic additive as stated in C.F.R. 172.822. It is an active ingredient prepared by sulfation of lauryl alcohol, followed by neutralization with sodium carbonate. [2]

b.  **Calcium Carbonate** is produced from calcium hydroxide, calcium chloride, or as a byproduct in the lime soda process.  Federal regulations recognize calcium hydroxide as a synthetic compound (and the FDA has declared that calcium chloride renders a food no longer "natural.")[3]  The lime soda process employs hazardous and synthetic substances and requires processing techniques so excessive so as to render the finished product unnatural.  In fact, the EPA has promulgated regulations specifically addressing the environmental impact of calcium carbonate produced through the lime process and by recovery from the Solvay waste products.  Additionally, when used in drugs, calcium carbonate is listed as a synthetic compound by federal regulation.

c.  **Titanium Dioxide** is a color additive that is synthetically prepared Ti02, free from admixture with other substances. [4]

---

[2] http://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_G-52_1-Sep-93.pdf

[3] *See* FDA Warning Letter to Karl A. Hirzel, Hirzel Canning Co., (Aug. 29, 2001).

[4] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=73.575

d. **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

20. Given the presence of these synthetic and artificial ingredients in the Products, Defendant's representations that they are "Natural" are deceptive, false, and misleading.

21. Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

22. Surveys and other market research, including expert testimony Plaintiffs intend to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients.

23. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

24. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back

of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

25.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-Products claims, representations, and warranties that the Products are "Natural".

26.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural" claims to mean that the Products are "Natural" and do not contain synthetic ingredients.

27.     Defendant's representations that the Products are "Natural", induced consumers, including Plaintiffs and Class Members, to pay a premium to purchase the Products.  Plaintiffs and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented to be "Natural".  If not for Defendant's misrepresentations, Plaintiffs and Class Members would not have been willing to purchase the Products at a premium price.  Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

28.     Consumers rely on label representations and information in making purchasing decisions.

29.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

30.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

31.     Plaintiffs and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

32.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class members.

33.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

34.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class members in that they:

     a. Paid a sum of money for Products that were not what Defendant represented;

     b. Paid a premium price for Products that were not what Defendant represented;

     c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

     d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

     e. Used a product that was of a different quality than what Defendant promised.

35.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiffs and the Class members would not have been willing to purchase the Products.

36.     Plaintiffs and the Class members paid for Products that were "Natural" but received Products that were not "Natural". The Products Plaintiffs and the Class members received were worth less than the Products for which they paid.

37.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

38.     Consequently, Plaintiffs and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

39.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is well situated for classwide resolution, including injunctive relief.

40.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

41.     Plaintiffs also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of California at any time during the Class Period (the "California Subclass").

42.     Plaintiffs also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

43.     The Class, the California Subclass, and the New York Subclass, shall be referred to collectively throughout the Complaint as the "Class."

44.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy and superiority because:

45.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

46.     Commonality: The questions of law and fact common to the Class Members, which predominate over any questions which may affect individual Class Members, include, but are not limited to:

a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or

16

unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.  Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

e.  Whether Plaintiffs and the Class are entitled to injunctive relief;

f.  Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

These issues predominate over individual issues.  This controversy will largely turn on Defendant's uniform behavior in misrepresenting the Products to the Class which will be evaluated under an objective "reasonable person" standard.  Individual inquiries into the conduct of members of the Class will not be necessary.

47.    Typicality: Each Plaintiff is a member of the national Class.  Plaintiffs Prudencio and Quintero are members of the California Subclass and Plaintiff Rivera is a member of the New York Subclass.   Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

48.    Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a

strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiffs have no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel. The Class is properly brought and should be maintained as a class action under Rule 23(b). Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

49.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members are modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far

less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as being "Natural."

50.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**<u>INJUNCTIVE CLASS RELIEF</u>**

51.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, the Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiffs do not know if they can rely on Defendant's label claims in the future, but would purchase the Products again if the ingredients were changed so that they indeed were "Natural".

52.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.     <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

b.     <u>Commonality</u>: Questions of law and fact are common to members of the Class.  Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire

Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i.  Resolution of the issues presented in the 23(b)(3) class;

    ii.  Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

    iii.  Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products as being "Natural".

c.  <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d.  <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class.  Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights.  In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

53.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification

under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products. Plaintiffs would purchase the Products again if the ingredients were changed so that they indeed were "Natural".

**FIRST CAUSE OF ACTION**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.**
**(Brought by Plaintiffs Prudencio and Quintero on behalf of the California Subclass)**

54.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55.     Plaintiffs Prudencio and Quintero have standing to pursue this claim under California's Unfair Competition Law ("UCL") because they suffered an injury-in-fact and lost money as a result of Defendant's unfair practices.  Specifically, they expended more money in the transaction than they otherwise would have due to Defendant's conduct.

56.     Advertising and labeling the Products as "Natural" when they contain synthetic ingredients constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, et seq.

57.     The conduct of the defendant harms the interests of consumers and market competition.  There is no valid justification for defendant's conduct.

58.     Defendant engaged in unlawful business acts and practices by breaching implied and express warranties, and violating the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

59.     Defendant engaged in fraudulent business practices by knowingly misrepresenting the Products as "Natural" when they contain synthetic ingredients.  Such practices are devoid of utility and outweighed by the gravity of harm to Plaintiffs Prudencio and Quintero and the California Subclass who lost money or property by paying for the defective product.

60.     Each of Defendant's unfair, unlawful and fraudulent practices enumerated above was the direct and proximate cause of financial injury to Plaintiffs Prudencio and Quintero and the Class. Defendant has unjustly benefitted as a result of its wrongful conduct. Plaintiffs Prudencio and Quintero and the California Class members are accordingly entitled to have Defendant disgorge and restore to Plaintiffs Prudencio and Quintero and California Class members all monies wrongfully obtained by Defendant as a result of the conduct as alleged herein.

61.     Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs Prudencio and Quintero and the Class seek an order of this Court enjoining Defendant from continuing to engage in unfair, unlawful and deceptive practices and any other act prohibited by law, including the acts set forth herein.

## SECOND CAUSE OF ACTION
## VIOLATION OF CAL. CIV. CODE § 1750, ET SEQ.
**(Brought by Plaintiffs Prudencio and Quintero on Behalf of the California Subclass)**

62.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63.     The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices.  The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

64.     Plaintiffs Prudencio and Quintero and members of the California Subclass members are "consumers" within the meaning of section 1761(d) of the California Civil Code, and they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Products.

65.     The Products are "goods" under Cal. Civ. Code §1761(a).

66.     Defendant's unfair and deceptive business practices were intended to and did result in the sale of the Products.

67.     Defendant violated the CLRA by engaging in the following unfair and deceptive practices:

(1) Representing that Products have characteristics, uses or benefits that they do not have, in violation of section 1770(a)(5);

(2) Representing that Products are of a particular standard, quality, or grade when they are not, in violation of section 1770(a)(7); and

(3) Advertising Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

68.     If Plaintiffs Prudencio and Quintero and the California Class members had known this fact, they would not have purchased the Products at all or purchased the Products at the prices they did.

69.     As a direct and proximate result of Defendant's conduct, Plaintiffs Prudencio and Quintero and the California Class suffered injury.

70.     Pursuant to California Civil Code § 1782(a), Plaintiffs Prudencio and Quintero sent Defendant a CLRA notice letter via certified mail, return receipt requested, which was delivered on or around July 19, 2017, advising Defendant that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

71.     As of the date of this filing, Plaintiffs have not received a response.

72.     Accordingly, Plaintiffs seek damages under the CLRA in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(Brought by Plaintiff Rivera on Behalf of the New York Subclass Members)**

73.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

75.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Rivera and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

76.     There is no adequate remedy at law.

77.     Defendant misleadingly, inaccurately, and deceptively markets its Products to consumers.

78.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural"—is misleading in a material way in that it, *inter alia*, induced Plaintiff Rivera and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

79.     Plaintiff Rivera and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Natural".  Accordingly, Plaintiff Rivera and the New York Subclass Members received less than what they bargained and/or paid for.

80.     Defendant's advertising and Products' packaging and labeling induced the Plaintiff Rivera and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

81.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Rivera and the New York Subclass Members have been damaged thereby.

82.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Rivera and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(Brought by Plaintiff Rivera on Behalf of the New York Subclass Members)**

83.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

84.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

85.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the

conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

86. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Natural".

87. Plaintiff Rivera and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations—not "Natural". Accordingly, Plaintiff Rivera and the New York Subclass Members received less than what they bargained and/or paid for.

88. Defendant's advertising, packaging and products' labeling induced the Plaintiff Rivera and the New York Subclass Members to buy Defendant's Products.

89. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

90. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

91. Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

92. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

93.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Rivera and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL LAW § 350-a(1) BY OMISSION
**(Brought by Plaintiff Rivera on Behalf of the
New York Subclass Members)**

94.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.     N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such  representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

96.     Defendant's products' labeling and advertising contain misleading and/or unfair material omissions concerning Defendant's Products.  The Products' labeling and advertising omit that:  1) the Products contain synthetic ingredients; and 2) the Products are not "Natural".

97.     Plaintiff Rivera and the Class Members have been injured inasmuch as they relied upon the labels and advertising and paid a premium for Products that, contrary to Defendant's labels and advertising, are not "Natural."

98.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

99.     Defendant's dissemination of advertising and labeling containing material omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

100.    Defendant's material misrepresentations by way of omission, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations by way of omission.

101.    Defendant's advertising and labeling for the Products induced Plaintiff Rivera and Class Members to buy the Products at a premium price.

102.    Plaintiff Rivera and Class Members relied on Defendant's advertising, which was deceptive, false, and contained material omissions.

103.    As a result of Defendant's false and misleading advertising and labeling, Plaintiff Rivera and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Brought by Plaintiffs On Behalf of all Class Members)**

104.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105.   Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural".

106.   The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

107.   These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

108.   Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

109.   Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiffs, on behalf of themselves and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

110.   Defendant breached the express warranty because the Products are not "Natural" because they contain synthetic ingredients.

111.   Defendant thereby breached the following state warranty laws:

      a.     Code of Ala. § 7-2-313;

      b.     Alaska Stat. § 45.02.313;

      c.     A.R.S. § 47-2313;

      d.     A.C.A. § 4-2-313;

      e.     Cal. Comm. Code § 2313;

f.    Colo. Rev. Stat. § 4-2-313;

g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t.    Md. Commercial Law Code Ann. § 2-313;

u.    106 Mass. Gen. Laws Ann. § 2-313;

v.    M.C.L.S. § 440.2313;

w.    Minn. Stat. § 336.2-313;

x.    Miss. Code Ann. § 75-2-313;

y.    R.S. Mo. § 400.2-313;

z.    Mont. Code Anno. § 30-2-313;

aa.   Neb. Rev. Stat. § 2-313;

bb.   Nev. Rev. Stat. Ann. § 104.2313;

cc.   R.S.A. 382-A:2-313;

dd.   N.J. Stat. Ann. § 12A:2-313;

ee.   N.M. Stat. Ann. § 55-2-313;

ff.   N.Y. U.C.C. Law § 2-313;

gg.   N.C. Gen. Stat. § 25-2-313;

hh.   N.D. Cent. Code § 41-02-30;

ii.   II. O.R.C. Ann. § 1302.26;

jj.   12A Okl. St. § 2-313;

kk.   Or. Rev. Stat. § 72-3130;

ll.   13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.   S.C. Code Ann. § 36-2-313;

oo.   S.D. Codified Laws, § 57A-2-313;

pp.   Tenn. Code Ann. § 47-2-313;

qq.   Tex. Bus. & Com. Code § 2.313;

rr.   Utah Code Ann. § 70A-2-313;

ss.   9A V.S.A. § 2-313;

tt.   Va. Code Ann. § 59.1-504.2;

uu.   Wash. Rev. Code Ann. § 6A.2-313;

vv.   W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

112.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq*.**
**(Brought by Plaintiffs on Behalf of All Class Members)**

113.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114.    Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

115.    The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

116.    The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

117.    Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

118.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

119.    Defendant represented in writing that the Products are "Natural".

120.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

121.     As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "Natural". The Products do not conform to the Defendant's written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (Brought by Plaintiffs on Behalf of al Class Members)

122.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

123.     Plaintiffs and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

124.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

   a.     **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.   **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.   **Colorado**:  Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

e.   **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

f.   **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

g.   **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

h.   **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

i.   **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

j.   **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

k.   **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

l.   **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

m.   **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

n.   **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

o.   **Maine:**  Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

p.   **Maryland:**  Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

q.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

r.   **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

s.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

t.   **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

u.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

v.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

w.   **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq*.

x.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq*.

y.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

z.   **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq*.

aa. **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

bb. **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

cc. **Oklahoma:**  Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

dd. **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ee. **Pennsylvania:**  Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

ff. **Rhode Island:**  Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

gg. **South Dakota:**  Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

hh. **Texas:**  Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

ii. **Utah:**  Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

jj. **Vermont:**  Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

kk. **Washington:**  Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

ll. **West Virginia:**  Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

mm. **Wisconsin:**  Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

nn. **Wyoming:**  Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

125.  Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are "Natural".

126.  Contrary to Defendant's representations, the Products are not "Natural".

127.   Defendant's misrepresentations were material to Plaintiffs' and Class Members' decision to pay a premium for the Products.

128.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

129.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members paid a premium for the Products.

130.    As a result of Defendant's violations, Defendant has been unjustly enriched.

131.   Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**NINTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**(Brought by Plaintiffs on Behalf of all Class Members)**

132.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

133.   Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed products.

134.   Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiffs and Class Members that the Products are "Natural".

135.   Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and

41

reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products if they knew that they actually contained synthetic ingredients, that are not "Natural".

136.   Within a reasonable amount of time after the Plaintiffs discovered that the Products contain synthetic ingredients, Plaintiffs notified the Defendant of such breach.

137.   The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault and without Plaintiffs' or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

138.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

**TENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(Brought by Plaintiffs on Behalf of All Class Members)**

139.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

140.   Defendant knew or had reason to know that the Plaintiffs and other Class Members were buying its Products with the specific purpose of buying products that contained exclusively natural ingredients.

141.   Plaintiffs and the other Class Members, intending to use wholly natural products, relied on the Defendant in selecting its Products to fit their specific intended use.

142. Defendant held themselves out as having particular knowledge of the Defendant's Products' ingredients.

143. Plaintiffs' and Class Members' reliance on Defendant in selecting Defendant's Products to fit its particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients.

144. Plaintiffs' and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

145. As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the FRCP; and Plaintiffs Prudencio and Quintero as representatives of the California Subclass; and Plaintiff Rivera as the representative of the New York Subclass.

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply consumer protection laws nationwide, including California and New York consumer protection laws;

(c) Awarding monetary, compensatory, statutory and punitive damages;

(d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated:  February 20, 2018

**SHOOP A PROFESSIONAL LAW CORPORATION**

David R. Shoop /s/

By: _____

David R. Shoop, Esq., SBN 220576
Thomas S. Alch, Esq., SBN 136860
350 S. Beverly Drive
Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

1

**LEEDS BROWN LAW, P.C.**

2

Jeffrey Brown /s/

By: _____

3

Jeffrey Brown, Esq.

4

One Old Country Road, Suite 347

Carle Place, NY 11514

5

Tel: (516) 873-9550

6

jbrown@leedsbrownlaw.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28