1
2
3
4
5
6

Michael L. Mallow (SBN 188745)
*mmallow@sidley.com*
Amy P. Lally (SBN 198555)
*alally@sidley.com*
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9662
Facsimile: +1 310 595 9501

7
8
9
10
11
12

Rachael A. Rezabek (SBN 298711)
*rrezabek@sidley.com*
Alexandria V. Ruiz (SBN 313286)
*aruiz@sidley.com*
SIDLEY AUSTIN LLP
555 West Fifth Street, 40th Floor
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

13

Attorneys for Defendant
MIDWAY IMPORTING, INC.

14

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKY RIVERA, BALMORE PRUDENCIO, AND MICHELLE QUINTERO, individually on behalf of themselves and all others similarly situated, and John Does (1-100) on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MIDWAY IMPORTING, INC.,<br><br>        Defendant. | Case No.  2:18-cv-01469-AB-RAO<br><br>Assigned to: Hon. Andre Birotte, Jr.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MIDWAY IMPORTING, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>[Notice of Motion and Motion, Request for Judicial Notice, and [Proposed] Order filed Concurrently]<br><br>Date:     July 6, 2018<br>Time:    10:00 AM<br>Ctrm:   7B<br><br>Complaint Filed:  February 22, 2018 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 3

ARGUMENT ..................................................................................... 5

I.   The FAC Must Be Dismissed for Lack of Jurisdiction ...................................... 5

    A.   Subject Matter Jurisdiction Under FRCP 12(b)(1) .................................... 5

    B.   Personal Jurisdiction Under FRCP 12(b)(2) ............................................ 6

    C.   Plaintiffs Lack Standing for Grisi Soap Products They Did Not Purchase ............................................................................................ 6

    D.   The Court Lacks Jurisdiction over Claims by Non-California Purchasers ....................................................................................... 9

    E.   The California Plaintiffs Lack Standing to Bring Non-California Claims ......................................................................................... 10

    F.   Plaintiffs Lack Standing to Seek Prospective Injunctive Relief .............. 11

II.  The FAC Fails to State a Claim for "Natural Soap" as False or Misleading ................................................................................... 12

    A.   Legal Standard Under FRCP 12(b)(6), 8, and 9(b) ................................. 12

    B.   Plaintiffs Have Failed to State a Claim Against Midway ...................... 13

    C.   The California and New York Statutory Counts (1-5) Under the CLRA, UCL, and NY GBL §§ 349-350 Fail to State a Claim Under FRCP 8 ........................................................................... 14

    D.   The UCL and CLRA Claims Fail to Satisfy the Heightened Pleading Standards ................................................................... 18

    E.   Plaintiffs' Express Warranty Claim Fails (Count Six) ............................ 19

    F.   Plaintiffs' Magnuson Moss Warranty Act (Count Seven) Claim Fails ...................................................................................... 20

    G.   Plaintiffs' Implied Warranty Claim (Count Nine) Fails ......................... 22

    H.   Alternatively, the Case Should be Stayed Under the Primary Jurisdiction Doctrine Pending Imminent Guidance from the FDA ......... 22

CONCLUSION ................................................................................. 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Jamba Juice, Co.*,
    888 F. Supp. 2d 1000 (N.D. Cal. 2012)....................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................12, 13

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...................................................................23

*Bailey v. Kind, LLC*,
    No. 16-168-JLS(DFMx), 2016 WL 3456981 (C.D. Cal. June 16,
    2016) ...........................................................................................................18

*Barrett v. Milwaukee Elect. Tool, Inc.*,
    No. 14-1804 JAH(DHB), 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ...............17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................12, 13

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013)......................................................13

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    137 S. Ct. 1773 (2017)...............................................................................10

*Brockey v. Moore*,
    107 Cal. App. 4th 86 (2003) .....................................................................15

*Bronson v. J&J, Inc.*,
    No. 12-cv-4184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ....................6

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    No. 10-1044-JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ............................7

*Castagnola v. Hewlett-Packard Co.*,
    No. C-11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012)...................11

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ........................................................ 7

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (2013) ................................................................. 14

*Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*,
    No. 01–cv–4203 MMC, 2005 WL 1528703 (N.D. Cal. June 29, 2005) ................ 22

*Clemens v. DaimlerChryslyer Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................................ 22

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ................................................................. 13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................. 9

*Davidson v. Kimberly-Clark*,
    873 F.3d 1103 (9th Cir. 2017) ............................................................... 12

*DiBartolo v. Abbott Labs.*,
    914 F. Supp. 2d 601 (S.D.N.Y. 2012) ....................................................... 20

*Dumas v. Diageo PLC*,
    No. 15-cv-1681 BTM(BLM), 2016 WL 1367511 (S.D. Cal. Apr. 6,
    2016) ............................................................................................... 15

*Dysthe v. Basic Research LLC*,
    No. CV 09-8013 AG(SSx), 2011 WL 5868307 (C.D. Cal. June 13,
    2011) ............................................................................................ 7, 9

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ................................................................ 6

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ........................................................ 14, 15, 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000).............................................................................. 5

*Gasser v. Kiss My Face LLC*,
    No. 17-cv-01675-JSC, 2017 WL 4773426 (N.D. Cal. Oct. 23, 2017)........ 11, 12, 20

iii

*Goldman v. Bayer AG*,
    No. 17-cv-0647-PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017)............... 16, 19

*Gitson v. Trader Joe's Co.*,
    No. 13-cv-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013).................. 16

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) (9th Cir. 2011) ......................................... 13

*In re 100% Grated Parmesan Cheese Mktg & Sales Practices Litig.*,
    275 F. Supp. 3d 910 (N.D. Ill. 2017)...................................................... 17

*Hairston v. S. Beach Beverage Co.*,
    No. 12-cv-1429-JFW(DTBx), 2012 WL 1893818 (C.D. Cal. May 18,
    2012) ............................................................................................... 15, 21

*Harris v. CVS Pharmacy*,
    No. ED CV 13–02329–AB(AGRx), 2015 WL 4694047 (C.D. Cal.
    Aug. 6, 2015) ................................................................................... 2, 10

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013).................................................. 6

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ......................................................... 14, 15

*Hodgers-Durgin v. de la Vina*,
    199 F. 3d 1037 (9th Cir. 1999) .......................................................... 11

*Int'l Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945)............................................................................ 6

*Johns v. Bayer Corp.*,
    No. 09CV1935DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9,
    2010) ............................................................................................... 7

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19,
    2013) ............................................................................................... 6, 7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................... 13, 18

iv

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014) ..................................................... 20

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994)............................................................................... 5

*Larsen v. Trader Joe's*,
   No. C 11–05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ...................... 21

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................................... 7

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ........................................................ 14, 15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................... 6

*Mazza v. Am. Honda Motor, Inc.*,
   666 F.3d 581 (9th Cir. 2012) ........................................................... 11

*McKinniss v. Gen. Mills, Inc.*,
   No. 07-cv-2521 GAF(FMDx), 2007 WL 4762172 (C.D. Cal. Sept. 18,
   2007) ........................................................................................ 16, 19

*Miller v. Gen. Motors Corp.*,
   471 N.Y.S. 2d 280 (N.Y. App. Div. 1984)............................................ 22

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012)............................................... 5, 7

*Nelsen v. King Cnty.*,
   895 F.2d 1248 (9th Cir. 1990) ......................................................... 5

*Ove v. Gwinn*,
   264 F.3d 817 (9th Cir. 2001) ........................................................... 13

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ......................................................... 6

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013)............................................... 17

v

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012)...................................................18

*Rivera v. Midway Importing, Inc.*,
   No. 7:17-cv-03290-VB (S.D.N.Y. June 5, 2017), ECF No. 17 ........................10, 14

*Rosillo v. Annie's Homegrown Inc.*,
   No. 17-cv-02474-JSW, 2017 WL 5256345 (N.D. Cal. Oct. 17, 2017)..................25

*Route v. Mead Johnson Nutrition Co.*,
   No. 12-cv-7350-GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21,
   2013) .........................................................................................6

*Shaker v. Nature's Path Foods, Inc.*,
   No. 13-cv-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16,
   2013) ........................................................................................16

*Silva v. Smucker Nat. Foods, Inc.*,
   No. 14-cv-6154 (JG)(RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14,
   2015) ........................................................................................14

*Simpson v. Kroger Corp.*,
   219 Cal. App. 4th 1352 (2013) .................................................................15

*Tasini v. AOL, Inc.*,
   851 F. Supp. 2d 734 (S.D.N.Y. 2012) ......................................................14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .........................................................13, 18

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013)......................................................22

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) .................................................................19

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................................16

**Statutes**

15 U.S.C. § 2301, *et seq.* ..........................................................3, 5, 20, 21

FRCP 8...................................................................................................14

vi

FRCP 9(b) .................................................................................. 2, 13, 18

FRCP 12(b)(1) ................................................................................... 5, 6

FRCP 12(b)(2) ....................................................................................... 6

FRCP 12(b)(6) ..................................................................................... 12

Cal. Bus. & Prof. Code § 17200 ............................................................. 5

Cal. Civ. Code § 1750 .............................................................................. 5

Cal. Code Civ. Proc. § 410.10 ................................................................. 6

Cal. Com. Code § 2317 .......................................................................... 19

Cal. Com. Code § 10215 ........................................................................ 19

New York's Gen. Bus. Laws §§ 349, 350, and 350-a(1) .......................... 5

**Other Authorities**

21 C.F.R. § 700.3 .................................................................................. 23

H.R. Rep. No. 115-232 (July 17, 2017) ............................................ 23, 24

Julie Creswell, *Is it Natural? Consumers, and Lawyers, Want to Know*,
    N.Y. Times (February 16, 2018) ...................................................... 24

*Organic Labeling Standards*, U.S. Dept. Agric.,
    https://www.ams.usda.gov/grades-standards/organic-labeling-
    standards (last visited April 15, 2018) ............................................ 18

*Use of the Term "Natural" in the Labeling of Human Food Products*,
    Docket No. FDA-2014-N-1207 ......................................................... 24

*Use of the Term "Natural" in the Labeling of Human Food Products;
    Request for Information and Comments* 80 Fed. Reg. 69905, 69905
    (Nov. 12, 2015 .................................................................................. 24

vii

1

# INTRODUCTION

2    Plaintiffs Nicky Rivera, Balmore Prudencio, and Michelle Quintero bring this

3 putative class action alleging that they were deceived by the "natural soap" labeling

4 on four Grisi bar soap products (the "Grisi Soap Products") because each one

5 allegedly contains one to three "synthetic" ingredients.  In an attempted end-run

6 around the strictures of the Hague Convention, Plaintiffs did _**not**_ file this action

7 against **_Grisi_**, the Mexican company that manufactures, labels, and markets the **_Grisi_**

8 Soap Products.  Instead, Plaintiffs bring this action against sole defendant Midway

9 Importing, Inc. ("Midway"), a Texas importer and distributor that had nothing

10 whatsoever to do with the formulation, labeling, or marketing of the Grisi Soap

11 Products.

12    This is not Plaintiffs' only attempt at circumventing procedural requirements.

13 New York Plaintiff Nicky Rivera has already filed and dismissed a nearly identical

14 complaint in New York district court, which he later refiled in this instant action,

15 having picked up California Plaintiffs Balmore Prudencio and Michelle Quintero

16 along the way.  Plaintiffs then filed an amended complaint in this action, which is the

17 subject of this current motion.  But despite Plaintiffs' many bites at the apple,

18 Plaintiffs' First Amended Complaint is fatally deficient in many respects, and should

19 be dismissed.

20    *First*, Plaintiffs have failed to establish Article III standing.  Plaintiffs allege

21 that they purchased only two of the identified products, and therefore lack standing as

22 to the two products they did not purchase.  Plaintiffs also have failed to establish

23 standing as to their claim regarding injunctive relief, because now that they are aware

24 of the alleged deception, Plaintiffs cannot plausibly allege that they will be deceived

25 again in the future, particularly because the ingredients about which they complain are

26 clearly listed on the label.  Indeed, Plaintiffs have made clear that they would not

27 consider purchasing the Grisi Soap Products unless and until such products are

28 reformulated without the offending "synthetic" ingredients.  Finally, in accord with

1

1    this Court's decision in *Harris v. CVS*, Plaintiffs have failed to establish standing to

2    sue under the laws of states where they do not reside and did not purchase the

3    product(s) at issue.

4            *Second*, claims brought by non-California plaintiffs, including New York

5    Plaintiff Nick Rivera, fail because this Court lacks personal jurisdiction to adjudicate

6    those claims.  Midway is both incorporated and has its principal place of business in

7    Texas.  There is no general jurisdiction over Midway here.  Plaintiff Rivera has

8    wholly failed to allege any facts to support specific jurisdiction over Midway in

9    California for the purchase of Grisi Soap Products outside of California by non-

10   California residents.

11           *Third*, Plaintiffs' California and New York consumer protection claims fail

12   because Plaintiffs have failed to plausibly allege that a reasonable consumer would

13   read the term "natural" on the label to mean that the products do not contain any

14   "synthetic" ingredients whatsoever—despite the fact that the labels nowhere claim

15   that the Grisi Soap Products are "all natural" or "100%" natural.  Indeed, such a claim

16   is particularly unreasonable where, as here, the "synthetic" ingredients about which

17   Plaintiffs complain are clearly and prominently disclosed on the label in English and

18   Spanish.  Plaintiffs' CLRA and UCL claims also fail because Plaintiffs have not met

19   their F.R.C.P. 9(b) pleading burden.  To wit, Plaintiffs have failed to plead: the

20   specific dates on which they purchased the products; the price of the products they

21   purchased and the calculation of the "price premium" they allege; how they came to

22   "belie[ve]" that natural products, including the Grisi Soap Products, are "safer and

23   healthier" than products lacking a "natural" label; what safety and health benefits they

24   expected to receive from the product, and that they did not in fact receive those

25   benefits; and finally, what Midway, an importer and distributor who did not

26   manufacture, label, or directly sell the product, had to do with any of this.

27           *Fourth*, Plaintiffs' express warranty claim fails under California law because

28   the ingredients were disclosed to Plaintiffs in the ingredient list, and under New York

1   law because Midway and Plaintiffs lack privity.

2   *Fifth*, Plaintiffs' Magnuson Moss Warranty Act claim fails because Plaintiffs

3   have not pled that they meet the requirements of the act (100 named plaintiffs,

4   minimum $25.00 individual claims, and a minimum $5.00 product cost), and because

5   the term "natural" does not constitute a warranty under the MMWA.

6   *Sixth*, Plaintiffs implied warranty of merchantability claim fails under

7   California and New York law because Midway and Plaintiffs are not in privity and

8   because Plaintiffs have not (and cannot) plead that the Grisi Soap Products were not

9   merchantable for their intended use as soap.

10   *Finally*, if the Court does not dismiss this action for the reasons set forth above,

11   it should alternatively stay the proceeding in light of the FDA's imminent guidance

12   regarding the use of the word "natural" on product labeling. Regulating the consistent

13   use of such a definition falls squarely within the primary jurisdiction of the FDA.

14   Staying the case will allow the FDA to exercise its specialized knowledge and will

15   prevent inconsistent rulings. Further, in light of the fact that guidance from the FDA

16   is now imminent, staying the proceeding will only serve to promote judicial efficacy

17   and preserve party resources.

18   **BACKGROUND**

19   This case involves four Grisi Soap Products: (1) Grisi "Regenerative" Aloe

20   Vera Soap; (2) Grisi "Balance" Oat Soap; (3) Grisi "Lightening" Mother of Pearl

21   Soap; and (4) Grisi "Moisturizer" Donkey's Milk Soap. FAC ¶ 1. The bar soaps are

22   packaged in boxes. The type of soap is indicated on the front of the box; the statement

23   "Natural Soap" is located in the left corner; and the ingredients are clearly disclosed in

24   both English and Spanish in a prominent, "all caps" ingredient list on the side of the

25   box. *See* Request for Judicial Notice ("RJN") at Exs. A-D. Importantly, nowhere on

26   the soap's packaging is there a claim that the products are "***all*** natural" or "***100%***

27

28

1     natural," nor is there any statement that the product is free of synthetic ingredients.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



18        Plaintiffs nevertheless allege that calling something "natural" means the exact

19 same thing as "*all* natural" or "*100%* natural" (thereby rendering such quantifiers

20 meaningless), and argue that the bare statement "natural soap" is a misrepresentation

21 because the Grisi Soap Products, which contain between 13-17 ingredients, also

22 allegedly contain anywhere from one to three "synthetic" ingredients. *See* FAC ¶¶ 2,

23 18-20. Plaintiffs allege this deception despite the ingredient list on each product

24 disclosing in clear and legible type precisely the ingredients that Plaintiffs allege are

25 "synthetic." *See* RJN at Exs. A-D.

26        Plaintiffs further allege that, had they known about the allegedly "synthetic"

27 ingredients, they would not have purchased the products nor paid a "premium" price

28 for them. *See* FAC ¶¶ 27, 35.

1       Plaintiffs assert nine causes of action: violations of California's Consumer

2  Legal Remedies Act, *see* Cal. Civ. Code § 1750, *et seq.* (CLRA) and Unfair

3  Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL), both on behalf of a

4  putative "California Subclass" (Counts 1-2); violations of New York's General

5  Business Laws §§ 349, 350, and 350-a(1), on behalf of a putative "New York

6  Subclass" (Counts 3-5); violations of the express warranty and consumer protection

7  statutes of 48 other states and the District of Columbia (Counts 6 and 8); violations of

8  the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count 7); and a

9  common law claim for breach of the implied warranty of merchantability (Count 9).

10  For the following reasons, these claims fail and the FAC must be dismissed.

11  **ARGUMENT**

12  **I.    The FAC Must Be Dismissed for Lack of Jurisdiction**

13      **A.    Subject Matter Jurisdiction Under FRCP 12(b)(1)**

14       "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life*

15  *Ins. Co.*, 511 U.S. 375, 377 (1994). "Standing is a jurisdictional element that must be

16  satisfied prior to class certification." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249-50

17  (9th Cir. 1990) (internal quotations omitted). "If the litigant fails to establish

18  standing, he may not 'seek relief on behalf of himself or any other member of the

19  class.'" *Id.* at 1250 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). This is

20  because "[t]he prudential limitations on federal court jurisdiction require" that a

21  plaintiff "assert his own legal rights and interests, not those of others . . . ." *Miller v.*

22  *Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).

23       "[A] plaintiff must show (1) [she] has suffered an 'injury in fact' that is

24  (a) concrete and particularized and (b) actual or imminent, not conjectural or

25  hypothetical; (2) the injury is fairly traceable to the challenged action of the

26  defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

27  redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

28  *(TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "The party invoking federal jurisdiction

5

1    bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504

2    U.S. 555, 561 (1992); *see also Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013

3    WL 5289253, at *4 (N.D. Cal. Sept. 19, 2013) ("Once a party has moved to dismiss

4    for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears

5    the burden of establishing the court's jurisdiction . . . ."). "A motion to dismiss for

6    lack of subject matter jurisdiction will be granted if the complaint on its face fails to

7    allege facts sufficient to establish subject matter jurisdiction." *Herskowitz v. Apple*

8    *Inc.*, 940 F. Supp. 2d 1131, 1138 (N.D. Cal. 2013).

9        **B.    Personal Jurisdiction Under FRCP 12(b)(2)**

10           To determine whether personal jurisdiction exists over a nonresident, a district

11   court must apply the law of the state in which it sits when there is no applicable

12   federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141

13   F.3d 1316, 1320 (9th Cir. 1998).  In California, district courts may exercise personal

14   jurisdiction over a nonresident defendant to the extent permitted by the Due Process

15   Clause of the Constitution.  Cal. Code Civ. Proc. § 410.10.  The Fourteenth

16   Amendment's Due Process Clause requires a defendant to have "certain minimum

17   contacts" with the forum such that the maintenance of the suit in that forum "does not

18   offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State*

19   *of Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  Plaintiffs bear

20   the burden of proving that jurisdiction exists. *Flynt Distrib. Co. v. Harvey*, 734 F.2d

21   1389, 1392 (9th Cir. 1984).

22       **C.    Plaintiffs Lack Standing for Grisi Soap Products They Did Not**
23               **Purchase**

24           Plaintiffs must plead and prove both (i) Article III standing and (ii) actual

25   reliance and injury for standing under the UCL and CLRA. *See Bronson v. J&J, Inc.*,

26   No. 12-cv-4184 CRB, 2013 WL 1629191, at *2-3 (N.D. Cal. Apr. 16, 2013) (plaintiffs

27   lacked standing to pursue claims based on advertising upon which they did not rely);

28   *Route v. Mead Johnson Nutrition Co.*, No. 12-cv-7350-GW(JEMx), 2013 WL 658251,

6

1    at *3 (C.D. Cal. Feb. 21, 2013) (dismissing claims based on products that plaintiff did

2    not purchase); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948-49 (S.D. Cal.

3    2007) (same); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal.

4    2005) (dismissing UCL claims for lack of standing where "none of the named

5    Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor []

6    allege[d] that they entered into the transaction *as a result* of those advertisements").

7    Further, Plaintiffs must allege actual reliance on the *particular* statements they are

8    challenging.  *Cattie*, 504 F. Supp. 2d at 946; *Laster*, 407 F. Supp. 2d at 1194.

9          Courts in the Ninth Circuit routinely hold that plaintiffs lack standing to

10   proceed as to products they did not purchase, particularly products containing

11   different formulations, and, as here, claims relating to differing formulations.  *See,*

12   *e.g.*, *Johns v. Bayer Corp.*, No. 09CV1935DMS (JMA), 2010 WL 476688, at *5 (S.D.

13   Cal. Feb. 9, 2010) (in a putative class action, plaintiffs "cannot expand the scope of

14   [their] claims to include a product [they] did not purchase or advertisements relating

15   to a product that [they] did not rely upon"); *Miller v. Ghirardelli Chocolate Co.*, 912

16   F. Supp. 2d 861, 869-71 (N.D. Cal. 2012) (noting that, "[w]here the alleged

17   misrepresentations or accused products are dissimilar, courts tend to dismiss claims to

18   the extent they are based on products not purchased," and dismissing claims based on

19   misleading "white chocolate" representations where plaintiff purchased chocolate

20   chips, because the products were inherently different); *Carrea v. Dreyer's Grand Ice*

21   *Cream, Inc.*, No. 10-1044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011)

22   (dismissing claims based on an ice cream product not purchased by named plaintiff

23   even though it contained one of the same alleged misrepresentations as another ice

24   cream product purchased by plaintiff); *Dysthe v. Basic Research LLC*, No. CV 09-

25   8013 AG(SSx), 2011 WL 5868307, at *4-5 (C.D. Cal. June 13, 2011) (finding that

26   plaintiff lacked standing to sue as to products not purchased where the two weight loss

27   products contained different formulations, touted different non-weight loss benefits,

28   and had different colored packaging); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK,

7

1   2013 WL 5289253, at *11 (N.D. Cal. Sept. 19, 2013) (dismissing claims as to yogurt

2   products not purchased because even though the alleged *misrepresentations* were

3   similar across all products, plaintiffs failed to adequately allege that the products

4   *themselves* were substantially similar).

5      Here, Plaintiffs challenge the "natural soap" label on four Grisi soap products,

6   each with their own unique formulations, attributes, and packaging:

7   • Grisi "Regenerative" Aloe Vera Soap, which contains approximately 15

8      ingredients, three of which Plaintiffs contend are "synthetic," the packaging for

9      which advertises that it "keeps the skin moisturized and fresh" and "helps

10     sensitive skins which are continuous[ly] sun exposed" (green and white

11     packaging featuring an illustration of an aloe vera leaf);

12  • Grisi "Balance" Oat Soap, which contains approximately 14 ingredients, one of

13     which Plaintiffs contend is "synthetic," the packaging for which advertises that

14     it "helps to regulate the oil excess of the skin by revitalizing it gently" (brown

15     and white packaging featuring illustrations of ears of wheat);

16  • Grisi "Lightening" Mother of Pearl Soap, which contains approximately 17

17     ingredients, two of which Plaintiffs contend are "synthetic," the packaging for

18     which advertises that it "helps to vanish little dark and age spots" (blue and

19     white packaging featuring illustrations of a pearl within a clamshell);

20  • Grisi "Moisturizer" Donkey's Milk Soap, which contains approximately 13

21     ingredients, one of which Plaintiffs contend is "synthetic," the packaging for

22     which advertises that it is "enriched with milk proteins," and "nourishes and

23     smoothes out the skin contributing to its elasticity and vitality" (blue, white, and

24     brown packaging featuring a donkey's head with flowers).

25  *See* RJN Exs. A-D.  These products are inherently dissimilar and Plaintiffs cannot

26  establish standing as to Grisi Soap Products not purchased, *i.e.*, the Grisi "Balance"

27  Oat Soap and the Grisi "Moisturizer" Donkey's Milk Soap.  *See* FAC ¶¶ 8, 10, 12

28  (alleging purchases of only the Grisi Lightening Mother of Pearl Soap and the Grisi

8

1  Regenerative Aloe Vera Soap); *see also Dysthe*, 2011 WL 5868307, at *4-5.  Thus,

2  Plaintiffs' claims relating to the Grisi "Balance" Oat Soap and Grisi "Moisturizer"

3  Donkey's Milk Soap should be dismissed for lack of subject matter jurisdiction.

4  **D.   The Court Lacks Jurisdiction over Claims by Non-California**
   **Purchasers**

5

6  Plaintiffs, including Nicky Rivera—who is a resident of New York, FAC

7  ¶ 12—seek to represent a nationwide class and N.Y. subclass for statutory consumer

8  protection and warranty claims (Counts Three through Nine), but this Court does not

9  have personal jurisdiction over Midway for any non-California sales to non-California

10  residents.  Indeed, Plaintiffs' allegation of personal jurisdiction reads exactly like an

11  allegation of specific personal jurisdiction that extends no further than California.  *See*

12  *id.* ¶ 6 ("This Court has personal jurisdiction over Defendant because Defendant

13  conducts and transacts business in the State of California, contracts to supply goods

14  within the state of California, and supplies goods within the State of California.").

15  The allegation is insufficient to invoke jurisdiction over Midway for conduct

16  involving purchases made outside of California by non-California residents.

17  First, Midway is not subject to general personal jurisdiction in California.

18  General jurisdiction applies to claims "unrelated to the defendant's contacts with the

19  forum state" and exists only in a forum where the defendant is "essentially at home."

20  *See Daimler AG v. Bauman*, 571 U.S. 117, 137-38 & n.19 (2014).  A corporate

21  defendant is "at home" only in the states where it is incorporated or has its principal

22  place of business.  *Id*.  But Midway is incorporated and has its principal place of

23  business in Texas, and Plaintiffs' generic allegations that Midway "conducts and

24  transacts business," "contracts to supply goods," and "supplies goods within the State

25  of California," FAC ¶ 6, do not establish that Midway is "at home" in California, *see*

26  *Daimler*, 571 U.S. at 139 (no general jurisdiction even when defendant's sales were

27  "sizable" in that state).

28  Second, Plaintiffs have pled no facts to support a claim for specific personal

9

jurisdiction over non-California residents' claims. FAC ¶ 6 (speaking only of California sales to California consumers). Indeed, Plaintiff Nicky Rivera implicitly acknowledged that New York is the appropriate forum for the claims related to the soap he allegedly purchased there, *because he initially filed this lawsuit in New York*.[1] Plaintiffs simply cannot bootstrap alleged California purchases by California residents into specific personal jurisdiction over non-residents for sales outside California. *See, e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017). Thus, the Court should hold that there is no personal jurisdiction with respect to claims by anyone outside of California, including New York Plaintiff Nicky Rivera.

### E. The California Plaintiffs Lack Standing to Bring Non-California Claims

Plaintiffs, residents of California and New York, purport to bring claims under the laws of 48 other states and the District of Columbia (Counts Six and Eight). But this Court, in accord with numerous other courts, has held that named plaintiffs lack standing to assert claims from states where they do not reside or did not purchase the product(s) at issue. *Harris v. CVS Pharmacy*, No. ED CV 13–02329–AB(AGRx), 2015 WL 4694047, at *4-5 (C.D. Cal. Aug. 6, 2015) (collecting cases).

The *Harris* plaintiff, a California resident, brought a putative class action alleging CVS violated California and Rhode Island consumer protection laws in connection with marketing and selling a dietary supplement that plaintiff purchased in California. *Id.* at 1, 4. Holding plaintiff lacked standing to bring claims under Rhode Island law, this Court found plaintiff had failed to allege any "plausible basis for invoking that foreign law." *Id.* at 4 (noting Rhode Island law "is clear that, absent some indication to the contrary, extraterritorial force cannot be given to a [Rhode

---

[1] He later dismissed that action after receiving an order from the New York court *sua sponte* granting him leave to file an amended complaint after Midway filed its motion to dismiss and informing him that "absent special circumstances, no further opportunities to amend [would] be granted." *See* Order, *Rivera v. Midway Importing, Inc.*, No. 7:17-cv-03290-VB (S.D.N.Y. June 5, 2017), ECF No. 17.

1    Island] statute") (internal citations omitted).  Further, citing the Ninth Circuit's

2    decision in *Mazza v. Am. Honda Motor, Inc.*, 666 F.3d 581 (9th Cir. 2012), this Court

3    held that under standard choice-of-law principles, ***California*** (the place of alleged

4    "wrong") had the predominant interest in applying ***its*** consumer protection statute to

5    plaintiff's transaction, which occurred in California.  *Id.* at 593.

6         So too here.  Plaintiffs in this action reside in California and New York and

7    allege that they purchased their Grisi Soap Products in California and New York,

8    respectively.  They have alleged no plausible basis for invoking laws of any other

9    state or the District of Columbia, particularly when the alleged "harms" to Plaintiffs

10   did not occur there.  Further, as discussed in Section I.D., *supra*, this Court also lacks

11   jurisdiction to hear claims brought by New York Plaintiff Nicky Rivera, and so

12   Plaintiffs' New York claims must likewise be dismissed.  For these reasons, all of

13   Plaintiffs' non-California claims must be dismissed for lack of standing.

14        **F.    Plaintiffs Lack Standing to Seek Prospective Injunctive Relief**

15        "[A] plaintiff must demonstrate standing separately for each form of relief

16   sought."  *Castagnola v. Hewlett-Packard Co.*, No. C-11-05772 JSW, 2012

17   WL 2159385, at *5 (N.D. Cal. June 13, 2012) (dismissing claim for injunctive relief).

18   To establish standing for prospective injunctive relief, a plaintiff must demonstrate

19   that he or she has suffered or is threatened with a "concrete and particularized" legal

20   harm coupled with a sufficient likelihood that he or she will again be wronged in a

21   similar way.  *Id.*; *Gasser v. Kiss My Face LLC*, No. 17-cv-01675-JSC, 2017 WL

22   4773426, at *3 (N.D. Cal. Oct. 23, 2017).  The plaintiff must establish a "real or

23   immediate threat" of repeated injury caused by the defendant's alleged false

24   advertising.  *Hodgers-Durgin v. de la Vina*, 199 F. 3d 1037, 1042 (9th Cir. 1999).  A

25   plaintiff "cannot rely on the prospect of future injury to unnamed class members if [he

26   or she] cannot establish [he or she has] standing to seek injunctive relief."

27   *Castagnola*, 2012 WL 2159385, at *5.

28        Here, Plaintiffs have failed to show that they face a "real or immediate" risk of

11

future harm.  Even if Midway made misrepresentations about the Grisi Soap Products (and as a mere importer of the products, it certainly did not), Plaintiffs are now aware of the "truth" as they see it and cannot allege that they would be fraudulently induced to purchase the same products again in the future.[2]  Indeed, Plaintiffs make clear that they would purchase Grisi Soap Products in the future only "if the ingredients were changed" to match Plaintiffs' idea of a "natural" soap product; that is, Plaintiffs have alleged nothing more than that they might be willing to purchase Grisi Soap Products not currently in existence, should such a product one day become available on the market.  *See* FAC ¶ 51.  But the injunctive relief that Plaintiffs seek would not require that the composition of the Grisi Soap Products be changed.  Accordingly, Plaintiffs have not plausibly alleged that they would purchase the same Grisi Soap Products again, and they therefore lack standing to seek injunctive relief.  *Gasser*, 2017 WL 4773426, at *4.  The Court should dismiss Plaintiffs' injunctive relief claim.

## II.   The FAC Fails to State a Claim for "Natural Soap" as False or Misleading

### A.   Legal Standard Under FRCP 12(b)(6), 8, and 9(b)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  The facts alleged must "allow[] the court to draw the reasonable inference that the

---

[2] The Ninth Circuit's decision in *Davidson v. Kimberly-Clark*, 873 F.3d 1103 (9th Cir. 2017) is inapposite here.  In *Davidson*, the Ninth Circuit held (in what it acknowledged was a "close question") that the plaintiff could seek injunctive relief for future harm because she "had ***no way of determining***" whether the product's "flushable" labels were true.  *Id.* at 1116 (emphasis added).  But in this case, Plaintiffs ***can*** determine whether the products' labels are "true" simply by looking at the ingredient list.  And now that they know the "truth" about the ingredients about which they complain, they cannot claim a risk of future harm from that labeling, which discloses those very ingredients in all capital letters, in two languages.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A court must accept as true all material allegations in the complaint and reasonable inferences to be drawn from those allegations, but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 678 (a pleading is insufficient if it provides only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" (internal quotations and brackets omitted)); *Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

A complaint that sounds in fraud must satisfy Rule 9(b)'s heightened pleading requirement.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims alleging a "unified course of fraudulent conduct"); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  To satisfy Rule 9(b), Plaintiff must allege "the who, what, when, where, and how" of the alleged fraud, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).  "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quotations omitted); *see Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 (N.D. Cal. 2013).

### B.  Plaintiffs Have Failed to State a Claim Against Midway

The allegations about Midway in FAC ¶ 14 are naked conclusions.  No facts are alleged for the conclusion Midway "created and/or authorized the false, misleading and deceptive advertisements, packaging, and labeling for the Products."  Plaintiffs allege Midway "provides . . . distribution support strategy that includes marketing and

13

1    promotions, direct sales, merchandising, distribution and logistics."  FAC ¶ 16.[3]  Even

2    if that were true, and even if Midway performed those services for Grisi (which is not

3    alleged), none of those services are the gravamen of Plaintiffs' FAC or even relevant

4    to the FAC.  The <u>only</u> alleged falsity at issue is the word "natural" printed on the

5    boxes of Grisi soap that were imported by Midway.  No other "advertising" is alleged.

6    Plaintiffs have alleged no factual basis, much less a particularized one, to show that

7    *Midway* played any role at all the alleged deception.  Midway is nothing more than an

8    importer and distributor of Grisi products.  Moreover, Plaintiffs do not allege that they

9    purchased the products from Midway (because they allege to have purchased the

10   products at retail stores), or that Midway was the exclusive Grisi distributor for the

11   stores where they purchased the products.  *See* FAC ¶¶ 8, 10, 12.

12
13   **C.    The California and New York Statutory Counts (1-5) Under the CLRA, UCL, and NY GBL §§ 349-350 Fail to State a Claim Under FRCP 8**

14        Even if Plaintiffs had alleged labeling activity by Midway, they have not

15   plausibly alleged how the term "natural" on the Grisi Soap Products is false or

16   misleading.  Under California and New York law, a labeling claim is only actionable

17   if it is likely to deceive a "reasonable" consumer.  *See, e.g.*, *Lavie v. Procter &*

18   *Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *Freeman v. Time, Inc.*, 68 F.3d 285,

19   289 (9th Cir. 1995); *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 744 (S.D.N.Y. 2012);

20   *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (under the CLRA, UCL,

21   and FAL, a plaintiff must show "potential deception of consumers acting *reasonably*

22   in the circumstances—not just any consumers") (emphasis added); *Chapman v. Skype*

23   *Inc.*, 220 Cal. App. 4th 217, 226-227 (2013) (applying the same reasonable consumer

24   standard under the UCL); *accord Silva v. Smucker Nat. Foods, Inc.,* No. 14-cv-6154

25   (JG)(RML), 2015 WL 5360022, at *9 (E.D.N.Y. Sept. 14, 2015) ("Courts apply an

26   objective standard in determining whether acts or practices are materially deceptive or

27

28   _____
     [3] Plaintiffs quote this allegation, but no citation is provided for the quote.

1    misleading to 'a reasonable consumer acting reasonably under the circumstances.'")

2    (citation omitted).  Such reasonable consumers are not "*unwary*" or "overly

3    suspicious," *Hill*, 195 Cal. App. 4th at 1304, and "[a] representation does not become

4    'false and deceptive' merely because it will be unreasonably misunderstood by an

5    insignificant and unrepresentative segment of the class of persons to whom the

6    representation is addressed," *Lavie*, 105 Cal. App. 4th at 507.  Rather, the question is

7    whether "a significant portion of the . . . targeted consumers, acting reasonably in the

8    circumstances, could be misled."  *Id.* at 508.  "[T]he primary evidence in a false

9    advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100

10   (2003)—here, the products' packaging.

11          Numerous courts have dismissed claims when a product's label belies any

12   alleged deception.  In *Simpson v. Kroger Corp.*, the court rejected a claim that the

13   prominent use of the word "BUTTER" on a label could lead a reasonable consumer to

14   believe that he or she had purchased a product containing *only* butter.  As that court

15   recognized, it was "plain on both the top and side panels of the tubs in which the

16   products are sold" that they contained canola or olive oil as well as butter.  219 Cal.

17   App. 4th 1352, 1372 (2013).  In a similar vein, allegedly misleading language on the

18   label of a vitamin-enriched drink could not support a viable claim because it was not

19   used "in a vacuum," and "any ambiguity [about the vitamins in the product] [wa]s

20   clarified by the detailed information contained in the ingredient list, which explain[ed]

21   the exact contents."  *Hairston v. S. Beach Beverage Co.*, No. 12-cv-1429-

22   JFW(DTBx), 2012 WL 1893818, at *4-5 (C.D. Cal. May 18, 2012).  Nor could a

23   reasonable consumer be misled "into believing that Red Stripe is brewed in Jamaica"

24   despite representations on the label like "Jamaican Style Lager" and "The Taste of

25   Jamaica," because the "bottom of the packaging states, 'Brewed and bottled by Red

26   Stripe Beer Company Latrobe, PA.'" *Dumas v. Diageo PLC*, No. 15-cv-1681

27   BTM(BLM), 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016).  And in *Freeman*, the

28   Ninth Circuit affirmed the dismissal of claims about a sweepstakes mailer, even

15

1   though (unlike here) the "qualifying language [was] in small print," because the

2   consumer "would be put on notice that [winning the sweepstakes] was not guaranteed

3   simply by doing sufficient reading to comply with the instructions for entering the

4   sweepstakes." 68 F.3d at 289-90.  "Any ambiguity . . .  [wa]s dispelled by the

5   promotion as a whole."  *Id.* at 290.[4]

6         Plaintiffs' claims fail because it is simply "implausible that a reasonable

7   consumer would look only at the front portion of a label."  *Goldman v. Bayer AG*, No.

8   17-cv-0647-PJH, 2017 WL 3168525, at *7 (N.D. Cal. July 26, 2017).  When faced

9   with an ambiguous, undefined term like "natural" (instead of ***100%*** natural or ***all***

10  natural), a reasonable consumer "concerned about the effects of synthetic and

11  chemical ingredients in food, cleaning products, bath and beauty products[,] and

12  everyday household products," FAC ¶ 17, would turn the label over to determine what

13  specific "synthetic" ingredients might be included in a product that nowhere claims to

14  be "all" natural.  In this case, that same reasonable consumer would see—in a clear

15  and simple list (in both English and Spanish)— precisely the "synthetic" ingredients

16  about which Plaintiffs unreasonably complain.  *See* RJN Exs. A-D.  A reasonable

17  consumer reads, rather than disregards, this information; particularly if the consumer

18  is making purchasing decisions based on whether a product is natural or not.

19

20  [4] *See also Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)
    (rejecting claim that pictured items on snack labels were most prominent ingredients

21  because "[e]very reasonable shopper knows that the devil is in the details… [and] any
    potential ambiguity could be resolved by the back panel of the products, which listed

22  all ingredients in order of predominance"); *Shaker v. Nature's Path Foods, Inc.*, No.
    13-cv-1138-GW(OPx), 2013 WL 6729802, at *5 (C.D. Cal. Dec. 16, 2013) (rejecting

23  "[p]laintiffs' interpretation of the photograph and selective reading of the labels" on
    cereal); *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL 5513711, at

24  *7-8 (N.D. Cal. Oct. 4, 2013) ("the accused label itself makes it impossible for the
    plaintiff to prove that a reasonable consumer is likely to be deceived," including when

25  "each product expressly discloses its sugar content"); *McKinniss v. Gen. Mills, Inc.*,
    No. 07-cv-2521 GAF(FMDx), 2007 WL 4762172, at *4 (C.D. Cal. Sept. 18, 2007)

26  (rejecting claims that food labels were misleading for using words like "natural fruit

27  flavors" and pictures because "any reasonable consumer would be put on notice of the

28  product's contents simply by doing sufficient reading of the ingredient list").

1    Drawing on basic common sense, reasonable consumers would recognize that

2  mass-produced, processed soap products likely have some (if insignificant) synthetic

3  ingredients.  Courts dismiss suits where plaintiff's interpretation of a labeling claim

4  defies common sense.  *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978

5  (C.D. Cal. 2013) (finding a reasonable consumer would not interpret "natural" to

6  mean that pasta was "produced or existing in nature" where "they are a product

7  manufactured in mass . . . and the reasonable consumer is aware that Buitoni pastas

8  are not springing fully-formed from Ravioli trees and Tortellini bushes") (internal

9  citations omitted); *Barrett v. Milwaukee Elect. Tool, Inc.*, No. 14-1804 JAH(DHB),

10  2016 WL 4595947, at *5 (S.D. Cal. Jan. 26, 2016) (finding 100% handcrafted label on

11  hammers could not be "reasonably interpreted as meaning literally made by hand");

12  *accord In re 100% Grated Parmesan Cheese Mktg & Sales Practices Litig.*, 275 F.

13  Supp. 3d 910, 923 (N.D. Ill. 2017) (dismissing lawsuit regarding 100% parmesan

14  cheese claim and noting "[t]he products are packaged and shelf-stable at room

15  temperature, a quality that reasonable consumers know is not enjoyed by pure

16  cheese").

17    Here, Plaintiffs allege that they were misled because they focused on the word

18  "natural" in a corner of the packaging and determined that the Grisi Soap Products did

19  not contain any "synthetic" ingredients.  But like the plaintiffs' claims in *Pelayo*,

20  *Barrett,* and *In re 100% Grated Parmesan Cheese*, and so many others, Plaintiffs'

21  claims fail because they utterly defy common sense.  No reasonable consumer would

22  believe that a mass-produced, shelf-stable bar soap that works in various water

23  hardness conditions was completely free of synthetic ingredients—particularly where,

24  as here, the products are devoid of any claim that they are "all" or "100% natural."

25  For all of these reasons, Plaintiffs' California and New York consumer protection

26  claims should be dismissed for failure to state a claim.

27

28

### D.   The UCL and CLRA Claims Fail to Satisfy the Heightened Pleading Standards

When a plaintiff alleges fraudulent conduct and relies on such conduct as the basis for UCL or CLRA claims, the claim is "grounded" in or "sound[s] in fraud" such that a complaint "must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-04; *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (claims under the CLRA and UCL that sound in fraud must satisfy Rule 9(b)'s heightened pleading requirement); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012). Plaintiffs' causes of action under the UCL and CLRA trigger this requirement. This requires something "*more* than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124 (internal quotation omitted). Additionally, because this case involves a "price premium" theory of injury, Plaintiffs must also allege with particularity how they paid a premium as a result of the alleged misrepresentation. *Bailey v. Kind, LLC*, No. 16-168-JLS(DFMx), 2016 WL 3456981, at *6 (C.D. Cal. June 16, 2016).

Here, Plaintiffs fail to allege at all, let alone with particularity, any labeling activity by Midway. Moreover, while Plaintiffs allege that the phrase "natural soap" is misleading because the products contain one to three allegedly "synthetic" ingredients, Plaintiffs fail to provide any basis for their assertion that the products are not, in fact, natural. In fact, the Grisi Soap Products contain mostly natural ingredients, which is consistent with its "natural soap" labeling (which nowhere states that the product contains *all* or *only* natural ingredients).[5] Plaintiffs further conclusorily allege that the "natural" description matters because consumers "belie[ve]" that natural products are "safer and healthier than alternative products that

---

[5] The USDA's sliding scale treatment of "organic" labeling is instructive: "100% Organic" can be used for products containing 100% organic ingredients, while the single word "organic" (without a percentage qualifier) can be used to label any product containing a minimum of 95% organic ingredients. *See Organic Labeling Standards*, U.S. Dept. Agric., https://www.ams.usda.gov/grades-standards/organic-labeling-standards (last visited April 15, 2018).

are not represented as natural."  FAC ¶ 17.  But Plaintiffs do not provide any basis for how that "belief" is reasonable; nor do they plead what safety and health benefits they expected to receive from the Grisi soap compared to soap not labeled "natural"; nor do they allege that they did not in fact receive those unnamed benefits.

Additionally, Plaintiffs fail to explain the circumstances surrounding their purchase of the Grisi Soap Products:  specifically, when Plaintiffs purchased the products and when and how they came to learn of the alleged misrepresentation on the products' labels.  Plaintiffs fail to allege that they purchased the Grisi Soap Products for household purposes or that they used the products, thus failing to plead they are "consumers" under the CLRA.[6]  Plaintiffs further allege that they paid a "premium" price as compared to products that were not labeled "natural," but fail to plead what they paid for the Grisi Soap Products they purchased or the identity and price for the allegedly comparable products and the percentage of the alleged price premium.  For all of these reasons, Plaintiffs' fraud claims should be dismissed.

### E.   Plaintiffs' Express Warranty Claim Fails (Count Six)

Plaintiffs claim for breach of an express warranty, FAC ¶¶ 104-21, fails for the same reasons Plaintiffs' statutory claims fail and all claims against Midway fail.  The terms of an express warranty must constitute an "affirmation of fact or promise" or a "description of the goods."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).  A representation does not, however, qualify as an express warranty if it is contradicted by more specific language on the same label.  That proposition is encoded in California law, *see* Cal. Com. Code §§ 2317, 10215, and reflected in numerous decisions.  *See, e.g.*, *Goldman*, 2017 WL 3168525, at *9-10; *McKinniss v. Gen. Mills, Inc.*, No. 07-cv-2521 GAF(FMDx), 2007 WL 4762172, at *5 (C.D. Cal. Sept. 18, 2007) ("Defendant truthfully disclosed the ingredients in each of these five

---

[6] This omission is particularly curious in light of Plaintiffs' failure to allege even the *year* in which Balmore Prudencio purchased the products, suggesting that he may have purchased the products after Plaintiff Nicky Rivera filed and dismissed the New York lawsuit in an attempt to manufacture standing on behalf of a California class.

1  products but Plaintiffs chose not to read them.  Plaintiffs' selective reading or alleged

2  misunderstanding cannot give rise to an express warranty claim.").

3  Here, the products at issue are each labeled with the phrase "Natural Soap."

4  Each product's packaging lists the ingredients contained in the soap in both English

5  and Spanish.  The products do not represent that the soap is made of "*100%*" or "*all*"

6  natural products, or otherwise quantifiably represent there are ***only*** natural ingredients

7  in the products (rather than the products simply contain natural ingredients).  A

8  reasonable consumer motivated to purchase all or 100% natural soap would

9  investigate further by reviewing the ingredients in the soap.  *See* RJN Exs. A-D.  The

10  specific list of the allegedly synthetic ingredients in the Grisi Soap Products defeats

11  Plaintiffs' warranty claims and they should be dismissed.  *See, e.g.*, *Gasser*, 2017 WL

12  4773426, at *7 (denying defendant's motion to dismiss as to a warranty claim that the

13  products were "100% natural," but granting the motion as the unquantifiable phrases

14  "nourish naturally with our botanical blends" and "obsessively natural kids," as "no

15  reasonable consumer would attribute these statements as affirmations that the products

16  [were] ***all*** natural") (emphasis added).

17  Further, numerous New York courts have held that privity is required in express

18  warranty actions where only economic loss is alleged.  Therefore, Plaintiffs' New

19  York express warranty claim should also be dismissed because the Plaintiffs are not in

20  privity with Midway, which simply imports and distributes the Grisi Soap Products.

21  *See, e.g.*, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014);

22  *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 624-25 (S.D.N.Y. 2012).

23      **F.**    **Plaintiffs' Magnuson Moss Warranty Act (Count Seven) Claim Fails**

24  Under the Magnuson Moss Warranty Act ("MMWA"), the amount in

25  controversy of an individual claim must be ***greater or equal to $25.00***, and the

26  number of ***named*** plaintiffs must exceed 100.  15 U.S.C. § 2310(d)(3)(C).  In

27  addition, the MMWA applies only to products that cost ***more than five dollars***.  15

28  U.S.C. § 2302(e).  There are only three named plaintiffs in this action and they fail to

1    allege that the products at issue cost more than five dollars (or that any individual

2    claim meets or exceeds $25.00).  The Court lacks jurisdiction to review this claim.

3         Plaintiffs' claim also fails because the allegedly misbranded products do not

4    constitute warranties and are therefore not covered under the Act.  *Anderson v. Jamba*

5    *Juice, Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012).  Under the MMWA, a

6    "written warranty" means a "written affirmation of fact or written promise made in

7    connection with the sale of a consumer product by a supplier to a buyer which relates

8    to the nature of the material . . . and affirms or promises that such material . . . *is*

9    *defect free or will meet a specified level of performance over a specified period of*

10   *time*."  15 U.S.C. § 2301(6)(A) (emphasis added).  Courts in the Ninth Circuit have

11   consistently held that "natural" labels are "mere product descriptions" that do not

12   constitute a written warranty under the MMWA.  *See, e.g.*, *Anderson v. Jamba Juice*,

13   888 F. Supp. 2d 1000 (N.D. Cal. 2012) ("The statement 'All Natural' is a general

14   product description rather than a promise that the product is defect free."); *Hairston v.*

15   *South Beach Beverage Co., Inc.*, No. CV 12–1429–JFW (DTBx), 2012 WL 1893818,

16   at *6 (C.D. Cal. May 18, 2012) (representations that beverage was "all natural with

17   vitamins" "are 'product descriptions' rather than promises that [beverage] is defect-

18   free, or guarantees of specific performance levels").

19        Here, as in *Anderson* and *Hairston*, the phrase "natural soap" is a mere product

20   description and does not constitute a written warranty under the MMWA.  Even if it

21   did, the presence of synthetic or artificial ingredients would not constitute a "defect."

22   *See, e.g.*, *Larsen v. Trader Joe's*, No. C 11–05188 SI, 2012 WL 5458396, at *3 (N.D.

23   Cal. June 14, 2012) ("The synthetic ingredients at issue were presumably knowingly

24   and purposely added or used in the process of making these food products.  As a

25   defect primarily indicates an omission or an aberration, the deliberate use of these

26   ingredients does not comport with the plain meaning of the word 'defect.'").  For all

27   of these reasons, Plaintiffs' MMWA claims must be dismissed with prejudice.

28

### G.     Plaintiffs' Implied Warranty Claim (Count Nine) Fails

To state an implied warranty claim under California and New York law, Plaintiffs must show (1) that they were in vertical privity with Midway; and (2) that the products "did not possess even the most basic degree of fitness for ordinary use," i.e., for use as soap to clean the body.  *See, e.g.*, *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 895-96 (C.D. Cal. 2013); *Clemens v. DaimlerChryslyer Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).[7]  A buyer and seller stand in privity if they are in "adjoining links of the distribution chain."  *Clemens*, 534 F.3d at 1023.  An end consumer who purchases the product from the retailer is not in privity with the manufacturer (or, in this case, the middleman distributor).  *See id.*

Plaintiffs allege that they purchased the Grisi Soap Products from a retailer, and ***not*** Midway.  Thus, Plaintiffs lack the vertical privity with Midway required to bring an implied warranty claim.  Further, nowhere do Plaintiffs allege that the soap products they purchased were not merchantable for use as soap.  *Compare Viggiano*, 944 F. Supp. 2d at 896-97 (dismissing implied warranty of merchantability claim regarding a diet soda because plaintiff failed to allege any facts suggesting that it was not merchantable as a diet drink) *with Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, No. 01–cv–4203 MMC, 2005 WL 1528703, *1 (N.D. Cal. June 29, 2005) (alleging in support of a breach of implied warranty claim that "the corks damaged the smell, character and drinkability of [the wine]").  For these reasons, Plaintiffs' implied warranty claim must be dismissed.

### H.     Alternatively, the Case Should be Stayed Under the Primary Jurisdiction Doctrine Pending Imminent Guidance from the FDA

If the Court is not inclined to dismiss this action for the reasons noted above, and it should, the Court should alternatively stay the action in deference to the FDA's

---

[7] *Accord Miller v. Gen. Motors Corp.*, 471 N.Y.S. 2d 280, 282 (N.Y. App. Div. 1984) (under New York law, where only economic loss is alleged, "a cause of action does not lie against a remote [seller] for the breach of an implied warranty").

1  primary jurisdiction over cosmetic labeling to consider the critical issues presented

2  here.  Plaintiffs allege in their FAC that natural products comprise a $180 billion

3  dollar industry, yet "consumers lack the meaningful ability to test or independently

4  ascertain or verify whether a product is natural, especially at the point of sale."  FAC

5  ¶ 17, 23.  FDA's guidance on what constitutes "natural" will provide critical help to

6  both manufacturers who label natural products as well as the consumers who purchase

7  them.  *See* H.R. Rep. No. 115-232, at 72 (July 17, 2017) (directing the FDA to

8  "provide a report . . . on the actions and timeframe for defining 'natural' so that there

9  is a uniform national standard for the labeling claims and consumers and food

10  producers have certainty about the meaning of the term").

11       The primary jurisdiction doctrine applies "when there is '(1) the need to resolve

12  an issue that (2) has been placed by Congress within the jurisdiction of an

13  administrative body having regulatory authority (3) pursuant to a statute that subjects

14  an industry or activity to a comprehensive regulatory authority that (4) requires

15  expertise or uniformity in administration . . . .'"  *Astiana v. Hain Celestial Group,*

16  *Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) (quoting *Syntek Semiconductor Co., Ltd., v.*

17  *Microchip Tech., Inc.*, 307 F.3d 775, 781-82 (9th Cir. 2002)).  The Ninth Circuit and

18  district courts have determined that each of these factors is satisfied where, as here,

19  the issue concerns litigation that turns on the use of the term "natural" on food and

20  cosmetic labeling.  *See, e.g.*, *Astiana*, 783 F.3. at 761 ("On the record before it, the

21  district court did not err in invoking primary jurisdiction.  Determining what chemical

22  compounds may be advertised as natural on cosmetic product labels is 'a particularly

23  complicated issue that Congress has committed to' the FDA.  *See* 21 C.F.R. § 700.3 *et*

24  *seq*.  Obtaining expert advice from that agency would help ensure uniformity in

25  administration of the comprehensive regulatory regime established by the FDCA.").

26       Courts reticent to apply the primary jurisdiction doctrine, on the other hand,

27  generally cite two primary concerns:  that the resolution of litigation may be

28  significantly delayed pending issuance of FDA guidance; and that, in any event, the

23

FDA guidance will apply only to food labeling, and not cosmetics.  Neither of these arguments are persuasive here.

First, while it was previously unknown when, if ever, the FDA would provide guidance on "natural" labeling, such guidance is now *imminent*.  In November 2015, the FDA began actively reviewing the use of the term "natural" in the labeling of food products.  *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments* 80 Fed. Reg. 69905, 69905 (Nov. 12, 2015).  The comment period regarding the term has now been closed for almost two years.  Docket Folder Summary, *Use of the Term "Natural" in the Labeling of Human Food Products*, Docket No. FDA-2014-N-1207.  Congress has instructed the FDA to provide a timeframe by which it will provide guidance on the term, illustrating that Congress is monitoring the FDA on this issue and expects action to be taken sooner than later.  *See* H.R. Rep. No. 115-232, at 72 (July 17, 2017).  And significantly, in February 2018, FDA Commissioner Dr. Scott Gottlieb made the following statement:

"We recognize that consumers are trusting in products labeled 'natural' without clarity around the term . . . ." "Consumers have called upon the [FDA] to help define the term 'natural' and we take the responsibility to provide this clarity seriously.  We will have more to say on the issue *soon*."  Julie Creswell, *Is it Natural? Consumers, and Lawyers, Want to Know*, N.Y. Times (February 16, 2018), https://www.nytimes.com/2018/02/16/business/natural-food-products.html (emphasis added).  Given the imminent forthcoming guidance on the singular issue in this case, there is no danger of a years-long delay in proceedings.  Rather, according to the FDA itself, the decision is coming "*soon*."  That decision will help guide this court and the parties on the singular issue in this case before time and money are spent on potentially needless motion practice, expert fees, and discovery.

Further, although the FDA's regulatory review is focused on food labeling, its guidance will still be instructive to all FDA-regulated industries.  Plaintiffs' own FAC cites FDA guidance regarding food products to allege that the inclusion of calcium

1    carbonate in the Grisi Soap Products renders them "no longer natural."  FAC ¶ 19.

2    Plaintiffs therefore effectively concede that FDA guidance on the issue of "natural"

3    labeling in food products is relevant to their claims regarding the Grisi Soap Products.

4    *See Rosillo v. Annie's Homegrown Inc.*, No. 17-cv-02474-JSW, 2017 WL 5256345, at

5    *3 (N.D. Cal. Oct. 17, 2017) ("Perhaps nothing highlights this relevance more than

6    Plaintiffs' own amended complaint which cites the FDA's . . . current guidance

7    regarding the term natural to support their allegations that the Defendants' products

8    are not 'natural' and are therefore misleading.").  Thus, if the Court does not dismiss

9    the case, it should alternatively stay the action pending imminent guidance from the

10   FDA regarding the meaning of the term "natural" on product labeling.

## CONCLUSION

12        For the foregoing reasons, Plaintiffs' FAC should be dismissed with prejudice.

13   Dated: May 7, 2018                         SIDLEY AUSTIN LLP

14

15                                              By: */s/ Rachael A. Rezabek*

16                                                 Rachael A. Rezabek
                                                   Attorneys for Defendant
17                                                 MIDWAY IMPORTING, INC.

18

19

20

21

22

23

24

25

26

27

28