**SHOOP A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq., SBN 220576
Thomas S. Alch, Esq., SBN 136860
350 S. Beverly Drive
Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700

*Attorneys for Plaintiffs*
*and the class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

_____  x

Balmore Prudencio, and Michelle
Quintero, individually on behalf of themselves and all
others similarly situated, and John Does (1-100) on
behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

Midway Importing, Inc. and Grisi USA, LLC

Defendants.

_____  x

:
:
:
:   Case No.: 2:18-cv-01469-AB-RAO
:
:
:
:
:
:   **SECOND AMENDED**
:   **CLASS ACTION**
:   **COMPLAINT**
:
:   **JURY TRIAL DEMANDED**
:

Plaintiffs Balmore Prudencio, and Michelle Quintero (hereinafter

"Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys,

allege the following upon information and belief, except for those allegations pertaining to

Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

1.    This action seeks to remedy the deceptive and misleading business practices

of Midway Importing, Inc. (hereinafter "Defendant Midway") and Grisi USA, LLC

1

(hereinafter "Defendant Grisi USA") with respect to the marketing and sales of the following Grisi product line (hereinafter the "Products") throughout the State California, and throughout the country:

- Grisi Regenerative Aloe Vera Natural Soap

- Grisi Balance Oat Natural Soap

- Grisi Lightening Mother of Peal Natural Soap

- Grisi Moisturizer Donkey's Milk Natural Soap

2.      Defendants distribute the Products using a marketing and advertising campaign centered around claims that appeal to health- conscious consumers, i.e., that its Products are "Natural".  However, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

3.      Plaintiffs and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Products are "Natural" when purchasing the Products.  Plaintiffs and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural".  Given that Plaintiffs and Class Members paid a premium for the Products based on Defendants' misrepresentations that they are "Natural", Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

4.      Defendants' conduct violated and continues to violate, *inter alia*, California Business Codes §§ 17200 and 1750.  Defendants breached and continues to breach their express and implied warranties regarding the Products.  Defendants have been and continue to be unjustly enriched.  Accordingly, Plaintiffs bring this action against

Defendants on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).    Plaintiffs Balmore Prudencio and Michelle Quintero are citizens of the State of California. Defendant Midway is a corporation with its principal place of business in Houston, Texas, and is organized and exists under the laws of the State of Texas.  Defendant Grisi USA is is a corporation with its principal place of business in Dallas, Texas, and is organized and exists under the laws of the State of Texas. Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

6.      This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of California, contract to supply goods within the State of California, and supply goods within the State of California.  The transactions giving rise to this case occurred in California.

7.      Venue is proper because Balmore Prudencio, Michelle Quintero, and many Class Members reside in the Central District of California, and throughout the State of California, and Defendant Midway maintains offices in Santa Fe Springs, California.

## PARTIES

**Plaintiffs**

8.      **Plaintiff Balmore Prudencio** is an individual consumer, who, at all times material hereto, was a resident of Orange County, California.  On approximately ten occasions in 2016 and 2017, he purchased the Products, including the Grisi Regenerative

Aloe Vera Natural Soap and the Grisi Lightening Mother of Pearl Soap at a Walmart in Santa Ana, California.

9.      Mr. Prudencio purchased the Products because he read the packaging, which represented that the Products are "Natural".  Mr. Prudencio relied on the Defendants' false, misleading, and deceptive representations that the Products are "Natural".  Had he known the truth – that the representations he relied upon in making his purchase were false, misleading, and deceptive – he would not have purchased the Products or paid as much as he did for them. If the Products were actually "Natural," as represented on the Products' labels, Plaintiff would purchase the Products in the immediate future. However, Plaintiff cannot be sure whether future representations on the label are truthful.

10.      **Plaintiff Michelle Quintero** is an individual consumer, who, at all times material hereto, was a resident of Los Angeles County, California.  During the class period, she purchased the Products in California.  On several occasions between November 2016 and April 2017, she purchased the Grisi Regenerative Aloe Vera Natural Soap and the Grisi Lightening Mother of Pearl Soap at a Walmart in Rosemead, California.

11.      Ms. Quintero purchased the Products because she read the packaging, which represented that the Products are "Natural".  Ms. Quintero relied on the Defendants' false, misleading, and deceptive representations that the Products are "Natural".  Had she known the truth – that the representations she relied upon in making her purchase were false, misleading, and deceptive – She would not have purchased the Products or paid as much as she did for them.  If the Products were actually "Natural," as represented on the Products'

labels, Plaintiff would purchase the Products in the immediate future.  However, Plaintiff cannot be sure whether future representations on the label are truthful.

**Defendants**

12.     Defendant Midway is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.  Defendant markets, advertises, and distributes products throughout the United States.

13.     Midway describes its sales strategy in the following manner: "Midway provides its suppliers and merchandisers with a comprehensive Hispanic HBC distribution support strategy that includes marketing & promotions, direct sales merchandising, distribution & logistics, and a full suite of leading Hispanic Health & Beauty Care products."[1]

14.     Defendant Grisi USA is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Dallas, Texas.  Upon information and belief, Grisi USA is a subsidiary of Grisi Hnos SA De CV, a pharmaceutical and chemical company based in Mexico, which manufactures the Products.

15.     Defendants Grisi USA and Midway are together responsible for labeling, marketing, advertising, and distributing Grisi Products in the United States, including the soap Products at issue.

16.     Defendants Grisi USA and Midway authorized the false, misleading, and deceptive advertisements, labels, and packaging for the Products.

---

[1] *See* http://www.midwayimporting.com/about

17.     Grisi USA and Midway have conducted the business practices described herein through an interrelated network of companies that have common employees, ownership, and business functions.

18.     In 2013, Grisi Hnos SA De CV acquired 51% of Midway in order to strengthen its presence in the United States in order to have greater control of the marketing and distribution of its products (including soap products) in the United States. [2]

19.     At least since that time, Grisi USA and Midway have operated as a common enterprise while engaging in the acts and practices and other violations of law alleged herein, including labeling, marketing and advertising the Products as "Natural."

20.     For example, Mr. Oliver Pegueros, Business Manager for "Grisi USA at Midway Importing, Inc," based in Houston, Texas, is responsible for "*all* business and marketing aspects of Grisi brands in the U.S." [3]

21.     Additionally, Grisi Hnos SA De CV's Strategic Planning Director, Alejandro Grisi, is also employed as a director with Midway. [4]

---

[2] *See* http://www.elfinanciero.com.mx/empresas/grisi-inicio-como-botanica-y-ya-exporta-a-25-paises (translated using Google Translate).

*See* https://www.entrepreneur.com/article/257581(Describing an interview with Mauricio Alvarez, director of planning in Grisi, in which Alvarez states: "The company decided to be a shareholder of Midway, with headquarters in Houston, in order to have greater control of the distribution, presentation and placement of soaps and beauty products in the commercial chains serving 20 million Latinos.") (translated using Google Translate).

[3] *See* Exhibit 1, LinkdIn page for Oliver Pegueros, Business Manager for "Grisi USA at Midway Importing, Inc." Mr. Pegueros describes his job as a "market strategist" who has integrated "powerful marketing strategies," is responsible for overseeing "all business and marketing aspects of Grisi brands in the U.S." and is currently expanding the Grisi family of brands throughout the U.S.A.

[4] *See* https://industrytoday.com/article/naturally-balanced/; http://www.hoovers.com/company-information/cs/company profile.midway_importing_inc.1d2280a6e654f581.html

# FACTUAL BACKGROUND

22.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as the Defendants have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[5] Reasonable consumers, including Plaintiffs and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

23.     Despite the Products containing a number of synthetic ingredients, Defendants market the Products as being "Natural".  The Products' labeling is depicted below:

---

[5] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Grisi Regenerative Aloe Vera Natural Soap**



**Synthetic Ingredients:**

Sodium Lauryl Sulfate
Citric Acid
Titanium Dioxide

**Grisi Balance Oat Natural Soap**



**Synthetic Ingredients:**

Sodium Lauryl Sulfate

1

**Grisi Lightening Mother of Pearl Natural Soap**

2

3



4

5

6

7

8

9

10

11

12

13

14

15

16

**Synthetic Ingredients:**

17

18

Sodium Lauryl Sulfate
Calcium Carbonate

19

20

21

22

23

24

25

26

27

28

**Grisi Moisturizer Donkey's Milk Natural Soap**



**Synthetic Ingredients:**

Sodium Lauryl Sulfate

24.     Defendants' representations that the Products are "Natural" is false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

a. **Sodium Lauryl Sulfate** is a synthetic additive as stated in C.F.R. 172.822. It is an active ingredient prepared by sulfation of lauryl alcohol, followed by neutralization with sodium carbonate. [6]

b. **Calcium Carbonate** is produced from calcium hydroxide, calcium chloride, or as a byproduct in the lime soda process.  Federal regulations recognize calcium hydroxide as a synthetic compound (and the FDA has declared that calcium chloride renders a food no longer "natural.")[7]  The lime soda process employs hazardous and synthetic substances and requires processing techniques so excessive so as to render the finished product unnatural.  In fact, the EPA has promulgated regulations specifically addressing the environmental impact of calcium carbonate produced through the lime process and by recovery from the Solvay waste products.  Additionally, when used in drugs, calcium carbonate is listed as a synthetic compound by federal regulation.

c. **Titanium Dioxide** is a color additive that is synthetically prepared Ti02, free from admixture with other substances. [8]

---

[6] http://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_G-52_1-Sep-93.pdf

[7] *See* FDA Warning Letter to Karl A. Hirzel, Hirzel Canning Co., (Aug. 29, 2001).

[8] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=73.575

d. **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

25.     Given the presence of these synthetic and artificial ingredients in the Products, Defendants' representations that they are "Natural" are deceptive, false, and misleading.

26.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

27.     Surveys and other market research, including expert testimony Plaintiffs intend to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients.

28.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

29.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back

of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

30.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent front-of-the-Products claims, representations, and warranties that the Products are "Natural".

31.     Defendants did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendants' "Natural" claims to mean that the Products are "Natural" and do not contain synthetic ingredients.

32.     Defendants' representations that the Products are "Natural", induced consumers, including Plaintiffs and Class Members, to pay a premium to purchase the Products.  Plaintiffs and Class Members relied on Defendants' false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented to be "Natural".  If not for Defendants' misrepresentations, Plaintiffs and Class Members would not have been willing to purchase the Products at a premium price.  Accordingly, they have suffered an injury as a result of Defendants' misrepresentations.

33.     Consumers rely on label representations and information in making purchasing decisions.

34.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendants' awareness that "Natural" claims are material to consumers.

35.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

36.     Plaintiffs and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

37.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class members.

38.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

39.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiffs and the Class members in that they:

a.  Paid a sum of money for Products that were not what Defendants represented;

b.  Paid a premium price for Products that were not what Defendants represented;

c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented; and

e.  Used a product that was of a different quality than what Defendants promised.

40.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiffs and the Class members would not have been willing to purchase the Products.

41.     Plaintiffs and the Class members paid for Products that were "Natural" but received Products that were not "Natural". The Products Plaintiffs and the Class members received were worth less than the Products for which they paid.

42.     Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

43.     Consequently, Plaintiffs and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## CLASS ALLEGATIONS

44.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is well situated for classwide resolution, including injunctive relief.

45.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

46.     Plaintiffs also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of California at any time during the Class Period (the "California Subclass").

47.     The Class and  the California Subclassshall be referred to collectively throughout the Complaint as the "Class."

48.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy and superiority because:

49.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

50.     <u>Commonality</u>: The questions of law and fact common to the Class Members, which predominate over any questions which may affect individual Class Members, include, but are not limited to:

      a.  Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

      b.  Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c. Whether Defendants made false and/or misleading statements to the Class and the public concerning the contents of their Products;

d. Whether Defendants' false and misleading statements concerning their Products were likely to deceive the public;

e. Whether Plaintiffs and the Class are entitled to injunctive relief;

f. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

These issues predominate over individual issues. This controversy will largely turn on Defendants' uniform behavior in misrepresenting the Products to the Class which will be evaluated under an objective "reasonable person" standard. Individual inquiries into the conduct of members of the Class will not be necessary.

51. <u>Typicality</u>: Each Plaintiff is a member of the national Class. Plaintiffs Prudencio and Quintero are members of the California Subclass. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendants' Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

52. <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this

action.  Plaintiffs have no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel. The Class is properly brought and should be maintained as a class action under Rule 23(b). Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

53.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members are modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.  When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase its Products as being "Natural."

54.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**INJUNCTIVE CLASS RELIEF**

55.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, the Defendants have engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendants' conduct has

been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiffs do not know if they can rely on Defendants' label claims in the future, but would purchase the Products again if the ingredients were changed so that they indeed were "Natural".

56.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.   Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' Products have been purchased by thousands of people throughout the United States;

b.   Commonality: Questions of law and fact are common to members of the Class.  Defendants' misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendants to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i.   Resolution of the issues presented in the 23(b)(3) class;

ii.   Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

iii.  Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel their Products as being "Natural".

c.  <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (i.e. Defendants' deceptive and misleading marketing, labeling, and advertising practices). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendants' Products which were sold unfairly and deceptively to consumers throughout the United States.

d.  <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class.  Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights.  In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

57.  The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed their Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as

Defendants would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products. Plaintiffs would purchase the Products again if the ingredients were changed so that they indeed were "Natural".

**FIRST CAUSE OF ACTION**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.**
**(Brought by Plaintiffs Prudencio and Quintero on behalf of the California Subclass)**

58.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.     Plaintiffs Prudencio and Quintero have standing to pursue this claim under California's Unfair Competition Law ("UCL") because they suffered an injury-in-fact and lost money as a result of Defendants' unfair practices.  Specifically, they expended more money in the transaction than they otherwise would have due to Defendants' conduct.

60.     Advertising and labeling the Products as "Natural" when they contain synthetic ingredients constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, et seq.

61.     The conduct of the Defendants harms the interests of consumers and market competition.  There is no valid justification for Defendants' conduct.

62.     Defendants engaged in unlawful business acts and practices by breaching implied and express warranties, and violating the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

63.     Defendants engaged in fraudulent business practices by knowingly misrepresenting the Products as "Natural" when they contain synthetic ingredients.  Such

practices are devoid of utility and outweighed by the gravity of harm to Plaintiffs Prudencio and Quintero and the California Subclass who lost money or property by paying for the defective product.

64.     Each of Defendants' unfair, unlawful and fraudulent practices enumerated above was the direct and proximate cause of financial injury to Plaintiffs Prudencio and Quintero and the Class. Defendants has unjustly benefitted as a result of its wrongful conduct. Plaintiffs Prudencio and Quintero and the California Class members are accordingly entitled to have Defendants disgorge and restore to Plaintiffs Prudencio and Quintero and California Class members all monies wrongfully obtained by Defendants as a result of the conduct as alleged herein.

65.     Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs Prudencio and Quintero and the Class seek an order of this Court enjoining Defendants from continuing to engage in unfair, unlawful and deceptive practices and any other act prohibited by law, including the acts set forth herein.

## SECOND CAUSE OF ACTION
## VIOLATION OF CAL. CIV. CODE § 1750, ET SEQ.
### (Brought by Plaintiffs Prudencio and Quintero on Behalf of the California Subclass)

66.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67.     The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices.  The CLRA applies to Defendants' acts and practices because the Act covers transactions involving the sale of goods to consumers.

68.     Plaintiffs Prudencio and Quintero and members of the California Subclass members are "consumers" within the meaning of section 1761(d) of the California Civil Code, and they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Products.

69.     The Products are "goods" under Cal. Civ. Code §1761(a).

70.     Defendants' unfair and deceptive business practices were intended to and did result in the sale of the Products.

71.     Defendants violated the CLRA by engaging in the following unfair and deceptive practices:

(1) Representing that Products have characteristics, uses or benefits that they do not have, in violation of section 1770(a)(5);

(2) Representing that Products are of a particular standard, quality, or grade when they are not, in violation of section 1770(a)(7); and

(3) Advertising Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

72.     If Plaintiffs Prudencio and Quintero and the California Class members had known this fact, they would not have purchased the Products at all or purchased the Products at the prices they did.

73.     As a direct and proximate result of Defendants' conduct, Plaintiffs Prudencio and Quintero and the California Class suffered injury.

74.     Pursuant to California Civil Code § 1782(a), Plaintiffs Prudencio and Quintero sent Defendant Midway a CLRA notice letter via certified mail, return receipt

requested, which was delivered on or around July 19, 2017, advising Defendant that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

75.     As of the date of this filing, Plaintiffs have not received a response.

76.     Accordingly, Plaintiffs seek damages under the CLRA in an amount to be determined at trial.

77.     With respect to Defendant Grisi USA, at this time, Plaintiffs seek only injunctive relief, pursuant to the CLRA.  On or around September 11, 2018, Plaintiffs sent Defendant Midway a CLRA notice letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  If Defendant fails to properly compensate Plaintiffs and the class, Plaintiffs will seek leave to amend this cause of action to assert monetary Damages claims against Grisi USA.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Brought by Plaintiffs On Behalf of all Class Members)**

78.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     Defendants provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural".

80.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

81.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

82.     Plaintiffs and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

83.     Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiffs, on behalf of themselves and Class Members, placed Defendants on notice of its breach, giving Defendants an opportunity to cure their breach, which they refused to do.

84.     Defendants breached the express warranty because the Products are not "Natural" because they contain synthetic ingredients.

85.     Defendants' conduct has breached the express warranty laws of all states, including California.

86.     As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(Brought by Plaintiffs on Behalf of All Class Members)**

87.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

89.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

90.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

91.     Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

92.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

93.     Defendants represented in writing that the Products are "Natural".

94.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

95.     As alleged herein, Defendants breached the written warranty by selling consumers Products that are not "Natural". The Products do not conform to the Defendants' written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(Brought by Plaintiffs on Behalf of all Class Members)**

96.     Defendants violated the unfair and deceptive acts and practices laws of all states by representing that the Products are "Natural".

97.     Contrary to Defendants' representations, the Products are not "Natural".

98.     Defendants' misrepresentations were material to Plaintiffs' and Class Members' decision to pay a premium for the Products.

99.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

100.    As a result of Defendants' violations of the states unfair and deceptive practices laws, Plaintiffs and Class Members paid a premium for the Products.

101.    Pursuant to the unfair and deceptive practices laws of all states, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**(Brought by Plaintiffs on Behalf of all Class Members)**

102.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.    Defendants are in the business of manufacturing, distributing, marketing and advertising the above listed products.

104.   Under the Uniform Commercial Code's implied warranty of merchantability, the Defendants warranted to Plaintiffs and Class Members that the Products are "Natural".

105.   Defendants breached the implied warranty of merchantability in that Defendants' Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendants' Products if they knew that they actually contained synthetic ingredients, that are not "Natural".

106.   Within a reasonable amount of time after the Plaintiffs discovered that the Products contain synthetic ingredients, Plaintiffs notified the Defendants of such breach.

107.   The inability of the Defendants' Products to meet the label description was wholly due to the Defendants' fault and without Plaintiffs' or Class Members' fault or neglect, and was solely due to the Defendants' manufacture and distribution of the Products to the public.

108.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendants' Products, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the FRCP; and Plaintiffs Prudencio and Quintero as representatives of the California Subclass;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendants to correct their practices and to comply consumer protection laws nationwide, including California consumer protection laws;

(c) Awarding monetary, compensatory, statutory and punitive damages;

(d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated:  September 11, 2018

**SHOOP A PROFESSIONAL LAW CORPORATION**

David R. Shoop /s/

By: _____

David R. Shoop, Esq., SBN 220576
Thomas S. Alch, Esq., SBN 136860
350 S. Beverly Drive
Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/
By: _____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com


**LEEDS BROWN LAW, P.C.**

Jeffrey Brown /s/
By: _____
Jeffrey Brown, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com