Michael L. Mallow (SBN 188745)
mmallow@sidley.com
Amy P. Lally (SBN 198555)
alally@sidley.com
Rachel A. Straus (SBN 268836)
rstraus@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9662
Facsimile: +1 310 595 9501

Alexandria V. Ruiz (SBN 313286)
aruiz@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, 40th Floor
Los Angeles, CA 90013
Telephone: +1 213 896 6666
Facsimile: +1 213 896 6600

Attorneys for Defendants
MIDWAY IMPORTING, INC. and
GRISI USA, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Balmore Prudencio, and Michelle Quintero, individually on behalf of themselves and all others similarly situated, and John Does (1-100) on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>Midway Importing, Inc. and Grisi USA, LLC<br><br>Defendants. | Case No. 2:18-cv-01469-AB-RAO<br><br>Assigned to: Hon. André Birotte, Jr.<br><br>**DEFENDANTS MIDWAY IMPORTING, INC. AND GRISI USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>[Filed Concurrently with Notice of Motion to Dismiss Second Amended Complaint; and [Proposed] Order]<br><br>Date:        December 14, 2018<br>Time:        10:00 a.m.<br>Ctrm::        7B<br><br>Complaint Filed: February 22, 2018 |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ....................................................................................................... 5

I.    Plaintiffs Once Again Fail to Plead Facts that Plausibly Establish Defendants' Liability Under Any Legal Theory. .................................... 5

II.   Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted. ............... 8

    A.    Plaintiffs' UCL (Count 1) and CLRA (Court 2) Claims Should Be Dismissed. ............................................................................. 8

        1.    Plaintiff s Fail to Satisfy the Heightened Pleading Standards of Rule 9 for their UCL and CLRA Claims. ..................... 8

        2.    Plaintiffs' UCL and CLRA Claims Necessarily Fail Because "Natural Soap" is Not Plausibly Deceiving or Misleading. ........... 9

    B.    Plaintiffs' Claim for Violation of State Consumer Protection Statues (Count 5) Should be Dismissed. ................................. 13

    C.    Plaintiffs Fail to State Any Warranty-Based Claims. ............................. 13

        1.    Plaintiffs' Claim for Breach of Express Warranty (Count 3) Fails Because the "Natural Soap" Label is not an Express Warranty. ................................................................. 13

        2.    Plaintiffs' MMWA Claim (Count 4) Fails Because the Act Does Not Apply. ..................................................... 14

        3.    Plaintiffs' Claim for Breach of Implied Warranty (Count 5) Fails Because There is No Vertical Privity and the Products Were Merchantable. ..................................... 16

III.  Claims by Non-California Purchasers And Claims Based on Other States Laws Should be Dismissed .......................................................................... 16

    A.    This Court Lacks Jurisdiction Over Defendants for Claims by Non-California Purchasers. .............................................. 16

    B.    Plaintiffs Also Lack Standing to Bring Non-California Claims. ............. 19

IV.   Plaintiffs Also Lack Standing to Seek Injunctive Relief or to Assert Claims Based on Products Not Purchased. .......................................... 20

    A.    Plaintiffs Lack Standing to Seek Prospective Injunctive Relief. ............. 20

    B.    Plaintiffs Lack Standing for the Products They Did Not Purchase. ........ 21

V.    Alternatively, this Court Should Stay the Case Pursuant to the Primary Jurisdiction Doctrine Because the Definition of "Natural" for Food Labeling Will Inform the Definition of "Natural" for Cosmetic Labeling. ........ 23

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Jamba Juice, Co.*,
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) .................................................................. 15

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.*,
   480 U.S. 102 (1987) ............................................................................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 4

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................................. 24

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2nd Cir. 2001) .......................................................................... 7, 8

*Bailey v. Kind, LLC*,
   No. 16-168-JLS(DFMx), 2016 WL 345698 (C.D. Cal. June 16, 2016) .................. 9

*Barrett v. Milwaukee Elect. Tool, Inc.*,
   No. 14-1804 No. 14-1804 JAH(DHB), 2016 WL 4595947 (S.D. Cal.
   Jan. 26, 2016) ........................................................................................................ 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 4, 5

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) .......................................................................................... 18

*Brockey v. Moore*,
   107 Cal. App. 4th 86 (2003) ................................................................................. 10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .............................................................................................. 17

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   No. 10-1044-JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ........................... 22

*Castagnola v. Hewlett-Packard Co.*,
   No. C-11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012) ................... 20

iii

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................ 21

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ........................................................................ 16

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ............................................................ 19

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................ 17, 18

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...................................................................... 20, 21

*Dumas v. Diageo PLC*,
  No. 15-cv-1681 BTM(BLM), 2016 WL 1367511 (S.D. Cal. Apr. 6,
  2016) ............................................................................................................ 11

*Dyson v. Bayer Corp.*,
  No. 4:17CV2584 SNLJ, No. 2018 WL 534375 (E.D. Mo. Jan. 24,
  2018) ............................................................................................................ 18

*Dysthe v. Basic Research LLC*,
  No. CV 09-8013 AG(SSx), 2011 WL 5868307 (C.D. Cal. June 13,
  2011) ............................................................................................................ 22

*Emery v. Vista Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ............................................................................ 6

*Fenerjian v. Nongshim Co., Ltd.*,
  72 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................................ 19

*Flynt Distrib. Co. v. Harvey*,
  734 F.2d 1389 (9th Cir. 1984) ........................................................................ 17

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...................................................................... 10, 11

*Gasser v. Kiss My Face LLC*,
  No. 17-cv-01675-JSC, 2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ............. 14, 20

*Gitson v. Trader Joe's Co.*,
  No. 13-cv-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ................. 11

iv

*Goldman v. Bayer AG*,
No. 17-cv-0647-PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017)............... 11, 14

*Goodyear Dunlop Tires Ops., S.A. v Brown*,
564 U.S. 915 (2011) ............................................................ 17

*Hairston v. S. Beach Beverage Co.*,
No. 12-cv-1429-JFW(DTBx), 2012 WL 1893818 (C.D. Cal. May 18,
2012) ........................................................................... 10, 15

*Harris v. CVS Pharmacy*,
No. ED CV 13-0329-AB, 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015)......... 19, 20

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) ............................................... 10

*Hodgers-Durgin v. de la Vina*,
199 F. 3d 1037 (9th Cir. 1999) .............................................. 20

*Holt v. Foodstate, Inc.*,
No. 15-cv-78, 2015 L (JMA) WL 9592534 (S.D. Cal. Dec. 31, 2015) ................. 22

*In re 100% Grated Parmesan Cheese Mktg & Sales Practices Litig.*,
275 F. Supp. 3d 910 (N.D. Ill. 2017)........................................ 12

*In re Arizona Theranos, Inc., Litig.*,
256 F. Supp. 3d 1009 (D. Ariz. 2017) ...................................... 19

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007)..................................... 19

*In re Hydroxycut Marketing and Sales Practices Litig.*,
299 F.R.D. 648 (2014)........................................................ 6

*Int'l Shoe Co. v. State of Washington*,
326 U.S. 310 (1945).......................................................... 17

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV
Television Litig.*,
758 F. Supp. 2d 1077 (S. D. Cal. 2010) .................................... 13

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9,
2010) .......................................................................... 22

v

*Kane v. Chobani, Inc.*,
　No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19,
　2013) ............................................................................................................ 22

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) ..................................................................... 8

*Larsen v. Trader Joe's*,
　No. C 11–05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ...................... 15

*Laster v. T-Mobile USA, Inc.*,
　407 F. Supp. 2d 1181 (S.D. Cal. 2005) ....................................................... 22

*Lavie v. Procter & Gamble Co.*,
　105 Cal. App. 4th 496 (2003) ...................................................................... 10

*LDGP, LLC v. Cynosure, Inc.*,
　No. 15 C 50148, 2018 WL 439122 (N.D. Ill. Jan. 16, 2018) ....................... 18

*Martinez v. Aero Caribbean*,
　764 F.3d 1062 (9th Cir. 2014) .................................................................... 17

*Mazza v. Am. Honda Motor, Inc.*,
　666 F.3d 581(9th Cir. 2012) ....................................................................... 19

*McDonnell v. Nature's Way Prods., LLC*,
　No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...................... 18

*McKinniss v. Gen. Mills, Inc.*,
　No. 07-cv-2521 GAF (FMOx), 2007 WL 4762172 (C.D. Cal. Sept.
　18, 2007) ............................................................................................... 11, 14

*Miller v. Ghirardelli Chocolate Co.*,
　912 F. Supp. 2d 861 (N.D. Cal. 2012) ......................................................... 22

*Ove v. Gwinn*,
　264 F.3d 817 (9th Cir. 2001) ........................................................................ 5

*Panavision Int'l, L.P. v. Toeppen*,
　141 F.3d 1316 (9th Cir. 1998) ..................................................................... 16

*Paramount Farms Intern. LLC v. Ventilex B.V.*,
　500 F. App'x. 586 (9th Cir. 2012) ............................................................... 16

*Pelayo v. Nestle USA, Inc.*,
  989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................................. 12

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
  No. 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017) .............................. 18

*Shaker v. Nature's Path Foods, Inc.*,
  No. 13-cv-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16,
  2013) .......................................................................................................................... 11

*Simpson v. Kroger Corp.*,
  219 Cal. App. 4th 1352 (2013) .............................................................................. 10

*Spratley v. FCA US LLC*,
  No. 3:17-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ............. 18

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir.2007) ..................................................................................... 7

*Tortilla Factory, LLC v. Better Booch, LLC*,
  No. 2:18-cv-02980-CAS(SKx), 2018 WL 4378700 (C.D. Cal. Sept.
  13, 2018) ..................................................................................................................... 6

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................................. 16

*Weinstat v. Dentsply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (2010) .............................................................................. 13

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................. 10

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) .............................................................. 11

**Statutes**

15 U.S.C. § 2301, *et seq* ................................................................................. 4, 14, 15

15 U.S.C. § 2302(e) ..................................................................................................... 14

Cal. Bus. & Prof. Code § 17200 ................................................................................. 4

Cal. Civ. Code § 1750, *et seq.* ................................................................................... 4

Cal. Code Civ. Proc. § 410.10 ....................................................................... 17

Cal. Com. Code §§ 2317, 10215 .................................................................... 14

Fed. R. Civ. P. 8 ............................................................................. 5, 6, 7, 13

Fed. R. Civ. P. 9(b) ..................................................................... 2, 6, 7, 8, 13

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4

**Other Authorities**

H.R. Rep. No. 115-232 (July 17, 2017) .......................................................... 24

*Organic Labeling Standards*, U.S. Dept. Agric.,
    https://www.ams.usda.gov/grades-standards/organic-labeling-
    standards (last visited April 15, 2018) ...................................................... 9

*Use of the Term "Natural" in the Labeling of Human Food Products*,
    Docket No. FDA-2014-N-1207 ................................................................. 24

*Use of the Term "Natural" in the Labeling of Human Food Products;
    Request for Information and Comments*, 80 Fed. Reg. 69905, 69905
    (Nov. 12, 2015) ..................................................................................... 24

1

## **INTRODUCTION**

2      In the Second Amended Complaint ("SAC"), Plaintiffs Balmore Prudencio and

3  Michelle Quintero (collectively "Plaintiffs") continue to allege that they were

4  deceived by the "natural soap" labeling of two Grisi soap products and other unnamed

5  class members were purportedly deceived by the "natural soap" labeling on two other

6  Grisi soap bars (the "Products") because each one allegedly contains one to three

7  "synthetic" ingredients. The SAC fails to cure any of the numerous deficiencies

8  identified both by this Court and by Defendant Midway Importing, Inc. ("Midway")

9  in its prior motion to dismiss.

10      This Court dismissed Plaintiffs' First Amended Complaint ("FAC") because

11  Plaintiffs failed to plead any facts that plausibly established that Midway—the

12  distributor of the Products—is liable for the allegedly deceptively labeling. *See* Dkt.

13  No. 30 ("Order") at 3-5. At the hearing on Midway's motion to dismiss the FAC, the

14  Court repeatedly pressed Plaintiffs to articulate a cognizable legal theory for imposing

15  liability on Midway. Despite multiple opportunities to do so, Plaintiffs presented

16  none. *Id.* at 4. Additionally, at the hearing, as well as in its Order, the Court

17  questioned why Plaintiffs were suing the wrong party for the claims alleged and the

18  relief sought. Hrg. Tr. at 11:9 ("Why are you suing Midway . . .?" ); Order at 4 ("This

19  further illustrates that Plaintiffs are suing the wrong party.").

20      Plaintiffs remain steadfast on bringing this action against the wrong parties.

21  Plaintiffs continue to pursue Midway, and have now added Grisi LLC, USA, a U.S.

22  subsidiary company for Grisi, the Mexican company. Other than sharing the name

23  "Grisi" with Grisi, the Mexican company, it is entirely unclear why Plaintiffs decided

24  to sue Grisi USA. There is no allegation that Grisi USA is an operating entity or what

25  those operations, if any, may be. Despite Plaintiffs' concerted efforts to seek relief

26  from the wrong parties, the SAC still fails to allege either a legal or factual basis for

27  holding Midway or Grisi USA, liable for the allegedly misleading label on the

28  Products.

Plaintiffs also fail to cure the multiple deficiencies identified by Midway in its prior motion—many of which were addressed in the Court's tentative—and are reasserted here. For example, this Court lacks jurisdiction to adjudicate claims brought on behalf of non-California plaintiffs. Midway and Grisi USA (collectively, "Defendants") are both incorporated and have their principal places of business in Texas. There is no general jurisdiction over Defendants here and Plaintiffs have failed to allege any facts to support specific jurisdiction over Defendants in California for the purchase of the Products outside of California by non-California residents. Additionally, Plaintiffs' claims are deficient for the following reasons:

- Plaintiffs' consumer protection claims fail because Plaintiffs have failed to plausibly allege that a reasonable consumer would read the term "natural" on the label to mean that the products do not contain any "synthetic" ingredients whatsoever—despite the fact that the labels nowhere claim that the Products are "all natural" or "100%" natural;

- Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading requirements for their UCL and CLRA claims;

- Plaintiffs' express warranty claim fails because the ingredients were disclosed to Plaintiffs in the ingredient list;

- Plaintiffs' Magnuson Moss Warranty Act ("MMWA") claim fails because Plaintiffs have not pled that they meet the requirements of the act and because the term "natural" does not constitute a warranty under the MMWA;

- Plaintiffs' implied warranty of merchantability claim fails because Defendants and Plaintiffs are not in privity and because Plaintiffs cannot plead that the Products were not merchantable as their intended use as soap;

- Plaintiffs' general and catchall claim for Violation of State Consumer Protection Statues fails to meet basic pleading requirements;

- Plaintiffs do not have standing to pursue their request or injunctive relief because they are now aware of the alleged deception; and

2

- Plaintiffs do not have standing to pursue the two products they do not allege to have purchased.

The filing of the SAC marks the fourth attempt at pleading viable class action claims premised upon the labels of the Products, including a failed attempt in New York. Despite Plaintiffs' many bites at the apple, Plaintiffs' allegations continue to be fatally deficient. Enough is enough. Plaintiffs' claims should be dismissed with prejudice.

## BACKGROUND

This putative class action involves four Grisi Soap Products: (1) Grisi "Regenerative" Aloe Vera Soap; (2) Grisi "Balance" Oat Soap; (3) Grisi "Lightening" Mother of Pearl Soap; and (4) Grisi "Moisturizer" Donkey's Milk Soap. SAC ¶ 1. Each of these products are sold in boxes of varying color, which indicate the type of soap on the front, include the statement "Natural Soap" in the left corner, state the product benefits on one side of the box, and clearly disclose the ingredients in a list printed on the other side in "all caps" in both English and Spanish. *See* Dkt. No. 19 ("RJN"), Exs. A-D.[1]



---

[1] The Court previously took judicial notice of these exhibits. Order at 4 n.1.

1    Plaintiffs maintain that the Products are deceptively labeled as "natural soap"

2    because the Products—which contain between 13-17 varied ingredients—also

3    allegedly contain between one and three "synthetic" ingredients. SAC ¶¶ 2, 23-26, 31.

4    Plaintiffs allege this deception despite the fact that (1) none of these products are

5    advertised as "***all*** natural," "***100%*** natural," or otherwise free from synthetic

6    ingredients, and (2) the purportedly "synthetic" ingredients of which they complain

7    are clearly disclosed on the packaging. *See* RJN Exs A-D. Plaintiffs further allege that,

8    had they known about the allegedly "synthetic" ingredients, they would not have

9    purchased the products nor paid a "premium" price for them. SAC ¶ 32.

10   Based on these allegations, Plaintiffs assert six claims against Midway and

11   Grisi USA (collectively "Defendants"): violations of California's Consumer Legal

12   Remedies Act, *see* Cal. Civ. Code § 1750, *et seq*. (CLRA) and Unfair Competition

13   Law, Cal. Bus. & Prof. Code § 17200 (UCL), both on behalf of a putative "California

14   Subclass" (Counts 1-2); and violations of the express warranty and consumer

15   protection statutes of all states (Counts 3 and 5), the Magnuson Moss Warranty Act,

16   15 U.S.C. § 2301, *et seq*. (Count 4), and a common law claim for breach of the

17   implied warranty of merchantability (Count 6), all on behalf of a nation-wide class.

18   ## LEGAL STANDARD

19   Under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege

20   "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

21   *v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard . . . asks for more

22   than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556

23   U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must

24   be enough to raise a right to relief above the speculative level."). The facts alleged

25   must "allow[] the court to draw the reasonable inference that the defendant is liable

26   for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court must accept as true all

27   material allegations in the complaint and reasonable inferences to be drawn from those

28   allegations, but "conclusory allegations of law and unwarranted inferences are

4

1   insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir.

2   2001); *see also Iqbal*, 556 U.S. at 678 (a pleading is insufficient if it provides only

3   "labels and conclusions," "a formulaic recitation of the elements of a cause of action,"

4   or "naked assertions devoid of further factual enhancement" (internal quotations and

5   brackets omitted)); *Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a

6   legal conclusion couched as a factual allegation").

7   ## ARGUMENT

8   **I.    Plaintiffs Once Again Fail to Plead Facts that Plausibly Establish**
    **Defendants' Liability Under Any Legal Theory.**

9

10   This Court dismissed the FAC *in its entirety* because, as required by Rule 8,

11   Plaintiffs failed to "ple[a]d facts sufficient . . . to state *any* claim against [Midway]."

12   Order at 3 (emphasis in original). The Court held that Plaintiffs' allegations did not

13   "in any way link [Midway] to the marketing and promotion of [the Products], let alone

14   to the alleged "natural" misrepresentation on their boxes." *Id.* at 3-4. Critically, the

15   Court found that Plaintiffs had failed to articulate even a cognizable legal theory for

16   imposing liability on Midway. *Id.* at 4. Because Midway distributes and does not

17   manufacture the Products, the Court concluded that "Plaintiffs are suing the wrong

18   party" for "an alleged wrong that does not appear fully, if at all, redressable by

19   [Midway]." *Id.*

20   Plaintiffs' attempt to cure this critical deficiency plainly fails. As the Court

21   correctly understood, "[t]he gravamen of each and every one of Plaintiffs' claims is

22   that the word 'natural' on the soap boxes is misleading," i.e., the <u>only</u> alleged falsity at

23   issue in the SAC is the word "natural" printed on the boxes of the Products. Order at

24   3. To state a claim against Midway for the purportedly misleading labels, Plaintiffs

25   must allege a factual basis regarding Midway's role in the labeling of the Products.

26   *See, e.g.*, Hrg. Tr. at 7:6-9 ("I don't think there is any allegation in the Complaint that

27   Midway had anything to do with the creation of the label, the packaging, even the

28   creating of the packaging."). The SAC, however, remains devoid of any such facts.

5

DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS SECOND CLASS ACTION AMENDED COMPLAINT - 2:18-cv-01469-AB-RAO

1   Instead, Plaintiffs merely allege, in a conclusory manner that Midway and Grisi USA

2   are "together responsible" for the labeling of the Products in the United States, and

3   "authorized the false, misleading, and deceptive . . . labels, and packaging for the

4   Products." SAC ¶¶ 15, 16. Plaintiffs' naked (and mistaken) conclusions fail to satisfy

5   Rule 8, let alone Rule 9(b)'s heightened pleading standard that requires that "a party

6   must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P.

7   9(b).

8         Apparently, in response to the Court's request that Plaintiffs articulate a

9   cognizable legal theory for imposing liability on a distributor, Plaintiffs attempt to link

10  Midway to Grisi, the Mexican company that manufactures the Products. According to

11  Plaintiffs "in 2013, Grisi Hnos SA De CV acquired 51% of Midway in order to

12  strengthen its presence in the United States in order to have greater control of the

13  marketing and distribution of its products (including soap products) in the United

14  States." SAC ¶ 18. Even if this were true, it does not make Midway liable for the

15  purported acts of a different company, and it does not somehow infer that Midway

16  was responsible for the labeling of the Products. *In re Hydroxycut Marketing and

17  Sales Practices Litig.*, 299 F.R.D. 648, 656 (2014) (citing *Emery v. Vista Int'l Serv.

18  Ass'n*, 95 Cal. App. 4th 952, 960 (2002)) ("a defendant's liability for unfair business

19  practices must be based on his personal 'participation in the unlawful practices' and

20  'unbridled control' over the practices."). *Tortilla Factory, LLC v. Better Booch, LLC*,

21  No. 2:18-cv-02980-CAS(SKx), 2018 WL 4378700, at *1 (C.D. Cal. Sept. 13, 2018),

22  is instructive. In that case a beverage manufacturer filed suit against a competing

23  beverage manufacturer for falsely advertising the alcohol and sugar content of its

24  beverages. The plaintiffs also sued the competitor's distributors, alleging, among other

25  things, that the distributors violated the UCL by knowingly distributing the falsely

26  labeled beverages.  *Id.* at *2. The court dismissed the plaintiffs' UCL claim against the

27  distributors because, just like here, the plaintiffs failed to plead facts showing either

28  the distributors' knowledge or personal participation in the alleged misconduct. *Id.* at

6

1  *11.

2        Plaintiffs' allegations related to newly added Defendant Grisi USA are equally

3  deficient. Like with Midway, Plaintiffs present no cognizable legal theory by which

4  Grisi USA may be held liable for the conduct alleged in the SAC. Plaintiffs allege that

5  Grisi USA is a subsidiary of Grisi, the Mexican company, SAC ¶ 14, but Plaintiffs

6  provide no grounds to support why Grisi USA should be liable for alleged acts of its

7  parent company, nor do they plausibly allege how the alleged wrongs can be fully

8  redressed, if at all, by Grisi USA. Plaintiffs also fail to plausibly allege what role Grisi

9  USA had with respect to the labeling of the Products. The SAC contains no facts that

10  establish Grisi USA's involvement in the allegedly deceptive labeling or packaging of

11  the Products. As stated above, Plaintiffs' conclusory allegations that Grisi USA and

12  Midway are "together responsible" for the labeling of the Products in the United

13  States are far from sufficient under even the basic pleading requirements of Rule 8, let

14  alone Rule 9(b)'s heighted pleading requirements.

15        Additionally, Plaintiffs fail to adequately plead which Defendant is liable for

16  the allegedly deceptive conduct. Rather, the SAC lumps the Defendants together and

17  fails to distinguish each Defendant's specific conduct. *See* SAC ¶¶ 15, 16 (alleging

18  Defendants are "together responsible" for the allegedly deceptive conduct). Rule 9(b)

19  "does not allow a complaint to merely lump multiple defendants together but

20  'require[s] plaintiffs to differentiate their allegations when suing more than one

21  defendant . . . and inform each defendant separately of the allegations surrounding his

22  alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th

23  Cir.2007). For good reason, courts have routinely held that a plaintiff who lumps all

24  the defendants together, not only fails to meet the heightened 9(b) pleading

25  requirements, but fails to meet the threshold Rule 8 pleading requirements. *See*, *e.g.*,

26  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2nd Cir. 2001) ("[b]y lumping all

27  the defendants together in each claim and providing no factual basis to distinguish

28  their conduct, Atuahene's complaint failed to satisfy [the Rule 8] minimum

7

standard"). Here, it is entirely unclear which particular Defendant is responsible for the allegedly deceptive conduct, if at all.

## II.  Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

Even if the Court finds that the SAC sufficiently states a claim against either or both Defendants (which it should not), Plaintiffs still fail to state a claim upon which relief can be granted.

### A.  Plaintiffs' UCL (Count 1) and CLRA (Court 2) Claims Should Be Dismissed.

#### 1.  Plaintiff s Fail to Satisfy the Heightened Pleading Standards of Rule 9 for their UCL and CLRA Claims.

As the Court has already acknowledged, Plaintiffs CLRA and UCL claims are subject to pleading requirements of Rule 9 because their allegations sound in fraud. Order at 3; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (claims under the CLRA and UCL that sound in fraud must satisfy Rule 9(b)'s heightened pleading requirement). Rule 9 thus requires Plaintiffs' CLRA and UCL claims to be pleaded with particularity, which requires something "more than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124 (internal quotation omitted).

Here, Plaintiffs fail to sufficiently allege how the phrase "natural soap" is false and misleading. While Plaintiffs allege that the products purportedly contain one to three allegedly "synthetic" ingredients, they fail to assert the basis for their contention that the products are not, in fact, natural. The Products contain mostly natural ingredients and is consistent with its "natural soap" labeling; nowhere does the packaging advertise that the products contain all or only natural ingredients.[2] Plaintiffs

---

[2]The USDA's sliding scale treatment of "organic" labeling is instructive: "100% Organic" can be used for products containing 100% organic ingredients, while the single word "organic" (without a percentage qualifier) can be used to label any product containing a minimum of 95% organic ingredients. *See* Organic Labeling

also conclusively allege that the "natural" description is valued by consumers pursuant to the "belief" that natural products are "safer and healthier than alternative products that are not represented as natural." SAC ¶ 22. Yet, they fail to provide any basis that this belief is "reasonable," they fail to plead what safety and health benefits they expected to receive from the Products they purchased as compared to soap products not labeled as "natural," and finally, they fail to allege that they did not in fact receive those unnamed benefits.

Plaintiffs also do not explain the circumstances of their purchase of the Products. The SAC is silent on when and how Plaintiffs came to learn of the alleged misrepresentation on the Products' labels. The SAC does not include allegations that Plaintiffs purchased the Products for household purposes, or even that they used the Products, thus failing to plead they are "consumers" under the CLRA. And, while Plaintiffs invoke a "price premium" theory of injury, they fail to allege with particularity how they paid a premium as a result of the alleged misrepresentation. *Bailey v. Kind, LLC*, No. 16-168-JLS(DFMx), 2016 WL 345698, at *6 (C.D. Cal. June 16, 2016). The SAC is also silent as to what price Plaintiffs paid for the Products, and the identity and price for the allegedly comparable products and the percentage of the alleged price premium.

### 2. Plaintiffs' UCL and CLRA Claims Necessarily Fail Because "Natural Soap" is Not Plausibly Deceiving or Misleading.

Plaintiffs maintain that the labeling of the Products as "natural soap" is false, misleading, and deceptive given the purported presence of one to three "synthetic" ingredients. *See, e.g.*, SAC ¶¶ 16, 24-25. However, Plaintiffs cannot state a claim under either the CLRA or UCL because Plaintiffs fail to plausibly allege that the phrase "natural soap" is false or likely to mislead a reasonable consumer.

It is well established that labeling claims under these statutes are only

Standards, U.S. Dept. Agric., https://www.ams.usda.gov/grades-standards/organic-labeling-stnadards (last visited April 15, 2018).

1  actionable where product packaging is likely to deceive a "reasonable" consumer.

2  *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (recognizing that

3  CLRA and UCL claims "are governed by the 'reasonable consumer' test").[3]

4  Reasonable consumers are not "unwary" or "overly suspicious," *Hill v. Roll Int'l*

5  *Corp.*, 195 Cal. App. 4th 1295, 1304 (2011), and "[a] representation does not become

6  'false and deceptive' merely because it will be unreasonably misunderstood by an

7  insignificant and unrepresentative segment of the class of persons to whom the

8  representation is addressed." *Lavie*, 105 Cal. App. 4th at 507. Rather, the question is

9  whether "a significant portion of the . . . targeted consumers, acting reasonably in the

10 circumstances, could be misled." *Id.* at 508. "[T]he primary evidence in a false

11 advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100

12 (2003)—here, the Products' packaging.

13     Numerous courts have dismissed claims when a product's label belies any

14 alleged deception. In *Simpson v. Kroger Corp.*, the court rejected a claim that the

15 prominent use of the word "BUTTER" on a label could lead a reasonable consumer to

16 believe that he or she had purchased a product containing *only* butter. As that court

17 recognized, it was "plain on both the top and side panels of the tubs in which the

18 products are sold" that they contained canola or olive oil as well as butter. 219 Cal.

19 App. 4th 1352, 1372 (2013). In a similar vein, allegedly misleading language on the

20 label of a vitamin-enriched drink could not support a viable claim because it was not

21 used "in a vacuum," and "any ambiguity [about the vitamins in the product] [wa]s

22 clarified by the detailed information contained in the ingredient list, which explain[ed]

23 the exact contents." *Hairston v. S. Beach Beverage Co.*, No. 12-cv-1429-JFW(DTBx),

24 2012 WL 1893818, at *4-5 (C.D. Cal. May 18, 2012). Nor could a reasonable

25

26 ───────────────
[3] *See also*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or
misleading advertising and unfair business practices claim must be evaluated from the
27 vantage of a reasonable consumer.") (citation omitted); *Lavie v. Procter & Gamble
Co.*, 105 Cal. App. 4th 496, 508 (2003) ("[U]nless the advertisement targets a
28 particular disadvantaged or vulnerable group, it is judged by the effect it would have
on a reasonable consumer.").

1  consumer be misled "into believing that Red Stripe is brewed in Jamaica" despite

2  representations on the label like "Jamaican Style Lager" and "The Taste of Jamaica,"

3  because the "bottom of the packaging states, 'Brewed and bottled by Red Stripe Beer

4  Company Latrobe, PA.'" *Dumas v. Diageo PLC*, No. 15-cv-1681 BTM(BLM), 2016

5  WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016). And in *Freeman*, the Ninth Circuit

6  affirmed the dismissal of claims about a sweepstakes mailer, even though (unlike

7  here) the "qualifying language [was] in small print," because the consumer "would be

8  put on notice that [winning the sweepstakes] was not guaranteed simply by doing

9  sufficient reading to comply with the instructions for entering the sweepstakes." 68

10 F.3d at 289-90. "Any ambiguity . . . [wa]s dispelled by the promotion as a whole." *Id.*

11 at 290.[4]

12      Plaintiffs' claims fail here because it is simply "implausible that a reasonable

13 consumer would look only at the front portion of a label." *Goldman v. Bayer AG*, No.

14 17-cv-0647-PJH, 2017 WL 3168525, at *7 (N.D. Cal. July 26, 2017). When faced

15 with an ambiguous, undefined term like "natural" (instead of ***100%*** natural or ***all***

16 natural), a reasonable consumer "concerned about the effects of synthetic and

17 chemical ingredients in food, cleaning products, bath and beauty products[,] and

18 everyday household products," SAC ¶ 22, would turn the label over to determine what

19 specific "synthetic" ingredients might be included in a product that nowhere claims to

20 be "all" natural. By simply looking at the label, that same reasonable consumer would

21

22 [4] *See also Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)
   (rejecting claim that pictured items on snack labels were most prominent ingredients

23 because "[e]very reasonable shopper knows that the devil is in the details… [and] any
   potential ambiguity could be resolved by the back panel of the products, which listed

24 all ingredients in order of predominance"); *Shaker v. Nature's Path Foods, Inc.*, No.
   13-cv-1138-GW(OPx), 2013 WL 6729802, at *5 (C.D. Cal. Dec. 16, 2013) (rejecting

25 "[p]laintiffs' interpretation of the photograph and selective reading of the labels" on
   cereal); *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL 5513711, at

26 *7-8 (N.D. Cal. Oct. 4, 2013) ("the accused label itself makes it impossible for the
   plaintiff to prove that a reasonable consumer is likely to be deceived," including when

27 "each product expressly discloses its sugar content"); *McKinniss*, 2007 WL 4762172,
   at *4 (rejecting claims that food labels were misleading for using words like "natural

28 fruit flavors" and pictures because "any reasonable consumer would be put on notice
   of the product's contents simply by doing sufficient reading of the ingredient list").

11

see—in a clear and simple list (in both English and Spanish)— precisely the "synthetic" ingredients about which Plaintiffs unreasonably complain. *See* RJN Exs. A-D. A reasonable consumer reads, rather than disregards, this information; particularly if the consumer is making purchasing decisions based on whether a product is natural or not.

Courts also dismiss suits where a plaintiff's interpretation of a labeling claim defies common sense. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (finding a reasonable consumer would not interpret "natural" to mean that pasta was "produced or existing in nature" where "they are a product manufactured in mass . . . and the reasonable consumer is aware that Buitoni pastas are not springing fully-formed from Ravioli trees and Tortellini bushes") (internal citations omitted); *Barrett v. Milwaukee Elect. Tool, Inc.*, No. 14-1804 JAH(DHB), 2016 WL 4595947, at *5 (S.D. Cal. Jan. 26, 2016) (finding 100% handcrafted label on hammers could not be "reasonably interpreted as meaning literally made by hand"); *accord In re 100% Grated Parmesan Cheese Mktg & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017) (dismissing lawsuit regarding 100% parmesan cheese claim and noting "[t]he products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese"). That same result is warranted here, because like the plaintiffs' claims in *Pelayo*, *Barrett, In re 100% Grated Parmesan Cheese*, and many others, Plaintiffs' claims defy common sense. No reasonable consumer would believe that a mass-produced, shelf-stable bar soap that works in various water hardness conditions is completely free of synthetic ingredients—particularly where, as here, the products are devoid of any claim that they are "all" or "100% natural." For all of these reasons, Plaintiffs' CLRA and UCL claims should be dismissed.

**B.    Plaintiffs' Claim for Violation of State Consumer Protection Statutes (Count 5) Should be Dismissed.**

Plaintiffs' attempt to pursue claims on behalf of consumers from various other states for violation of their states' consumer protection statutes should be rejected. First, as discussed below, this Court lacks jurisdiction over claims by out-of-state putative class members related to out-of-state transactions and Plaintiffs do not have standing to bring non-California claims. *See infra* at Section III. Second, general allegations of violations of the consumer protection laws of all states are insufficient to state a claim. *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1096-97 (S. D. Cal. 2010) (finding that "mere listing" of other state's consumer fraud statutes amount to nothing more than "labels and conclusions" in violation of Rule 8, and do not state the circumstances of fraud with particularity in violation of Rule 9). Plaintiffs have not incorporated any of the other state consumer protection statutes into the SAC and have not tied the Defendants' alleged conduct to violations of these statutes.[5] Thus, Count 5 should be dismissed.

**C.    Plaintiffs Fail to State Any Warranty-Based Claims.**

**1.    Plaintiffs' Claim for Breach of Express Warranty (Count 3) Fails Because the "Natural Soap" Label is not an Express Warranty.**

Plaintiffs' claim for breach of an express warranty, SAC ¶¶ 78-86, fails because "natural" does not constitute an express warranty. To state a claim for breach of express warranty, Plaintiffs must plead facts showing that the "Natural Soap" label constitutes an "affirmation of fact or promise" or a "description of the goods." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010). A representation does not, however, qualify as an express warranty if it is contradicted by more specific language on the same label. That proposition is encoded in California law, *see* Cal.

---

[5] To the extent this claim survives (which it should not), Defendants respectfully reserve the right to brief choice of law issues in the context of a Motion for Class Certification.

13

DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND CLASS ACTION AMENDED COMPLAINT - 2:18-CV-01469-AB-RAO

1    Com. Code §§ 2317, 10215, and reflected in numerous decisions. *See, e.g.*, *Goldman*,

2    2017 WL 3168525, at *9-10; *McKinniss v. Gen. Mills, Inc.*, No. 07-cv-2521

3    GAF(FMOx), 2007 WL 4762172, at *5 (C.D. Cal. Sept. 18, 2007).

4         Here, Plaintiffs rest their claim on the fact that each of the Products are labeled

5    with the phrase "Natural Soap." This singular fact, however, is insufficient to support

6    Plaintiffs' claim where, as here, the Products also list the ingredients of each soap, in

7    all caps, in both English and Spanish. *McKinniss*, 2007 WL 4762172, at *5

8    ("Defendant truthfully disclosed the ingredients in each of these five products but

9    Plaintiffs chose not to read them. Plaintiffs' selective reading or alleged

10   misunderstanding cannot give rise to an express warranty claim."). Additionally, none

11   of the product packaging represents that the soaps are made of "*100%*" or "*all*" natural

12   ingredients, nor do they otherwise quantifiably represent that they are made of ***only***

13   natural ingredients (rather than the products simply contain natural ingredients). *See*

14   RJN Exs. A-D. A reasonable consumer motivated to purchase all or 100% natural

15   soap would investigate further by reviewing the ingredients in the soap. Pursuant to

16   statute and applicable case law, the specific ingredient list printed on each of the

17   accused products' packaging—which includes the allegedly synthetic ingredients

18   complained of—defeats Plaintiffs' claim for breach of express warranty. *See, e.g.*,

19   *Gasser v. Kiss My Face LLC*, No. 17-cv-01675-JSC, 2017 WL 4773426 at *7 (N.D.

20   Cal. Oct. 23, 2017) (denying defendant's motion to dismiss as to a warranty claim that

21   the products were "100% natural," but granting the motion as the unquantifiable

22   phrases "nourish naturally with our botanical blends" and "obsessively natural kids,"

23   as "no reasonable consumer would attribute these statements as affirmations that the

24   products [were] ***all*** natural") (emphasis added).

### 2.    Plaintiffs' MMWA Claim (Count 4) Fails Because the Act Does Not Apply.

25

26

27        Under the MMWA, the amount in controversy of an individual claim must be

28   ***greater or equal to $25.00***. In addition, the MMWA applies only to products that cost

                                                14

*more than five dollars*. 15 U.S.C. § 2302(e). Plaintiffs fail to allege that the accused products cost more than five dollars (or that any individual claim meets or exceeds $25.00). Accordingly, the Court lacks jurisdiction to review this claim.

Plaintiffs' claim also fails because the allegedly misbranded products do not constitute warranties under the MMWA. *Anderson v. Jamba Juice, Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012). The MMWA provides that a "written warranty" means a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material . . . and affirms or promises that such material . . . *is defect free or will meet a specified level of performance over a specified period of time*." 15 U.S.C. § 2301(6)(A) (emphasis added). Courts in the Ninth Circuit have consistently held that "natural" labels are "mere product descriptions" that do not constitute a written warranty under the MMWA. *See, e.g.*, *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012) ("The statement 'All Natural' is a general product description rather than a promise that the product is defect free."); *Hairston v. S. Beach Beverage Co., Inc.*, No. CV 12–1429–JFW (DTBx), 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (representations that beverage was "all natural with vitamins" "are 'product descriptions' rather than promises that [beverage] is defect-free, or guarantees of specific performance levels").

Here, as in *Anderson* and *Hairston*, the phrase "natural soap" is a mere product description and does not constitute a written warranty under the MMWA. Even if it did, the presence of synthetic or artificial ingredients would not constitute a "defect." *See, e.g.*, *Larsen v. Trader Joe's*, No. C 11–05188 SI, 2012 WL 5458396, at *3 (N.D. Cal. June 14, 2012) ("The synthetic ingredients at issue were presumably knowingly and purposely added or used in the process of making these food products. As a defect primarily indicates an omission or an aberration, the deliberate use of these ingredients does not comport with the plain meaning of the word 'defect.'").

15

DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND CLASS ACTION AMENDED COMPLAINT - 2:18-cv-01469-AB-RAO

### 3. Plaintiffs' Claim for Breach of Implied Warranty (Count 5) Fails Because There is No Vertical Privity and the Products Were Merchantable.

In the final count of the SAC, Plaintiffs reassert a baseless claim for breach of the implied warranty. It fails for two reasons. First, no privity exists. The Ninth Circuit has acknowledged that "[v]ertical privity, or in other words, privity of contract, is required to sustain an implied warranty claim in California." *Paramount Farms Intern. LLC v. Ventilex B.V.*, 500 F. App'x. 586, 588 (9th Cir. 2012). A buyer and seller stand in privity if they are in "adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Stated differently, an end consumer who purchases the product from the retailer is not in privity with the manufacturer (or in this case, the middleman distributor). *See id.* Here, Plaintiffs allege that they purchased the Products from a retailer and not Defendants. *See* SAC ¶¶ 8, 10. Second, Plaintiffs fail to allege that the Products they purchased were not merchantable for use as soap. A claim for breach of implied warranty passes muster under California law, only where there are allegations that the products "did not possess even the most basic degree of fitness ordinary use," which here means for use as soap to clean to body. *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 895-96 (C.D. Cal. 2013). No such allegations are present in the SAC.

### III. Claims by Non-California Purchasers And Claims Based on Other States Laws Should be Dismissed.

#### A. This Court Lacks Jurisdiction Over Defendants for Claims by Non-California Purchasers.

Plaintiffs (two California residents) seek to represent a nationwide class for their statutory consumer protection and warranty claims. To determine whether personal jurisdiction exists over a nonresident, a district court must apply the law of the state in which it sits when there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In California, district courts may exercise personal jurisdiction over a nonresident

16

1  defendant to the extent permitted by the Due Process Clause of the Constitution. Cal.

2  Code Civ. Proc. § 410.10. The Fourteenth Amendment's Due Process Clause requires

3  a defendant to have "certain minimum contacts" with the forum such that the

4  maintenance of the suit in that forum "does not offend traditional notions of fair play

5  and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316

6  (1945) (internal quotations omitted).

7       There are two kinds of personal jurisdiction: general and specific. *Martinez v.*

8  *Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citing *Goodyear Dunlop Tires*

9  *Ops., S.A. v Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction is "all-purpose":

10  it allows jurisdiction even "on causes of action arising from dealings entirely distinct

11  from" activities within the state. *Id.* at 919, 924.

12       A specific-jurisdiction analysis involves two questions: (1) whether purposeful,

13  in-state activity from which the cause of action allegedly arose was significant enough

14  to constitute "minimum contacts" with the state; and (2) if so, whether it would offend

15  "traditional notions of fair play and substantial justice" to subject the defendant to suit

16  under the circumstances. *See, e.g.*, *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.,*

17  *Solano Cty.*, 480 U.S. 102, 113 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S.

18  462, 476-77 (1985). Plaintiffs bear the burden of proving that jurisdiction exists. *Flynt*

19  *Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).

20       This Court does not have personal jurisdiction over either Defendant for any

21  claims related to non-California sales to non-California residents. First, Defendants

22  are not subject to general personal jurisdiction in California. General jurisdiction

23  applies to claims "unrelated to the defendant's contacts with the forum state" and

24  exists only in a forum where the defendant is "essentially at home." *See Daimler AG*

25  *v. Bauman*, 571 U.S. 117, 137-38 & n.19 (2014). A corporate defendant is "at home"

26  only in the states where it is incorporated or has its principal place of business. *Id.*

27  Here, neither Grisi USA nor Midway is "at home" in California. Both Grisi USA and

28  Midway are incorporated in, and have their principal place of business in Texas.

17

1   Plaintiffs' generic allegations that Defendants "conduct and transact business,"

2   "contract to supply goods," and "supply goods within the State of California," SAC ¶

3   6, do not establish that they are "at home" in California. *See Daimler*, 571 U.S. at 139

4   (no general jurisdiction even when defendant's sales were "sizable" in that state).

5       Second, Plaintiffs have pled no facts to support a claim for specific personal

6   jurisdiction over non-California residents' claims. SAC ¶ 6 (speaking only of

7   California sales to California consumers). Plaintiffs simply cannot bootstrap alleged

8   California purchases by California residents into specific personal jurisdiction over

9   non-residents for sales outside California. *See, e.g.*, *Bristol-Myers Squibb Co. v. Sup.*

10   *Ct. of Cal.*, 137 S. Ct. 1773 (2017).

11       Presumably, Plaintiffs will once again argue that this Court has specific

12   jurisdiction over non-California purchasers. However, pursuant to *Bristol-Myers*

13   *Squibb* and its progeny, Plaintiffs are wrong. In *Bristol-Meyers Squibb*, the Supreme

14   Court held that there is no personal jurisdiction over non-resident purchasers for

15   product sales occurring outside of California. *Id.* While the court did not affirmatively

16   address personal jurisdiction in the context of federal courts, the majority of *federal*

17   district courts agree that its holding applies equally to them. *See, e.g.*, *Dyson v. Bayer*

18   *Corp.*, No. 4:1717CV2584 SNLJ, 2018 WL 534375, at *5 (E.D. Mo. Jan. 24, 2018)

19   (dismissing non-Missouri plaintiffs' claims for lack of personal jurisdiction in

20   products liability case brought by 95 plaintiffs, only three of whom resided or were

21   allegedly harmed in Missouri).[6] In short, this Court has no personal jurisdiction over

22     [6] *LDGP, LLC v. Cynosure, Inc.*, No. 15 C 50148, 2018 WL 439122 (N.D. Ill. Jan. 16,

23   2018) (holding that court does not have personal jurisdiction over defendants with regard to claims asserted by non-resident plaintiffs); *McDonnell v. Nature's Way*

24   *Prods., LLC*, No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) (finding no jurisdiction where non-resident plaintiff's alleged injury did not occur in the forum

25   state, and only connection to forum was provided by the resident plaintiff's purchase of the product); *Spratley v. FCA US LLC*, No. 3:17-CV-0062, 2017 WL 4023348

26   (N.D.N.Y. Sept. 12, 2017) (court dismissed claims of non-resident plaintiffs, who showed no connection between their claims and the non-resident defendant's contacts

27   with the forum state); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017) (defendants who did not sell

28   in the forum could not be subject to specific jurisdiction in case brought by Pennsylvania plaintiffs asserting nationwide consumer class).

18

Defendants with respect to claims by anyone outside of California, and all such claims, should be dismissed.

**B.      Plaintiffs Also Lack Standing to Bring Non-California Claims.**

Plaintiffs seek to bring claims for violation of consumer protection statutes and breach of express and implied warranties under the laws of *all* states (Counts Three, Five, and Six). SAC ¶¶ 78-86; 96-101; 102-08. As numerous courts have held, including this Court, named plaintiffs lack standing to assert claims from states where they do not reside or did not purchase the product(s) at issue. *See, e.g.*, *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1040-41 (D. Ariz. 2017) (holding that Arizona plaintiffs did not have standing to assert claims based on California law for products purchased in Arizona).[7]

In *Harris*, for example, the plaintiff, a California resident, brought a putative class action alleging CVS violated California and Rhode Island consumer protection laws in connection with marketing and selling a dietary supplement that plaintiff purchased in California. *Harris v. CVS Pharmacy*, No. ED CV 13-0329-AB (AGRx), 2015 WL 4694047, at *1, 4 (C.D. Cal. Aug. 6, 2015). Holding the plaintiff lacked standing to bring claims under Rhode Island law, this Court found plaintiff had failed to allege any "plausible basis for invoking that foreign law." *Id.* at *4 (noting Rhode Island law "is clear that, absent some indication to the contrary, extraterritorial force cannot be given to a [Rhode Island] statute") (internal citations omitted). Further, citing the Ninth Circuit's decision in *Mazza v. Am. Honda Motor, Inc.*, 666 F.3d 581(9th Cir. 2012), this Court held that under standard choice-of-law principles, California had the predominant interest in applying its consumer protection statute to

---

[7] *Accord*, *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990-91 (N.D. Cal. 2016) (holding non-resident plaintiffs lacked standing to assert claims based on Rhode Island law for out-of-state transactions); *Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 3d 1058 (N.D. Cal. 2014) ("None of the named . . . plaintiffs reside[d] in, or suffered an injury in" 24 states in a national class action" and "therefore lack[ed] standing to assert claims based on those states' laws"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007) (dismissing claims for 24 states where no named plaintiff resided).

19

DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS SECOND CLASS ACTION AMENDED COMPLAINT - 2:18-cv-01469-AB-RAO

1    plaintiff's transaction, which occurred in the state. *Id.* at 953.

2          Here, the circumstances are nearly identical to those as in *Harris*. Plaintiffs are

3    residents of California seeking to bring a putative class action premised upon

4    violations of not just California law, but violations of the laws of "all states." *See, e.g.*,

5    SAC ¶ 85 (alleging Defendants have breached the express warranty laws "of all states,

6    including California"). Plaintiffs' claims only concern products that they purchased in

7    California. SAC ¶¶ 8-11. And, Plaintiffs provide no plausible basis for invoking the

8    laws of any other state aside from California. Thus, just as in *Harris*, the Court should

9    find that Plaintiffs lack standing to bring Counts Three, Five, and Six under the laws

10   of any other states.

11   **IV.  Plaintiffs Also Lack Standing to Seek Injunctive Relief or to Assert Claims
12        Based on Products Not Purchased.**

13        **A.    Plaintiffs Lack Standing to Seek Prospective Injunctive Relief.**

14        "[A] plaintiff must demonstrate standing separately for each form of relief

15   sought." *Castagnola v. Hewlett-Packard Co.*, No. C-11-05772 JSW, 2012

16   WL 2159385, at *5 (N.D. Cal. June 13, 2012) (dismissing claim for injunctive relief).

17   To establish standing for prospective injunctive relief, a plaintiff must demonstrate

18   that he or she has suffered or is threatened with a "concrete and particularized" legal

19   harm coupled with a sufficient likelihood that he or she will again be wronged in a

20   similar way. *Id.*; *Gasser v. Kiss My Face LLC*, No. 17-cv-01675-JSC, 2017 WL

21   4773426, at *3 (N.D. Cal. Oct. 23, 2017). The plaintiff must establish a "real or

22   immediate threat" of repeated injury caused by the defendants alleged false

23   advertising. *Hodgers-Durgin v. de la Vina*, 199 F. 3d 1037, 1042 (9th Cir. 1999). A

24   plaintiff "cannot rely on the prospect of future injury to unnamed class members if [he

25   or she] cannot establish [he or she has] standing to seek injunctive relief." *Castagnola*,

26   2012 WL 2159385, at *5.

27        Here, Plaintiffs have failed to show, yet again, that they face a "real or

28   immediate" risk of future harm. Plaintiffs will likely attempt to rely on *Davidson v.*

20

1  *Kimberly-Clark Corp.*, 889 F.3d 956, 1115 (9th Cir. 2018) to argue otherwise.

2  Plaintiffs' reliance on *Davidson*, however, would be misplaced.

3          Plaintiffs allegations—which remain unchanged from the FAC—assert that

4  they might be willing to purchase Products "if the ingredients were changed" to

5  comport with their definition of "natural." SAC ¶ 55. Such allegations, as compared to

6  those in *Davidson*, do not sufficiently state their intention to repurchase the Products.

7  Unlike in *Davidson*, where the plaintiff alleged that she would re-purchase the

8  product, but lacked means to determine if the product representations were true, 889

9  F.3d at 970-71, here, Plaintiffs ***can*** determine whether the products' labels are "true."

10  All Plaintiffs need do is look at the ingredient list, which plainly and prominently

11  disclose the ingredients they complain of in two languages and in all capital letters. As

12  a result, Plaintiffs cannot allege that they would be fraudulently induced to purchase

13  the same products again in the future. Importantly, Plaintiffs do not even express a

14  willingness to buy the same product, but a *different product that is not yet available in*

15  *the market, or even currently in existence*, i.e., Grisi Soap products with different

16  ingredients that comport to their definition of "natural." *See* SAC ¶ 55. Based on these

17  allegations, it remains impossible to obtain the desired injunctive relief—a

18  reformulated Grisi Soap product—from *these* defendants. This is because, as the

19  Court noted, and Plaintiffs admitted at the oral argument on Midway's Motion to

20  Dismiss, the Products "are actually manufactured by Laboratorios GRISI, a Mexican

21  firm." Order at 3. Neither Defendant is capable of relabeling, let alone changing the

22  composition, of the Products. As a result, Plaintiffs do not—and cannot—establish a

23  "real or immediate threat" of repeated injury by the Defendants' alleged false

24  advertising.

25      **B.      Plaintiffs Lack Standing for the Products They Did Not Purchase.**

26          Standing under the CLRA and UCL requires Plaintiffs to plead and prove

27  Article III standing, as well as actual reliance on the *particular* statements they are

28  challenging. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946-47 (S.D. Cal.

21

2007); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005). Additionally, where, as here, claims are based on products not purchased, Plaintiffs must also plead facts sufficient to show that products and alleged misrepresentations are "substantially similar." *Holt v. Foodstate, Inc.*, No. 15-cv-78 L (JMA), 2015 WL 9592534, at *2 (S.D. Cal. Dec. 31, 2015); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) ("Where the alleged misrepresentation *or* accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased.") (emphasis added).

Products are not "substantially similar" where there are differences in composition, formulation, packaging, and/or labeling. *See, e.g.*, *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (putative class action "plaintiffs cannot expand the scope of [their] claims to include a product [they] did not rely upon").[8]

In the SAC, Plaintiffs continue to challenge the "natural soap" label on four Products, SAC ¶¶ 23-25, two of which they did not purchase. *Id.* ¶¶ 8-11(alleging purchases of only Grisi Lightening Mother of Pearl Soap and Grisi Regenerative Aloe Vera Soap). The renewed allegations, however, remain insufficient to confer Plaintiffs with standing for claims as to the Products they did not purchase because they do not—and cannot—allege that the products are "substantially similar."

As previously discussed, the Products each have different packaging, different representations and benefits, and different compositions of ingredients—including

---

[8] *See also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-1044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims based on an ice cream product not purchased even though it contained one of the same alleged misrepresentations as another ice cream product purchased by the plaintiff); *Dysthe v. Basic Research LLC*, No. CV09-8013 AG(SSx), 2011 WL 5868307, at *4-5 (C.D. Cal. June 13, 2011) (finding that the plaintiff lacked standing to sue as to products not purchased because the products contained different formulations, touted different benefits, and had different colored packaging); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *11 (N.D. Cal. Sept. 19, 2013) (dismissing claims as to yogurt products not purchased because even though the alleged *misrepresentations* were similar across all products, plaintiffs failed to adequately allege that the products *themselves* were substantially similar).

---

those that Plaintiffs allege are "synthetic." *See supra* pp. 3-4. For example, Grisi's "Regenerative" Aloe Vera Soap contains approximately 15 ingredients, three of which are purportedly "synthetic," whereas the Grisi "Moisturizer" Donkey's Milk Soap contains 13 ingredients, only one of which is allegedly synthetic. *See* RJN Exs. A, D. Additionally, Grisi' "Balance" Oat Soap has brown and white packaging featuring illustrations of ears of wheat, while Grisi's "Lightening" Mother of Pearl Soap has blue and white packaging featuring illustrations of a pearl within a clamshell. *Id.* Exs. B, C. Moreover, the "Balance" Oat Soap is advertised to "help[] regulate the oil excess of the skin by revitalizing it gently," whereas the "Lightening" Mother of Pearl Soap advertises that it "helps to vanish little dark and age spots." *Id.* Exs. B, C.

Because the Products are inherently dissimilar, and Plaintiffs fail to allege otherwise, Plaintiffs lack standing for their CLRA and UCL claims relating to the Products they did not purchase. Therefore, Counts One and Two should be dismissed as to the "Balance" Oat "Moisturizer" and Donkey's Milk Soaps.

## V. Alternatively, this Court Should Stay the Case Pursuant to the Primary Jurisdiction Doctrine Because the Definition of "Natural" for Food Labeling Will Inform the Definition of "Natural" for Cosmetic Labeling.

In its Order, the Court declined to stay this case under the primary jurisdiction doctrine, finding that this case involves cosmetic, rather than food labeling. *See* Order at 5. Because any guidance issued by the FDA concerning the "natural" labeling of food products will inform the "natural" labeling of cosmetic products, Defendants respectfully request that, if the Court declines to dismiss this action for the reasons discussed above, the Court reconsider staying this action pursuant to the primary jurisdiction doctrine.

As the Court has already found, the entirety of Plaintiffs' claims concern the "natural" labeling of the Products and whether such labeling is misleading. *See* Order at 3. While it is true that the Products are cosmetic products, as opposed to food products, the "natural" labeling issues remain the same. In the SAC, Plaintiffs rely on the FDA's guidance regarding what is "natural" with respect to food to support their

23

1    claims that the Products are not "natural." SAC ¶ 28. Based on these allegations alone,
2    it is clear that consumers expect "natural" labeling of food products will be consistent
3    with "natural" labeling on cosmetic products. Accordingly, common sense, as well as
4    Plaintiffs' SAC, demonstrate that the anticipated guidance from the FDA on this topic
5    with respect to food products will inform the same labeling on cosmetic products like
6    those at issue here.

7        The Ninth Circuit has acknowledged that, "[w]ithout doubt, defining what is
8    'natural' for cosmetics labeling is both an area within the FDA's expertise and a
9    question not yet addressed by the agency." *Astiana v. Hain Celestial Grp., Inc.*, 783
10   F.3d 753, 760 (9th Cir. 2015). Application of the primary jurisdiction is appropriate
11   here because the FDA is the only entity with the expertise required to ensure that this
12   complex issue is resolved comprehensively and consistently. Moreover, the issuance
13   of such guidance is anticipated in short order. As previously explained, the FDA
14   initiated review of the use of term "natural" in food labels in November 2015, *Use of*
15   *Term "Natural" in the Labeling of Human Food Products; Request for Information*
16   *and Comments* 80 Fed. Reg. 69905, 69905 (Nov. 12, 2015), and the comment period
17   for that review has now been closed for almost two years. Docket Folder Summary,
18   *Use of the Term "Natural" in the Labeling of Human Food Products*, Docket No.
19   FDA-2014-N-2017. Congress is monitoring the FDA on this issue and has instructed
20   the agency to provide a timeframe for which it will provide guidance on the term. *See*
21   H.R. Rep. No. 115-232, at 72 (July 17, 2017). And, significantly, in February 2018,
22   FDA Commissioner Dr. Scott Gottlieb indicated that the FDA "will have more to say
23   on the issue ***soon***." Julie Creswell, *Is it Natural? Consumers, and Lawyers, Want to*
24   *Know*, N.Y. Times (February 16, 2018), https://www.nytimes.com/2018/02/16/
25   business/natural-food-products.html (emphasis added). Because any guidance the
26   FDA issues will be instructive, the Court should stay the action pursuant to the FDA's
27   primary jurisdiction over these critical issues.

28

24

DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS SECOND CLASS ACTION AMENDED COMPLAINT - 2:18-cv-01469-AB-RAO

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiffs' SAC should be dismissed with prejudice

3

4

DATED: October 12, 2018                      SIDLEY AUSTIN LLP

5

6

                                                By:*/s/ Rachel A. Straus*

7

                                                   Rachel A. Straus

8

                                                   Attorneys for Defendants
MIDWAY IMPORTING, INC. and
GRISI USA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS SECOND CLASS ACTION AMENDED COMPLAINT - 2:18-cv-01469-AB-RAO