1  David R. Shoop (SBN 220576)
   david.shoop@shooplaw.com
2  Thomas S. Alch (SBN 136860)
   thomas.alch@shooplaw.com
3  **SHOOP, A PROFESSIONAL LAW CORPORATION**
4  350 S. Beverly Drive, Suite 330
   Beverly Hills, CA 90212
5  Tel: (310) 277-1700
6
7  Attorneys for Plaintiffs and the Class
8
9            **UNITED STATES DISTRICT COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
10
11  BALMORE PRUDENCIO, AND          Case No. 2:18-cv-01469-AB-RAO
    MICHELLE QUINTERO, individually
12  on behalf of themselves and all others
    similarly situated, and John Does (1-100)  Assigned to: Hon. André Birotte, Jr.
13  on behalf of themselves and all others
    similarly situated,
14                                  **Memorandum of Law in**
15              Plaintiffs,          **Opposition to Defendant's Motion**
                                     **to Dismiss Plaintiffs' Second**
16              v.                   **Amended Complaint**
17
18  Midway Importing, Inc. and Grisi, USA,  Date:       December 14, 2018
19  LLC,                                     Time:       10:00 AM
20                                            Ctrm:       7B
21              Defendants.
22                                  Complaint Filed:  February 22, 2018
23
24
25
26
27
28

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………i-ii

Table of Authorities…………………………………………………………..iii-vii

I.   Introduction…………………………………………………………...………1

II.  Argument…………………………………………………………………..……2

    A. Plaintiffs Have Sufficiently Alleged that the Defendants are Responsible for the Deceptive Labels at Issue in the Case…………..2

    B. Plaintiffs Have Standing to Pursue Their Claims and This Court Has Jurisdiction Over the Claims………………………………...4

       1.   This Court has Specific Personal Jurisdiction Over the Claims of Non-Resident Class Members……………………4

       2.   Whether Plaintiffs May Represent Out-Of-State Residents is an Issue for Class Certification………………...…10

       3.   Plaintiffs Have Standing to Sue for Products They Did Not Purchase Because the Misrepresentations at Issue Are Identical………………………………………………13

       4.   Plaintiffs Have Standing to Sue for Injunctive Relief…………..15

       5.   The Court Has Jurisdiction Over Plaintiffs' Magnuson-Moss Claims…………………………………...……17

    C. Plaintiffs Have Adequately Pleaded Their Causes of Action…………18

       1.   Plaintiff's Misrepresentation Claims Should be Upheld………..18

       2.   Plaintiffs' Allegations Satisfy the Requirements of Rule 9(b)….20

       3.   Plaintiffs Have Stated Claims for Breach of Express Warranty under California law…………………..……..21

       4.   Plaintiffs Have Stated Claims for Breach of Implied Warranty Under California Law……………………………..22

       5.   Plaintiffs' Magnuson-Moss Warranty Claim Should

not be Dismissed…………………………………….…………23

6.   Plaintiffs' Claim for Violation of State Consumer

Protection Statutes Should Not Be Dismissed………..………..23

D. Plaintiffs' Claims Should not be Stayed………………….…..………..24

III.   Conclusion………………………………………………...…………25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) ...................................................................... 23

*Aguiar v. Merisant Co.*,
   No. 14-civ-00670, 2014 U.S. Dist. LEXIS 165301 (C.D. Cal. March
   24, 2014) ....................................................................................................... 18

*Alvarez v. NBTY, Inc.*,
   No. 17-cv-00567-BGS, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal.
   Dec. 6, 2017) ................................................................................................... 5

*Astiana v. Hain Celestial Grp., Inc.*,
   No. 11-civ-6342, 2015 U.S. Dist. LEXIS 138496 (N.D. Cal. Oct. 9,
   2015) ............................................................................................................. 24

*Astiana v. Hain Celestial Grp., Inc.*,
   No. 12-17596, 2015 U.S. App. LEXIS 5833 (9th Cir. Apr. 10, 2015) ............... 18

*Barber v. Johnson & Johnson Co.*,
   No. 8:16-civ-1954, 2017 U.S. Dist. LEXIS 53591 (C.D. Cal. Apr. 4,
   2017) ............................................................................................................. 12

*Brazil v. Dole Food Co.*,
   No. 12-civ-01831, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sep.
   23, 2013) ....................................................................................................... 13

*Brenner v. Proctor & Gamble Co.*,
   No. 15-civ-1093, 2016 U.S. Dist. LEXIS 187303 (C.D. Cal. Oct. 20,
   2016) ............................................................................................................. 18

*Bristol-Myers Squibb Co., v. Superior Court of California, San
   Francisco*,
   582 U.S. ___, 137 S. Ct. 1773 (2017) ................................................... 4, 5, 6, 7, 8

*Brown v. Hain Celestial Grp.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................... 18, 19

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    No. C 10-01044, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10,
    2011) ................................................................................................ 15

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*,
    No. 17-2161, 2018 U.S. Dist. LEXIS 43974 (March 19, 2018, E.D.
    La.) .................................................................................................... 5

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ...................................................... 14

*In re Chinese-Manufactured Drywall Products Liability Litigation*,
    MDL No. 09-2047, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov.
    30, 2017) ........................................................................................ 6, 7

*Coleman Anacleto v. Samsung Elecs. Am., Inc.*,
    No. 16-civ-02941, 2016 U.S. Dist. LEXIS 123455 (N.D. Cal. Sept.
    12, 2016) .......................................................................................... 13

*In re ConAgra Foods, Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................. 20

*Czuchaj v. Conair Corp.*,
    No. 13-civ-1901, 2014 U.S. Dist. LEXIS 54410 (S.D. Cal. Apr. 16,
    2014) ................................................................................................ 13

*Davidson v. Kimberly-Clark Corp.*,
    873 F.3d 1103 (9th Cir. 2017) .......................................................... 16

*Day v. Air Methods Corp.*,
    No. 5:17-183-DCR, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct.
    23, 2017) ............................................................................................ 6

*Dorfman v. Nutramax Labs., Inc.*,
    No. 13-civ-0873, 2013 U.S. Dist. LEXIS 136949 (S.D. Cal. Sept.
    23, 2013) .......................................................................................... 14

*Dysthe v. Basic Reasearch, LLC*,
    No. CV 09-8013, 2011 U.S. Dist. LEXIS 138028 (C.D. Cal. June
    13, 2011) .......................................................................................... 15

*Fagan v. Neutrogena Corp.*,
    Civ. No. 5:13–131, 2014 U.S. Dist. LEXIS 2795 (C.D. Cal. Jan. 8,
    2014) ................................................................................................ 18

iv

*Fitzhenry-Russell v.Dr. Pepper Snapple Group, Inc.*, No. 17-cv-00564
    NC, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sep. 22, 2017) ............................ 5

*Fonseca v. Goya Foods, Inc.*,
    No. 16-civ-02559, 2016 U.S. Dist. LEXIS 121716 (N.D. Cal. Sep.
    8, 2016) ................................................................................................................ 12

*Forcellati v. Hyland's, Inc.*,
    876 F.Supp.2d 1155 (C.D. Cal. 2012) ................................................................ 12

*Grodzitsky v. Am. Honda 24 Motor Co.*,
    No. 2:12-civ-1142, No. 2:12-civ-1142, 2013 U.S. Dist. LEXIS
    33387(C.D. Cal. Feb. 19, 2013), . ....................................................................... 13

*Harris v. CVS Pharmacy*,
    No. ED CV 13-02329, No. 13-02329, 2015 U.S. Dist. LEXIS
    104101 (C.D. Cal. 2015) ............................................................................. 11, 17

*Harrison v. General Motors Company*,
    No. 17- 3128-Cv (W.D. Mo. Sept. 25, 2017) .................................................. 6, 8

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) .................................................................. 15

*Hoffman v. Fifth Generation, Inc.*,
    No. 3:2014-civ-02569, 2015 U.S. Dist. LEXIS 65398 (S.D. Cal.
    Mar. 18, 2015) .................................................................................................... 12

*Hunter v. Nature's Way Products, LLC*,
    No. 16-civ-532, 2016 U.S. Dist. LEXIS 107092 (S.D. Cal. Aug. 6,
    2016) ................................................................................................................... 14

*Johns v. Bayer Corp.*,
    No.09-cv-1935 DMS, 2010 U.S. LEXIS 10926 (S.D. Cal. Feb 9,
    2010) ................................................................................................................... 14

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012)................................................................ 25

*Kane v. Chobani, Inc.*,
    No.: 12-CV-02425, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept.
    19, 2013) ............................................................................................................. 15

*Keegan v. Am. Honda Motor Co*,
   838 F. Supp. 2d 929 (C.D. Cal. Jan 6, 2012) ........................................................ 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 10

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .............................................................................. 11

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ............................................................................ 10

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................................ 15

*Morales v. Unilever U.S., Inc.*,
   CIV. 2:13-2213, 2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9,
   2014) .................................................................................................................... 18

*Parker v. J.M. Smucker Co.*,
   No. C 13-0690 SC, 2013 U.S. Dist. LEXIS 120374 (N.D. Cal. Aug
   23, 2013) .............................................................................................................. 21

*Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-007735-NSR, 2018 U.S. Dist.
   LEXIS 55818 (S.D.N.Y. March 30, 2018)…………………………………..24, 25

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) .................................................................................. 7

*Rhinerson v. Van's Int'l Foods, Inc.*,
   No. 13-civ-05923, 2014 U.S. Dist. LEXIS 90471 (N.D. Cal. July 2,
   2014) .................................................................................................................... 12

*Sanchez v. Launch Tech. Workforce Sols, LLC*,
   No. 1:17-cv-1904, 2018 U.S. Dist. LEXIS 28907 (N.D. Ga. Jan. 26,
   2018) ................................................................................................................... 6,9

*Sloan v. General Motors, LLC.*,
   287 F. Supp. 3d 840 (C.D. Cal. Feb 7, 2018) ...................................................... 5

*Swearingen v. Yucatan Foods, L.P.*,
   24 F. Supp. 3d 889 (N.D. Cal. Feb. 7, 2014) ...................................................... 13

*Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*,
  No. 6:17-cv-1734, 2018 U.S. Dist. LEXIS 79578 (M.D. Fla. Apr. 4,
  2018) ................................................................................................. 6

*In re Toyota Motor Corp.*,
  790 F.Supp.2d 1152 (C.D. Cal. 2011) ............................................ 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ....................................................... 20

*Vicuna v. Alexia Foods, Inc.*,
  No. 11-civ-6119, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27,
  2012) ........................................................................................... 18, 21

*Werdebaugh v. Blue Diamonds Growers*,
  No. 12-civ-02724, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2,
  2013) ........................................................................................... 12, 13

**Statutes**

Cal. Com. Code § 2314 ........................................................................ 22

Cal. Com. Code § 92314(2)(c) ........................................................... 22

Class Action Fairness Act ................................................................... 17

Magnuson-Moss Warranty Act .......................................................... 23

Federal Rule of Civil Procedure 9(b) ................................................ 20

Federal Rule of Civil Procedure Rule 23 ....................................... 7, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

Defendants Midway Importing, Inc. ("Midway") and Grisi USA, LLC ("Grisi USA") distribute and market a line of soap that is described prominently as "Natural soap" on the front of the packaging.  But the soap is not "natural."  It contains titanium dioxide, sodium lauryl sulfate, and calcium carbonate.  These ingredients are chemicals which no reasonable consumer would consider "natural."

Plaintiffs are California purchasers of the soap and allege that they relied on and were misled by the "natural" representation when they bought the soap.  Plaintiffs assert claims under the consumer protection laws of California, and seek to represent a national class of consumers.

In its August 8, 2018 Order ("Order") dismissing the First Amended Complaint (Dkt. 11, "FAC") the Court held that Plaintiffs' allegations did not adequately connect Midway to the deceptive labels. (Dkt. 30 at 3.)  Plaintiff's Second Amended Complaint (Dkt. 34, "SAC") cures this deficiency by naming a second defendant, Grisi USA, and alleges that the Defendants operate a common enterprise which is responsible for the marketing of Grisi products in the United States, including the "natural" labeling of the Products.  These allegations are supported by published statements from directors and employees of Defendants describing their role in the marketing and advertising of the Products.

Defendants also argue that this court lacks specific jurisdiction over the claims of unnamed class members who do not reside in California. This Court should follow the vast majority of federal courts throughout the country that have held that the Supreme Court's decision in *Bristol-Myers Squibb* does not apply to federal class actions.

Next, Defendants challenge Plaintiffs' standing to bring claims on behalf of consumers in other states.  However, Plaintiffs have asserted that they were injured by paying a price premium for the Products.   Those allegations are all that is required

to satisfy standing under Article III.   Whether Plaintiffs may represent consumers outside California is a question that courts in this Circuit agree is properly answered at the certification stage.

Defendants raise a hodgepodge of other argument in an effort to have Plaintiffs' claims dismissed.  For the reasons below, these arguments also fail.

## II.  ARGUMENT

### A.   Plaintiffs Have Sufficiently Alleged that the Defendants are Responsible for The Deceptive Labels at Issue in the Case

In dismissing the FAC, the Court held that Plaintiffs did not "link Defendant to the marketing and Promotion of [the Products], let alone the 'natural' misrepresentations on their boxes." Order at 4.  The SAC cures that deficiency by adding significant detail regarding the advertising and marketing operations of Defendants and their connection to the manufacturer of the Products. SAC ¶¶ 12-21.

The SAC alleges that the Defendants authorized the deceptive "natural" labeling for the Products at issue in this case. *Id* at ¶¶ 15 and 16.  Unlike the allegations in the cases cited by Defendant[1], these assertions are not premised solely upon information and belief, but rather, are well-supported by additional facts.

First, Plaintiffs allege that the Defendants Midway and Grisi USA work together to serve as the U.S. marketing and advertising wing of Grisi Hnos SA De CV ("Grisi"), the Mexican company that manufactures the Products.  *Id* at ¶¶ 14 and 18. Specifically, Plaintiffs allege that Grisi USA is a subsidiary of Grisi, and that Grisi acquired 51% of Midway in 2013 *in order to have greater control of the marketing of its products in the United States*.  *Id* at ¶14 and 18.  The Midway website itself describes its role as providing a "distribution support strategy that includes marketing & promotions . . .".  *Id* at ¶ 13.  Midway and Grisi USA also employ business

---

[1] *Tortilla Factory, LLC v. Better Booch, LLC*, No. 2:18-cv-02980-CAS(SKx); 2018 U.S. Dist. LEXIS 156617 (C.D. Cal. Sept. 13, 2018); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal., 2014).

1   managers who are responsible for the marketing of Grisi Products in the United States.

2   *Id* at ¶ 21.

3        Second, Plaintiffs allege that the Defendants are responsible for the "natural"

4   labeling on the Products at issue in this case.  *Id* at ¶¶ 15 and 16.  This allegation is

5   supported by statements by employees of Grisi and the Defendants themselves.

6   Mauricio Alvarez, Director of Planning for Grisi, described the role of Midway as

7   marketing *soaps and beauty products* in the United States.  *Id* at ¶19, fn. 2.   Oliver

8   Pegueros, a Business Manager at Grisi USA and Midway described his role as

9   overseeing *all* marketing aspects of Grisi brands in the United States.  *Id* at ¶ 20.

10       At this stage of the case, where no discovery has been taken and Plaintiffs'

11  allegations must be taken as true, these allegations are sufficient to "allow the court

12  to draw a reasonable inference that the defendant is liable for the misconduct alleged."

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Moreover, because Defendants are

14  responsible for the labeling, they will be in a position to remove or clarify the

15  "natural" representation should the Court grant injunctive relief.

16       Nor, as Defendants suggest, do Plaintiffs claims fail simply because they do

17  not distinguish each Defendant's specific conduct.  *Swartz v. KPMG LLP*, 476 F.3d

18  756, 764 (9th Cir. 2007) ("There is no absolute requirement that where several

19  defendants are sued in connection with an alleged fraudulent scheme, the complaint

20  must identify false statements made by each and every defendant.").  The SAC alleges

21  that the Defendants share employees and ownership and work jointly in marketing

22  and advertising Grisi products in the United States, and that are both responsible for

23  authorizing the misleading labels.  SAC at ¶¶ 15-17, 19-20.

24       The SAC therefore does not simply "lump" Defendants together, as Defendants

25  argue.  Def Mem. 7.  Instead, it "satisfies the requirements of Rule 8(a) because it

26  gives [Defendants] fair notice of the basis for [Plaintiffs'] claims." *Swierkiewicz v.*

27  *Sorema N.A.,* 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *see also*

28

*Hudak v. Berkley Grp., Inc.*, No. 13-CV-89, 2014 U.S. Dist. LEXIS 8168, * 10-11 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.").

### B. Plaintiffs Have Standing to Pursue Their Claims and This Court Has Jurisdiction Over the Claims

#### 1. This Court has Specific Personal Jurisdiction Over the Claims of Non-Resident Class Members

Defendants argue, as Midway did in its prior motion to dismiss, that this Court lacks specific personal jurisdiction[2] over them for the claims of non-California residents. The U.S. Supreme Court addressed this issue in *Bristol-Myers Squibb Co., v. Superior Court of California, San Francisco*, 582 U.S. ___, 137 S. Ct. 1773 (2017) in the context of mass torts in state court, but left the jurisdictional issue open with respect to class actions, *see* 137 S. Ct. at 1789 n.4 (Sotomayor, J. dissenting), and with respect to federal court as opposed to state court, *id.* at 1783-84.

As made clear by Justice Sotomayor, at no point did the *Bristol-Myers* Court consider the applicability of the settled principles of personal jurisdiction to absent class members or the impact of Rule 23. *Bristol-Myers* thus did not overturn the Court's holdings in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) that (1) a "forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant," *id.*, and (2) "individual members of a plaintiff class . . . need not satisfy the 'minimum contacts' test in order for [the] forum court to exercise personal jurisdiction of them," a conclusion reached "in large part upon the due-process protections provided by class-action procedural requirements." *Id.* at 811.

---

[2] Plaintiffs do not argue that the Court has general jurisdiction over Defendants.

The vast majority of Courts in this Circuit have held that *Bristol-Myers* does not apply to federal class actions. *See Sloan v. General Motors, LLC*., No. 16-cv-07244-EMC, 287 F. Supp. 3d 840, 861 (C.D. Cal. Feb 7, 2018) (concluding that *Bristol-Myers* does not apply to federal class actions); *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BGS, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal. Dec. 6, 2017) (holding that *Bristol-Myers* did not change the law with regard to personal jurisdiction over named plaintiffs and noting that *Bristol-Myers* was a state mass tort rather than a federal class action); *Fitzhenry-Russell v.Dr. Pepper Snapple Group, Inc.*, No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, *15 (N.D. Cal. Sep. 22, 2017) ("[T]he Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff."); *In re Morning Song Bird Food Litig.*, Lead Case No. 12-cv-01592-JAH-AGS, 2018 U.S. Dist. LEXIS 44825, at *16 (S.D. Cal. Mar. 19, 2018) (finding *Bristol-Myers* did not deprive court of jurisdiction over non-resident plaintiffs in class action); *Thomas v. Kellogg Co*., Case No. C13-5136-RBL, 2017 U.S. Dist. LEXIS 171734, at *4 (W.D. Wash. Oct. 17, 2017) (same); *Ciuffitelli v. Deloitte & Touche LLP*, 2018 U.S. Dist. LEXIS 163237, *75 (D. Or. Aug. 1, 2018) (same).

District courts throughout the country have reached the same conclusion. *See e.g., Molock v. Whole Foods Mkt., Inc.*, Case No. 16-cv-02483 (APM), 2018 U.S. Dist. LEXIS 42582, at *21 (D.D.C. Mar. 15, 2018) (*Bristol-Myers* "does not require a court to assess personal jurisdiction with regard to all non resident putative class members."); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*, NO. 17-2161, 2018 U.S. Dist. LEXIS 43974, *13 (March 19, 2018, E.D. La.) (concluding that "The court finds that the material differences between mass tort actions and class actions further support the finding that *Bristol-Myers* is inapplicable to the instant case, a purported class action invoking federal question subject matter jurisdiction.");

*Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, No. 6:17-cv-1734-Orl-37KRS, 2018 U.S. Dist. LEXIS 79578, * 15 (M.D. Fla. Apr. 4, 2018) (declining to apply *Bristol-Myer* in the class-action context); *Day v. Air Methods Corp*., No. 5:17-183-DCR, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017) (declining to extend *Bristol-Myers* to a wage and hour class action suit because "the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members."), *Harrison v. General Motors Company*, No. 17- 3128-Cv-S-SRB (W.D. Mo. Sept. 25, 2017) ("the Court finds no language in Bristol-Myers requiring or even compelling extension of the holding to class actions . . . it is unclear whether Bristol-Myers even applies to federal courts"); *Sanchez v. Launch Tech. Workforce Sols*, LLC, No. 1:17-cv-1904-ELR-AJB, 2018 U.S. Dist. LEXIS 28907, at *9-11 (N.D. Ga. Jan. 26, 2018) (same), adopted at 2018 U.S. Dist. LEXIS 28905 (N.D. Ga. Feb. 14, 2018).

Many of these cases have adopted the reasoning of the court's holding in *In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL No. 09-2047, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 30, 2017), which examined three major differences between state mass torts and federal class actions.  First, the court noted that "[i]n a mass tort action, like the one in [*Bristol-Myers*], each plaintiff was a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints. A class action, on the other hand, generally involves one or more plaintiffs who seek to represent the rest of the similarly situated plaintiffs." *Chinese Drywall*, 2017 U.S. Dist. LEXIS 197612, at *32.  Even a cursory review of *Bristol-Myers* shows that it did not disturb the settled principle that "in the context of a class action, it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification." *Chernus v. Logitech, Inc.*, Civil Action No. 17-673(FLW), 2018 U.S. Dist. LEXIS 70784, at

*10 (D.N.J. Apr. 27, 2018) (internal quotations omitted) (collecting cases); *see also, e.g., BMS*, 137 S. Ct. at 1781 ("Our settled principles regarding specific jurisdiction control this case.").  Both of the named Plaintiffs in this case purchased the Products in California.[3] SAC. ¶¶ 8 and 10.  Thus, there is no question that this Court has jurisdiction over their claims.

Second, *Chinese Drywall* noted that class actions are subject to additional due process safeguards which mass torts are not, namely the rigorous requirements for certification under Rule 23. *Chinese Drywall*, at *37. By requiring that class plaintiffs demonstrate commonality, typicality, adequacy of representation, predominance, and superiority, Rule 23 alleviates any burdens on the defendant that come with having to defend multiple claims in a single forum and protects the fairness of the litigation, which is the fundamental purpose of due process.  *Id*. at *37-40.

Third, the federalism concerns that drove the holding in *Bristol-Myers* are not present in federal court.  *See Chinese Drywall*, * 55-56 ("In this case, federalism concerns do not apply. [*Bristol-Myers*] is about limiting a state court's jurisdiction when it tried to reach out-of-state defendants on behalf of out-of-state plaintiffs in a mass action suit. That scenario is inapplicable to nationwide class actions in federal court . . ."). As the Supreme Court explained, "restrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Bristol-Myers*, 137 S. Ct. 1773 at 1780 (internal quotations omitted) But, such federalism concerns are inapplicable in federal court.  *See, e.g., Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) ("a federal court sits as a unit of the national government and, therefore, the territorial limitations that apply to the exercise of state court jurisdiction…are inapposite.").

---

[3] On August 21, 2018, the parties stipulated to dismiss the claims of Nicky Rivera, a New York resident who was previously a named plaintiff in this case, and the Court issued an order accordingly.  (Dkts. 29 and 33).

Indeed, the Supreme Court expressly "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court," *Bristol-Myers*, 137 S. Ct. at 1783-84.  And, courts have declined to extend *Bristol-Myers* to federal cases based on this distinction. *Sloan*, 287 F. Supp. 3d at 858 (N.D. Cal. Feb. 7, 2018) ("In contrast to Bristol-Myers, the due process right does not obtain here in the same manner because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government."); *Harrison*, No. 17- 3128-Cv-S-SRB, at 12 (W.D. Mo. Sept. 25, 2017) ("*Bristol-Myers* concerned the due process limits of specific jurisdiction by a State").

The decisions that take an opposing view of the differences between state mass torts and federal class actions in the context of personal jurisdiction are outliers and are largely limited to the Northern District of Illinois.  *See LDGP, LLC v. Cynosure, Inc*. No 15 C 50148, 2018 U.S. Dist. LEXIS 6481 (N.D. Ill. Jan 16, 2018) and *McDonnell v. Nature's Way Prods., LLC,* No. 16C 5011, 2017 U.S. Dist. LEXIS 177892 (N.D. Ill. Oct. 26, 2017).  *See Chernus*, 2018 U.S. Dist. LEXIS 70784, at *19 ("On one hand, courts in the Northern District of Illinois have uniformly determined that [*Bristol-Myers*] applies with equal force in the class action context.  On the other hand, most of the courts that have encountered this issue have found that [*Bristol-Myers*] does not apply in the federal class action context.") (internal quotations and citations omitted).

However, even courts in the Northern District of Illinois have now begun rejecting the argument that *Bristol-Myers* requires dismissal of out-of-state absent class members' claims.  *See, Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 U.S. Dist. LEXIS 130249, at *3 (N.D. Ill. Aug. 3, 2018) (disagreeing with *LDGP* and *McDonnell* and noting "In this court's view, the first set of decisions [rejecting Defendants' argument] has it right.")  This Court should join the considerable majority of courts that reject Defendants' position.

Further, the rationale underlying the other cases cited by Defendants does not apply in this case.  For example, *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-cv-06391-BLF, 2018 U.S. Dist. LEXIS 54850 (N.D. Cal. Mar. 30, 2018), is inapposite because there the court held that it did not have personal jurisdiction over the claims of a Maryland *named* plaintiff when the court did not have general jurisdiction over the Korean defendant.  *See id.* at *6.  The court did not address the key question here of whether it had personal jurisdiction over claims made on behalf of absent class members.

The court in *Spratley v. FCA US LLC*, No. 3:17-cv-0062, 2017 LEXIS 147492 (N.D.N.Y. Sept. 12, 2017), held that the court lacked jurisdiction over six out-of-state *named plaintiffs*, and did not even address whether a court would have jurisdiction over the claims of unnamed class members. *Id*. at *19. Nor did *Spratley* discuss the differences between class actions and mass torts and simply stated: "Similarly, in this case, the out-of-state Plaintiffs have shown no connection between their claims and [defendant's] contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims." *Id*.  Indeed, other courts have specifically declined to follow *Spratley* on these grounds.  *See, e.g., Sloan v. GM, LLC,* 287 F. Supp. 3d at 859, fn. 3 (finding *Spratley* unpersuasive because it did not analyze the distinction between class-actions and mass torts); *Sanchez*, 2018 U.S. Dist. LEXIS 28907, *15 n.9 (N.D. Ga. Jan. 26, 2018) (declining to follow *Spratley* because it "presume[es] that Bristol-Myers requires dismissal of non-residents class members' claims without explaining why Bristol-Myers would apply in a class-action suit"); *Brotz v. Simm Assocs*., No: 6:17-cv-1603-Orl-40TBS, 2018 U.S. Dist. LEXIS 176612, *4, 2018 (M.D.Fla. Oct. 15, 2018) (distinguishing *Spratley* because it dealt with jurisdiction over named plaintiffs as opposed to unnamed class members).

In short, the majority of Courts that have thoroughly analyzed the question have concluded that *Bristol-Myers* does apply to federal class actions and that courts can continue to exercise personal jurisdiction over the claims of non-resident class members. Plaintiffs ask this Court to hold the same.

## 2.      Whether Plaintiffs May Represent Out-Of-State Residents is an issue for Class Certification

Defendants next argue that Plaintiffs lack standing to represent consumers in other states.  Def. Mem. at 19-20. In making this argument, Defendants conflate two entirely distinct concepts: Article III standing and the requirements of Rule 23.

The Ninth Circuit, in the context of factual differences, recently clarified the distinction: "Once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015), cert. denied, 136 S. Ct. 799 (2016). The threshold for pleading Article III standing is not a high one.  "It is well settled that 'general factual allegations of injury resulting from the defendant's conduct may suffice at the pleading stage.'" *In re Toyota Motor Corp.*, 790 F.Supp.2d 1152, 1162 (C.D. Cal. 2011) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

In this case, Plaintiffs have asserted more than only "general allegations." Plaintiffs have alleged an economic loss by purchasing Defendant's soap at a premium in reliance on the label which stated that it the soap is "Natural."  SAC ¶¶ 3, 32, 39, 42.  Accordingly, Plaintiffs have adequately pleaded Article III standing.

The question of whether Plaintiffs may represent consumers in other states is a different one.  Plaintiffs are not seeking to apply the laws of other states to their individual claims.  Rather, they seek to represent those absent class members who do. In asking the Court to dismiss claims brought under the laws in states in which Plaintiffs do not live, Defendants are really asking the Court to rule on whether Plaintiffs may represent a national, or even multistate, class. That question is dependent on a full factual record, including what conduct by Defendants occurred in California, and is appropriately addressed at the class certification stage, not the pleading stage. *See Estakhrian v. Obenstine*, 320 F.R.D. 63, 77 (C.D. Cal. 2017) ("'[Defendant's] arguments [regarding Plaintiff's standing to represent absent class

members] are 'better taken under the lens of typicality or adequacy of representation, rather than standing[,]'" ((quoting *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1161-62 (C.D. Cal. 2012)). *See also Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation. Treatises and other circuits reach the same conclusion.") (internal quotation marks and citations omitted); *Greenwood v. Compucredit Corp.*, 2010 U.S. Dist. LEXIS 127719, *9 (N.D. Cal. 2010) (discussing that "the appropriate question with respect to unnamed class members is not whether they have standing to sue but whether the named plaintiff may assert their rights" and concluding that "[a]lthough this question implicates the prudential function of the standing requirement, it finds legislative expression in the requirements of Rule 23 and is therefore a Rule 23 question, rather than one of standing") (internal quotation marks omitted).

In support of its argument, Defendants cite *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (Def. Mem. at 11). In the oft-cited *Mazza* case, the Ninth Circuit reversed the district court's certification of a nationwide class based on its finding that California's choice of law rules, applied specifically to the facts at issue, mandated application of the laws of the states in which the purchases occurred. However, the district court made its ruling ***at the class certification stage*** after an extensive record was created, and the Ninth Circuit took care to limit its reversal to "the facts and circumstances of this case." *Id*. at 594. The Court also explicitly left open the possibility of considering subclasses "with different jury instructions for materially different bodies of state law."[4] Accordingly, "[u]ntil the Parties have

---

[4] Defendants also cite this Court's decision in *Harris v. CVS Pharmacy*, No. ED CV 13-02329, No. 13-02329, 2015 U.S. Dist. LEXIS 104101 (C.D. Cal. 2015), where the Court determined that the plaintiff, who purchased a product in California, did not have standing to bring

explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case." *Forcellati*, 876 F.Supp.2d at 1159.

For these reasons, most California federal courts do not apply *Mazza's* fact-specific class certification ruling to allegations at the pleading stage.  *See Fonseca v. Goya Foods, Inc.*, No. 16-civ-02559-LHK, 2016 U.S. Dist. LEXIS 121716, at *8 (N.D. Cal. Sep.  8, 2016) ("This Court *has consistently declined to apply Mazza* at the motion to dismiss stage to strike nationwide class allegations.") (emphasis added); *Werdebaugh v. Blue Diamonds Growers*, No. 12-civ-02724, 2013 U.S. Dist. LEXIS 144178 at *56 n.9 (N.D. Cal. Oct. 2, 2013) (stating that "[t]his conclusion accords with  the Court's conclusion in [*Brazil, infra*], as well as the conclusions of *numerous other courts within the Ninth Circuit, which have declined, even after Mazza*, to conduct the choice of law analysis at the pleading stage", and citing cases) (emphasis added); *Forcellati*, 876 F.Supp.2d  at 1159 ("Courts *rarely undertake* choice-of-law analysis to strike class claims at this early stage in litigation.") (emphasis added).

Accordingly, the weight of authority in California federal courts favors waiting until class certification to undertake a choice of law analysis. *See, e.g.*, *Barber v. Johnson & Johnson Co.*, No. 8:16-civ-1954, 2017 U.S. Dist. LEXIS 53591 at *26 (C.D. Cal. Apr. 4, 2017) (deferring choice of law analysis until discovery taken); *Hoffman v. Fifth  Generation, Inc.*, No. 3:2014-civ-02569, 2015 U.S. Dist. LEXIS 65398 at *25 (S.D. Cal. Mar. 18, 2015) (declining to strike national class allegations and noting a thorough choice of law analysis must be undertaken before determining whether a national class can be certified); *Rhinerson v. Van's Int'l Foods, Inc.*, No. 13-civ-05923, 2014 U.S. Dist. LEXIS  90471 at *2 (N.D. Cal. July 2, 2014) ("[S]triking the class allegations at the pleading stage would be premature"); *Czuchaj v. Conair*

---

claims under Rhode Island law.  Def. Mem. at 10.  However, unlike in *Harris*, Plaintiffs are not seeking to apply out of state law to their claims, only to represent similarly situated consumers. This issue is more appropriately addressed in the context of class certification.

*Corp.*, No. 13-civ-1901, 2014 U.S. Dist. LEXIS 54410 at *18-25 (S.D. Cal. Apr. 16, 2014) (finding choice of law analysis premature at pleading stage and declining to dismiss national class claims); *Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889 (N.D. Cal. Feb. 7, 2014) (propriety of national class question "not appropriate at pleading stage"); *Werdebaugh*, 2013 U.S. Dist. LEXIS 144178 at *55-56 (declining to strike national class claims at the pleading stage because choice of law determination should wait until class certification stage); *Brazil v. Dole Food Co*., No. 12-civ-01831, 2013 U.S. Dist. LEXIS 136921, at *40 (N.D. Cal. Sep. 23, 2013) (concluding that striking class allegations at pleading stage would be "premature"); *Grodzitsky v. Am. Honda 24 Motor Co*., No. 2:12-civ-1142, 2013 U.S. Dist. LEXIS 33387, at *32-33 (C.D. Cal. Feb. 19, 2013) (denying motion to strike nationwide class allegations where discovery had not yet commenced).

### 3.    Plaintiffs Have Standing to Sue for Products They Did Not Purchase Because the Misrepresentations at Issue Are Identical

There is no question that Plaintiffs have Article III standing to assert claims concerning the alleged misrepresentations on the specific products they purchased themselves. Plaintiffs purchased the "Aloe Vera" and "Mother of Pearl" varieties of soap, and not the "Oat" or "Donkey's Milk" varieties. SAC at ¶¶ 8-11. However, all four types claim to be "Natural soap" and display the "Natural soap" representation prominently on the top right of each package. SAC ¶ 23 (pictures of packaging).

As in Defendant Midway's Motion to Dismiss the First Amended Complaint (Dkt. 18), Defendants contend that Plaintiffs lack Article III standing to represent purchasers of the "Donkey's Milk" and "Oat" soap. Def. Mem. at 21. But most courts have found Article III standing where the products and claims at issue were "substantially similar." *See Coleman Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-civ-02941, 2016 U.S. Dist. LEXIS 123455 at *26 (N.D. Cal. Sept. 12, 2016) (noting "[t]he majority of the courts in this district and elsewhere in California reject the

proposition that a plaintiff cannot suffer injury in fact based on products that the plaintiff did not buy."); *Dorfman v. Nutramax Labs., Inc.*, No. 13-civ-0873, 2013 U.S. Dist. LEXIS 136949 at *17-20 (S.D. Cal. Sept. 23, 2013) (surveying cases).

Indeed, courts have found standing with respect to unpurchased products (sometimes referred to as "class standing") even where the representations were more diverse than the identical "Natural soap" statements at issue here: *see Hunter v. Nature's Way Products, LLC*, No. 16-civ-532, 2016 U.S. Dist. LEXIS 107092, at *41-43 (S.D. Cal. Aug. 6, 2016) (holding plaintiff could challenge unpurchased liquid coconut oil because the representations on the label, while different from those on the purchased product, conveyed a substantially similar message  that the product was healthy); *Dorfman*, 2013 U.S. Dist. LEXIS 136949 at *21-22 (plaintiff has standing to pursue claims for supplements he did not buy because he "challenges the same type of supplements based on largely the same ingredients and representations."); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (plaintiff's claims are typical of the class where the allegedly false statement was "worded in several variations" but all products "bore substantially the same misrepresentation"); *Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 U.S. Dist. LEXIS 170928, *16 (N.D. Cal. Oct. 16, 2016) (plaintiffs had standing to challenge unpurchased chip products because the non-purchased products were different flavors of the same Multigrain Snack Chips and all the products contained the same "evaporated cane juice" misrepresentation).

The cases Defendants cite in support of their argument involve products which were very different or made different misrepresentations from the products which the plaintiff actually purchased.  Def. Mem. at 7.   For example, in *Johns v. Bayer Corp.*, No.09-cv-1935 DMS, 2010 U.S. LEXIS 10926 (S.D. Cal. Feb 9, 2010) the court held plaintiff lacked standing to assert claims on behalf of purchasers of a health supplement because the misrepresentation that the plaintiff relied on was not present

*at all* on the unpurchased product. Similarly, in *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) the plaintiff challenged two different ice-cream products with two entirely different representations: that its "Drumstick" ice cream products were and based upon "The Original," and that its "Dibs" product contained "0 g Trans Fat.'[5]   In *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012), the court acknowledged "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar" but found that white chocolate and chocolate chips were different products and were labeled differently. *Id.* at 870-72.   In *Dysthe v. Basic Reasearch, LLC*, No. CV 09-8013, 2011 U.S. Dist. LEXIS 138028 (C.D. Cal. June 13, 2011) the weight loss supplements at issue had different formulations and touted different benefits.  Finally, in *Kane v. Chobani, Inc.*, No.: 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385, *37-38 (N.D. Cal. Sept. 19, 2013) the court held that the plaintiffs did not have standing as to unpurchased products because the plaintiff failed to allege "substantial similarity."

Here, in contrast to the cases cited by Defendants, each of the challenged Products are hand soap products which have the identical "Natural soap" representation.  As a result, Plaintiffs have standing to assert claims against each of the challenged Products.

### 4.   Plaintiffs Have Standing to Sue for Injunctive Relief

Defendants argue that Plaintiffs lack standing to pursue injunctive relief because they now know the truth about the Products and can no longer be deceived by the labeling.  Def. Mem. at 20-21.  The Ninth Circuit squarely addressed this

---

[5] *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 935 (N.D. Cal. 2014) (distinguishing *Carrea* and concluding that plaintiff had standing to pursue claims against a variety of types of canned tuna because the misrepresentations regarding the amount of tuna in the cans was similar across the purchased and unpurchased products).

issue and resolved it in Plaintiffs' favor last year:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017). The Ninth Circuit reasoned that "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id*.

That is exactly the posture in which Plaintiffs find themselves with respect to Defendants products.  Plaintiffs have alleged that they would like to purchase the soaps again in the future, but will not because they cannot rely on Defendant's representations that the soaps are natural.  SAC ¶¶ 9 and 11.

Defendants attempt to distinguish *Davidson* by arguing that Plaintiffs could determine the truth or falsity of future representations just by looking at the ingredients. Def. Mem. 21.  First, this argument has been thoroughly rejected in the 12(b)(6) context, because reasonable consumers are not expected to scour a label to ensure that product representations are not false. *See Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").   Second, even if a consumer were to search the Products' packaging and find the ingredient list, it does not clarify which ingredients are natural and which are synthetic, and thus consumers still would not know the true nature of the Products, especially since such a determination requires a knowledge

of chemistry not expected in a reasonable consumer. SAC ¶ 29.  Finally, this case is not about misrepresentations in the ingredients lists.  It is about characterizing those ingredients as "natural" when no reasonable consumer would consider them as such.

Defendants also contend that the facts of this case fall outside the logic of *Davidson* because Plaintiffs allege that they would only purchase hypothetical Grisi Products that actually contain exclusively natural ingredients. Def. Mem. 21.  But, this is precisely the kind of allegation that the Ninth Circuit in *Davidson* found to constitute imminent harm.  *Davidson,* 889 F.3d at 970.  The plaintiff in *Davidson* said that she "would purchase *truly flushable wipes* manufactured by [Defendant] *if it were possible*" *Id*.  Thus, per *Davidson*, the fact that  Plaintiffs will only buy the product again if the misrepresentation is corrected by changing the product does not strip them of standing to pursue injunctive relief.

### 5.      The Court Has Jurisdiction Over Plaintiffs' Magnuson-Moss Claims

Defendants next argue that Plaintiffs have not met the jurisdictional requirements of the MMWA, including the requirements that individual claims must exceed $25, products must cost more than $5 and there must be over 100 plaintiffs. Def. Mem. at 14-15.  However, as this Court recognized in *Harris v. CVS Pharmacy*, jurisdiction is conferred separately and independently by the Class Action Fairness Act.  *Harris*, 2015 U.S. Dist. LEXIS 104101, at *22-23 (Birotte, J.); SAC ¶ 5; *see also Keegan v. Am. Honda Motor Co*, 838 F. Supp. 2d 929, 954, (C.D. Cal. Jan 6, 2012) (collecting cases concluding that the jurisdictional requirements of MMWA are satisfied when plaintiffs properly invoke jurisdiction under CAFA).

## C.   Plaintiff's Have Adequately Pleaded Their Causes of Action

### 1.   Plaintiffs' Misrepresentation Claims Should be Upheld

Defendants contend that no reasonable consumer could possibly believe that a package labeled "Natural soap" could contain soap that is composed of natural, i.e., nonsynthetic, ingredients.  Def. Mem. at 9-13.  This argument "is at odds with basic logic." *Jou v. Kimberly-Clark Corp.*, 13-civ-03075, 2013 U.S. Dist. LEXIS 173216, at *31 (N.D. Cal. Dec. 10, 2013).

In any case, such arguments are not suited for disposition on a 12(b)(6) motion. *See Astiana v. Hain Celestial Grp., Inc.*, No. 12-17596, 2015 U.S. App. LEXIS 5833, at *10-11 (9th Cir. Apr. 10, 2015) (reversing a district court decision to dismiss a consumer fraud action against a manufacturer for its personal care products that claimed to be "all natural" or "pure natural"); *Vicuna v. Alexia Foods, Inc.*, No. 11-civ-6119, 2012 U.S. Dist. LEXIS 59408 at * 5 (N.D. Cal. Apr. 27, 2012) (meaning of term "All Natural" to reasonable consumer cannot be decided on motion to dismiss); *Morales v. Unilever U.S., Inc.*, CIV. 2:13-2213 WBS E, 2014 U.S. Dist. LEXIS 49336, *22-23 (E.D. Cal. Apr. 9, 2014) (denying motion to dismiss claims involving shampoos and conditioners labeled "naturals"); *Fagan v. Neutrogena Corp.*, Civ. No. 5:13–1316 SVV OP, 2014 U.S. Dist. LEXIS 2795, at *4 (C.D. Cal. Jan. 8, 2014) (denying motion to dismiss when defendant claimed that its sunscreen was "100% naturally sourced"); *Brown v. Hain Celestial Grp.*, Inc., 913 F. Supp. 2d 881, 899 (N.D. Cal. 2012) (denying motion to dismiss challenge to face- and body products labeled pure, natural and organic).

With respect to the label itself, and contrary to Defendants' argument, avoiding phrases such "100% natural" or "all natural" do not insulate it from liability.  Def. Mem. at 17.  *See e.g*, *Brenner v. Proctor & Gamble Co.*, No. 15-civ-1093, 2016 U.S. Dist. LEXIS 187303, *12-15 (C.D. Cal. Oct. 20, 2016) (denying motion to dismiss "natural" misrepresentations claims under California law because there is not "a bright-line rule holding that "natural" claims without "100%" or "all" can never be

actionable"); *Aguiar v. Merisant Co.*, No. 14-civ-00670, 2014 U.S. Dist. LEXIS 165301 at *10 (C.D. Cal. March 24, 2014) (finding that allegations that ingredients isomaltulose and dextrose were "synthetic" as term used in dictionary required "no further factual enhancements" to state claim)*; Jou*, 2013 U.S. Dist. LEXIS 173216, at *5-8 (claim stated where plaintiff alleged "pure & natural" product contained polypropylene and sodium polyacrylate); *Brown*, 913 F. Supp. 2d at 898 (denying motion to dismiss when defendant claimed that various cosmetic products were "pure, natural, and organic").

Case law supporting Defendant's position is relatively sparse and involves fact patterns that are extreme. For example, Defendants cite *Pelayo v Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) in support of its argument that no reasonable consumer would expect the soap to be natural just because the package said so. Def. Mem. at 12. *Pelayo*'s conclusion supports Defendants' argument here, but *Pelayo* has been soundly rejected by other courts. *See, e.g.*, *Jou, 2013 U.S. Dist. LEXIS 173216,* at *31-32 (holding that *Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit. This Court accordingly declines to follow *Pelayo's* holding."); *Segedie v. Hain Celestial Grp., Inc.,* No. 14-civ-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 at *30-31(S.D.N.Y. 2015) (distinguishing *Pelayo* and holding that "it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients. Ultimately, the question is one of reasonableness, which cannot be resolved on a Rule 12(b) (6) motion.").

Defendants' other cases, including *Barrett v. Milwaukee Elec. Tool, Inc.*, No. 14-1804 JAH, 2016 U.S. Dist. LEXIS 122688 (S.D. Cal. Jan 26, 2016) and *In re 100% Parmesan Cheese Mktg & Sales Practices Litig.* 275 F. Supp. 3d 910 (N.D. Ill. 2017) (Def. Mem. at 17) do not involve "natural" representations and offer little assistance.

In sum, the great majority of courts have found that allegations similar to those of the Plaintiffs' are sufficient to state a claim.

### 2.   Plaintiffs' Allegations Satisfy the Requirements of Rule 9(b)

The SAC satisfies the pleading requirements of Rule 9(b) by setting forth "the who, what, when, where and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Per the SAC,  Defendants Midway and Grisi USA (who) (SAC ¶¶ 12 and 14) market soap as "Natural" when it actually contains synthetic ingredients (what) (SAC ¶¶ 2, 23-25) which Plaintiff Prudencio purchased on approximately 10 occasions in 2016 and 2017 at a Walmart in Santa Ana, California, and Plaintiff Quintero purchased on several occasions between November 2016 and April 2017 at a Walmart in Rosemead, California (when, where) (SAC ¶¶ 8-13) in reliance on the "natural" misrepresentation, causing Plaintiffs to suffer economic loss as a result (how) (SAC ¶¶ 3, 32,36). Courts have held that similar allegations satisfied Rule 9(b)'s heightened pleading standard. *See, e.g.*, *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012).

Defendants' principal argument that Plaintiffs have not satisfied 9(b) is simply a rehash of the claim that reasonable consumers cannot not interpret the labeling to mean that the Products contain 100 percent natural ingredients. Def. Mem. at 8-9.  But, as noted in Section II.C.1, *supra*, numerous courts have held that reasonable consumers can expect "natural" products to be entirely natural. Moreover, the SAC specifically identifies each of the synthetic ingredients in the Products, and explains in detail why a reasonable consumer would consider them synthetic and not natural. SAC ¶¶ 23-26.

Further, contrary to Defendants' argument, the SAC does allege that the Plaintiffs are "consumers" within the meaning of the CLRA.  SAC ¶ 68. And, how Plaintiffs came to learn of the misrepresentations is not an element of any of Plaintiffs'

claims. Def. Mem. at 9.  Finally, while Defendants argue that Plaintiffs have not pleaded an injury with the requisite particularity (Def. Mem. at 9), Plaintiffs have alleged that they paid more for the Products than they otherwise would have based on Defendants' "natural" misrepresentation. SAC ¶ 9 and 11.  This assertion is all that is needed to satisfy Rule 9(b).  *See Gregorio v. Clorox Co.,* No. 17-cv-03824-PJH, 2018 U.S. Dist. LEXIS 19542, *16 (N.D. Cal. Feb 6, 2018) (rejecting defendant's argument that 9(b) required specific factual allegations about the dollar amount plaintiffs paid for each product to allege a price premium injury).

### 3.    Plaintiffs Have Stated Claims for Breach of Express Warranty under California law.

Defendants next attack Plaintiffs' warranty claims on grounds similar to those upon which it bases its arguments against Plaintiffs' statutory claims.  That is, Defendants contend that it is unreasonable for consumers to interpret the label to mean that the Products are natural.  Def. Mem. at 13.

Under California law, "To state a claim for breach of express warranty, a plaintiff must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Vicuna*, 2012 U.S. Dist. LEXIS 59408,*5; *Weinstate v. Dentsply Int'l., Inc.*, 180 Cal. App 4th 1213, 1227 (2010).  Defendants' "Natural soap" statement is just such an "affirmation of fact."  *See Parker v. J.M. Smucker Co.*, No. C 13-0690 SC, 2013 U.S. Dist. LEXIS 120374, *20 (N.D. Cal. Aug 23, 2013) (holding that "all natural" was an express warranty and not mere puffery); *Vicuna*, 2012 U.S. Dist. LEXIS 59408 at *6 ("All Natural" designation was a "statement of fact" and constituted express warranty).

*McKinniss v. General Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007), which Defendants cite for the proposition that the Product labeling is not misleading if consumers read the

ingredient lists (Def. Mem. at 14), has been distinguished and limited by subsequent decisions in this Circuit. *See, e.g. Madenlian v. Flax USA Inc.,* SACV 13-01748 JVS (JPRx), 2014 U.S. Dist. LEXIS 181473, *14 (C.D. Cal. March 31, 2014) (finding *McKinniss* inapposite because it involved products in which the allegedly deceptive labeling was not in fact inconsistent with the ingredients of the products at issue); *Brown*, 913 F. Supp. 2d at 899 (distinguishing *McKinniss* from an "organic" label representation); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012) (declining to follow *McKinniss* because it was inconsistent with the 9th Circuit's holding in *Williams v. Gerber* that consumers are not required to clarify misrepresentations by reading the ingredient list).

Defendants' arguments regarding express warranty thus fail for the same reason as its arguments on Plaintiffs' statutory claims: reasonable consumers can interpret "Natural Soap" as an affirmation of fact that the Products are entirely natural.

### 4.    Plaintiffs Have Stated Claims for Breach of Implied Warranty Under California Law

California recognizes the implied warranty of merchantability in its Commercial Code. Cal. Com. Code § 2314. The language tracks that of the Uniform Commercial Code, establishing particular attributes of "merchantable" goods, among them, that they be fit for their ordinary purposes. Cal. Com. Code § 92314(2)(c); UCC § 2-314. Also required, however, is that goods are warranted to "conform to the promises or affirmations of fact on made on the container or label, if any." Cal. Com. Code § 2314(f), UCC § 2-314(f). Here, Plaintiffs have alleged that the soaps do not conform with the "promise or affirmation of fact" that the soaps are natural. Accordingly, they have stated a claim for breach of implied warranty of merchantability under California law.

Defendants contend that California law requires vertical privity. Def. Mem. 16. While this is true, courts in this Circuit recognize an exception where plaintiff is

a third-party beneficiary to a contract that gives rise to the implied warranty. *See Bryde v. General Motors*, No. 16-cv-02421-WHO, 2016 U.S. Dist. LEXIS 159707, * 46 (N.D. Cal. Nov. 17, 2016); *In re Toyota*, 754 F. Supp. 2d 1145, 1184-85 (C.D. Cal. 2010).  Plaintiffs are third-party beneficiaries of the contract between the Defendants and the retailers Plaintiffs purchased the Products from. *See Michael v. Honest Co.,* No. LA CV15-07059 JAK (AGRx), 2016 U.S. Dist. LEXIS 189116, *75 (C.D. Cal. Dec. 6, 2016) (holding that consumers of defendant's soap, sunscreen, and diaper products were third-party beneficiaries of the contract between the manufacturer and retailers).  Thus, vertical privity is not required in this case, and Plaintiffs state a claim for breach of implied warranty under California law. *Id.*

### 5.   Plaintiffs' Magnuson-Moss Warranty Claim Should not be Dismissed

Next, Defendants argue that their "Natural soap" label is not a warranty under the MMWA.  While the MMWA provides a federal class action remedy for express and implied breach of warranty claims, it "merely incorporates and federalizes state-law breach of warranty claims". *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2014) (citations and quotations marks omitted). Therefore, "th[e] disposition of [] state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs implied warranty claims under the MMWA). Since Plaintiffs have adequately pleaded their express and implied warranty claims, their Magnuson-Moss claims should not be dismissed.

### 6.   Plaintiffs' Claim for Violation of State Consumer Protection Statutes Should Not Be Dismissed

Defendants next contend that Plaintiffs' allegations of violations of various state consumer protection laws (Count 5) should be dismissed because it is not pleaded with particularity under Rule 9(b). Def. Mem. at 13.  This argument is

misplaced.  As described in Section II.B.2, *supra*, Plaintiffs have pleaded the "who," "what," "when," "where," and "how" of Defendants' misconduct.   Contrary to Defendants' argument, Plaintiffs are not required to tie Defendants' actions to the violations of the state consumer protection statutes, but are only required to plead sufficient *facts* to state a claim for relief.  *See Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279-JST, 2013 U.S. Dist. LEXIS 125607, *35 (N.D. Cal. Sept. 2, 2013). Plaintiffs have described Defendants' deceptive conduct with particularity, and therefore Count 5 should not be dismissed.  *Id.* (declining to dismiss cause of action alleging violations of 48 state consumer protection statutes).

### D.    Plaintiffs' Claims Should not be Stayed

Defendants' argument that the case should be stayed and deferred to the primary jurisdiction of the FDA (Def. Mem. at 23) should be rejected for two reasons.

First, since this case involves soap, not food products, it does not warrant application of the primary jurisdiction doctrine.  For example, the court in *Petrosino v. Stearn's Products, Inc.,* No. 7:16-cv-007735-NSR, 2018 U.S. Dist. LEXIS 55818, *30 (S.D.N.Y. March 30, 2018) found that ("[T]he FDA's definition of 'natural' with regards to human food products would not be particularly helpful.  As instructive as that definition may be, it ultimately involves a significantly different subject matter, namely,  food  products  instead  of  cosmetics.").  The  FDA  has  explicitly  and affirmatively declined to make a determination regarding the term "natural" in cosmetic or personal care labeling, and thus a stay would be unwarranted and inappropriate.  *See Astiana v. Hain Celestial Grp., Inc.*, No. 11-civ-6342, 2015 U.S. Dist. LEXIS 138496, *2 (N.D. Cal. Oct. 9, 2015) (ruling that a letter by the FDA explicitly shows that the "agency is aware of but has expressed no interest in the subject matter of the litigation" (i.e., "natural" within the context of cosmetic labeling).

Second, contrary to Defendants' argument, Def. Mem. at 23, resolution of the issues in this case do not require the FDA's expertise. Here, "'[t]his case is far less about science than it is about whether a label is misleading,' and the reasonable-consumer inquiry upon which some of the claims in this case depend is one to which courts are eminently well suited, even well versed." *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012)). Therefore, "[d]etermining whether a reasonable consumer acting reasonably would find the term 'natural' deceptive when a product contains both natural and synthetic ingredients is a question this Court and Jury are well suited to entertain." *Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *29.

## III. CONCLUSION

For the reasons stated above, Defendants' motion should be denied in its entirety.

Dated:          November 7, 2018

Respectfully Submitted,

By /s/     David R. Shoop

David R. Shoop, SBN 220576
Thomas S. Alch, SBN 136860
SHOOP, A PROFESSIONAL LAW
CORPORATION
350 S. Beverly Drive, Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700

Jason Sultzer
Adam R. Gonnelli
THE SULTZER LAW GROUP, P.C.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: 845-483-7100
*sultzerj@thesultzerlawgroup.com*
*gonnellia@thesultzerlawgroup.com*

*Counsel for Plaintiffs and the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Local Rule 5-4.3.4 Certification**

I hereby attest that all other signatories listed, on whose behalf this filing is submitted, concur in the filing's content and  have authorized this filing.

/s/

David R. Shoop